# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **SUE F. BRADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:07- CV-00661-MHT** |
| | ) | **Removed from the Circuit Court** |
| **GUIDANT CORPORATION,** | ) | **of Randolph County.** |
| **MICHAEL L. AIKENS, M. D.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' EMERGENCY MOTION TO REMAND
## AND FOR EXPEDITED HEARING

Now comes the Plaintiff and moves that this Court remand this civil action to the Circuit Court of Randolph County, Alabama from whence it was improvidently removed, without jurisdiction, and in support of this Motion, the Plaintiff shows the Court as follows:

There is no Federal jurisdiction in this case in that there is a lack of complete diversity. The Defendants weakly contend that the implanting doctor Defendant and the sales representative Defendants, who are all Alabama residents, are fraudulently joined. In fact, all the Defendants are proper parties and should not be dismissed. Emergency treatment is needed because Guidant has notified the MDL Panel, in order

to have an automatic "Conditional Transfer Order" issued, before this Court can consider Remand.   On August 14, 2007, Guidant proudly filed a copy of the conditional transfer order with the clerk of this Court. A two year sojourn to the distant MDL is sought by Defendants before a ruling can be made by this Court on this obviously valid motion to remand.

One Defendant, Dr. Aikens, an Alabama resident, is the physician who installed the defective pacemaker. The normal defense by Guidant, and its associated Defendants, is that the doctor improperly installed and implanted the pacemaker and especially the leads to the pacemaker.   The leads are the wires that take the shocking current from the pacemaker to the appropriate parts of the heart.  Of course if they are not put in just right, problems can occur.  In this case, different from other Guidant cases, Dr. Aikens even had to do a second procedure because of his decisions, cited in the Complaint by the Plaintiff as additional acts of actionable malpractice.

On or about July 8 and 9, 2005, as the complaint states "Dr. Michael Aikens, did negligently perform  medical and related services for and on the person of plaintiff in that the said Dr. Michael Aikens, A and B, defendants herein, did perform another invasive procedure on the plaintiff, called an Atrial and Ventricular Lead Replacement. Defendant had failed to remove the old Guidant leads during the previous invasive procedure on the previous day, causing inappropriate sensing and atrial fibrillation.  This second invasive procedure caused the plaintiff undue bodily harm." (Complaint ¶41).    These allegations are not refuted or denied.   These

allegations are not dependent on the misrepresentations by Guidant and its representatives to the doctor.    Much of the other conduct of the doctor is not dependent on the misrepresentations of the other defendants either:

"On July 8,2005, or thereabouts, Plaintiff Sue Bradley was admitted to the hospital for purposes of removing what Defendant Dr. Michael Aikens referred to as a "malfunctioning device lead recall."  He described a procedure performed by him in his Discharge Summary of July 10, 2005 as "permanent pacemaker revision (explantation-implantation of new device)."  Dr. Michael Aikens stated in his Discharge Summary of July 10, 2005, that "the patient underwent pacemaker exchange without difficulties and was sent to cardiac special care floor post procedure for recovery. Upon plans to discharge her the following morning it was noted that she was having abnormal pacer spikes id [*sic*] inappropriate places. Chest x-ray showed that her pacing wires had moved. She went back to the catheterization laboratory for lead revision and subsequently was able to be discharged the following day..."

On July 8, 2005, Dr. Michael Aikens dictated a further record stating the following with regard to Plaintiff Sue Bradley as to a surgical procedure he performed on that date: " the pacemaker site was subsequently opened.  The atrial and ventricular leads were subsequently dissected out.  Sensing and testing was performed and found to have optimal atrial sensing and inoptimal ventricle sensing and pacing. Subsequently the ventricle lead was dissected out and the ventricle lead was repositioned and then subsequently found to have optimal sensing and pacing parameters.  The generator was subsequently explanted. A new generator, an identity ADX-DR Model #5380 by St. Jude Medical was subsequently put in ....  The device was subsequently attached to the leads and placed in the pacemaker pocket.... again, the device implanted was identity ADX-DR Model #5380 by St. Jude Medical."

On August 26, 2005, Defendant Dr. Michael Aikens dictated a memorandum of a procedure performed by him entitled "atrial and ventricular lead replacement".  He indicated that the "indications" or reasons for this procedure were "high impedance and fracture of a ventricle lead."  He describes an additional procedure performed on Plaintiff, Sue Bradley as follows: "... the pacemaker pocket was opened. It was washed with antibiotics. The atrial and ventricular leads were subsequently removed.  A new atrial and ventricular lead was subsequently placed, St. Jude Medical 1688 TC, 52 centimeter and 58 centimeter leads. They were attached to the St. Jude 5380 pacemaker. The pacemaker was washed and

cleansed with antibiotics. The subcutaneous tissue was subsequently
closed with interrupted Chromic....again, the device the patient has is the
St. Jude Medical 5380. The new leads were St. Jude Medical 1688 TC.
The ones that were removed were Guidant leads." These notes were
dictated August 26, 2005, and transcribed and authenticated by Defendant
Dr. Michael Aikens on August 27, 2005."(Complaint ¶¶ 41-44)

The Complaint also alleges: "On or about September 22, 2004, plaintiff, was under
the medical care and subject to treatment and a procedure by Defendants Dr. Michael
Aikens at the facilities of the defendant. At said date and in said place, defendant Dr.
Michael Aikens, performed a procedure known as a pacemaker insertion upon the
person of plaintiff..." (¶36) and that defendant Dr. Michael Aikens, "did negligently
perform medical and related services for and on the person of plaintiff in that the
said, Dr. Michael Aikens, did breach the applicable standard of care in his/her
performance of his/her responsibilities..."(¶37) and this is closely factually
intertwined with the defects of Guidant's product, but not dependent on Guidant's
misrepresentations to have occurred.

Aikens' negligence is claimed "in performing the pacemaker procedure, in
failing to exercise that level and standard of care expected from a normal and
reasonable physician in like circumstances with regard to an inspection for the early
detection of, and/or prevention of pacemaker failure, and other pacemaker problems
or failure and related issues, and in otherwise performing his duties and functions
under the circumstances of his/her care and treatment of plaintiff." (¶37). This shows
the inapplicability and insufficiency of Defendants' argument that "if we defrauded
the doctor, he can't be sued."

In addition, there are specific allegations of misconduct by Defendant Joe Nappier, who actually went to the Plaintiff Mrs. Bradley's home, and misrepresented facts to her. These will be discussed more below. As to the other sales representative Defendants, the Plaintiff shows the Court that the same subject presented herein has been recently, and thoroughly, studied by Judge Hopkins of the U.S. District Court for the Northern District of Alabama in a pharmaceutical case where the sales representative Defendants were the local parties. Attached is a copy of Judge Hopkins' well-reasoned and recent Memorandum Opinion in the case of *Tracy v. Eli Lilly & Co., et al.,* 2:06-CV-00536-VEH (Attached hereto, included in **Exhibit A**). As this decision shows, there are several bases upon which remand is mandated. As here, a mass of evidence was presented by the Plaintiffs, in stark contrast to that in the *Legg v. Wyeth* case, heavily relied on by defendants. Also different claims were made in *Legg* than those here or in *Tracy*. As here, there is ample reason to believe that a bonafide dispute will exist on the facts as to the conduct of the sales representatives. Also, Judge Hopkins points out that in her case, AEMLD was raised as against the sales representatives. It was not was raised in *Legg*. AEMLD is raised in the case at bar – we claim that these defendants are liable to this plaintiff under the AEMLD as Judge Hopkins found was plausible in *Tracy*.

Judge Hopkins discusses the *Legg v. Wyeth* case in her Memorandum Opinion, calling it "the jewel of Defendants' contentions" of fraudulent joinder. Obviously, *Legg* can not be construed to mean that all Pharmaceutical sales representatives are simply immune from liability under all circumstances, as *Tracy* points out. Instead,

it is clear that this is a very different case. Judge Hopkins follows her own ruling in *Slatton v. Merck,* 05-VEH-1056-S (a Vioxx case), also attached with opinions such as this Court's remand orders in *Crittenden v. Wyeth,* 03-T-920-N, *Brunson v. Wyeth,* 03-T-1167-S, *Reeder v. Wyeth,* 04-T-066-N, *Brogden v. Wyeth,* 04-T- 068 -S, *Chestnut v. Wyeth,* 04-T-0295, *Ballard v. Wyeth,* 04-T-1251-S, *Allen v. Wyeth,* 04-T-0238 and *Blair v. Wyeth,* 03-T-1251-S (attached as part of **Exhibit A**). These decisions properly remanded pharmaceutical cases because of non-fraudulent claims against sales representatives like those in the case at bar.

*Legg* was a case about a sanction against the drug company for removing a case. The holding of the case, therefore, was only such as would be necessary to say that a sanction was improper for the removal. What was necessary to the decision in *Legg* was whether a *sanction* was appropriate for Merck having removed, the rest is *dictum*. Of course, the case stayed remanded. In *Legg*, the affidavits of the sales representatives were not controverted. Instead, the District Judge had followed the older Eleventh Circuit holdings that the matter should be determined by the allegations of the pleadings. But we are not asking for a *sanction* against Guidant, merely to have the law followed and the case remanded.

Here, we know that the case against the doctor and as against Mr. Nappier is already sustained by the evidence we already have, and we expect that discovery will soon reveal a substantial quantity of evidentiary material showing that there is very substantial evidence that the other Guidant sales representatives were heavily involved, acted, and had personal incentive, with regard to a widespread fraud on the

6

medical community and the physicians prescribing to people like these Plaintiffs. Of course, even the Defendants in the case at bar do not argue that the Court ought to conduct a full trial of the matter before determining a motion to remand.

The Court is, under the law, to remand if there is "even a possibility" that the Plaintiffs may be able to state a claim against the resident Defendants. Here, the claim is clear against the doctor and Mr. Nappier and as to the other representatives, their own call notes will show that these sales representatives carried the false message to the relevant doctors. The sales representatives also advocated Guidant products (now recalled from the market) over competitors' pacemakers and defibrillators (still safe and even now on the market). As was stated by one court, that possibility needed to be greater than the possibility that a meteor might strike the Plaintiffs' house tonight. But in the present circumstance, we have a unanimity as to doctors and a majority as to sales reps, of Alabama Federal District Judges remanding cases like this. Surely, a majority of U.S. District Judges having a positive opinion on the subject constitutes a greater possibility than a meteor striking. The possibility that sales representatives may have liability under the AEMLD is such that several different U.S. District Judges have found that possibility reasonable. Should another Alabama Judge find that those Judges were so far off the mark as to have missed the point to such a high degree as being less than a meteor strike? We think not. It is certainly a point that was well analyzed in Judge Hopkins' attached opinion in *Tracy*.

It should be noted at the outset that the sales representative Defendants in this

case do not deny that they were the ones who detailed (sold) Guidant pacemakers and defibrillators to East Alabama doctors. Second, they do not argue in their declarations or affidavits that the information given by them to East Alabama doctors about Guidant pacemakers and defibrillators was even true (it is widely known now that much false information was disseminated through sales representatives to prescribing doctors).

They admit that they "interacted" with the physicians implanting the defective pacemakers, and denied only that they had responsibilty for the <u>written</u> warnings accompanying the pacemakers in speaking with physicians about Guidant pacemakers and defibrillators. See each "prefabricated" form Declaration at ¶3 and 4, e.g., Exhibits D and F to Notice of Removal. Some of the sales representatives go to the extent of denying that they were personal participants in some programs but the fact that some of them missed one of the notorious programs does not dispose of any material factual dispute.

The Plaintiffs move this Honorable Court to immediately remand this action to the Circuit Court of Randolph County, Alabama, and to expedite any hearing of that motion. There is no federal subject matter jurisdiction in this case. Federal judges in this district, and elsewhere in Alabama, have repeatedly held that the selling in-state pharmaceutical sales representatives are not fraudulently joined. Not surprisingly, Guidant has failed to refer this Court to this body of authority, nor has Guidant attempted to distinguish any of those opinions.

## I.    Summary of Legal Argument

In removing this action to federal court, Guidant employs the same tactics that were successful in promoting and selling Guidant pacemakers and defibrillators - misinformation and half-truths.  First, Guidant argues the decisions of distant courts located as justification for its fraudulent joinder argument, yet totally ignores the large volume of cases in this district, and other districts in this state, which squarely rejects Guidant's position.

Moreover, Guidant's marketing of Guidant pacemakers and defibrillators has, to say the least, been under attack.  Within the last months of last year, documents have been provided in the public domain which offer a rare glimpse into the bowels of a medical device company's marketing program.  This will be discussed subsequently in greater detail, but suffice it to say that the information is damning of the methods employed by Guidant to vigorously promote Guidant pacemakers and defibrillators to prescribing/implanting doctors despite the known cardiovascular risks associated with the pacemakers and defibrillators.  This report confirms what was already known: the sales representatives for Guidant were not mere lackeys.  This force, including the defendants herein, was a well-trained, organized, and aggressive group. Most importantly, it was a group armed with the knowledge of the risks associated with Guidant pacemakers and defibrillators and trained to misinform, misinterpret, dodge, and obfuscate those risks.

It is somewhat surprising that Guidant claims with a straight face that its sales

representatives are unquestionably innocent of the charges levied against them, as a matter of law. A good bit of evidence already in the public domain – and as alleged in the Complaint and attached hereto in pertinent part – proves otherwise.

Further, the declarations Guidant submits with its Notice of Removal do not even bother to address the evidence against Dr. Aikens, which is a telling defect. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (emphasis added).

Although one or more resident Defendants moved to dismiss subsequent to the removal for judgment in his or her favor on the Plaintiff's claims, those dispositive motions must be ignored by this Court for purposes of this motion to remand, again for the reason given by controlling precedent. "[D]istrict courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them . . . Applying these principles to this case, we conclude that the district court – given the record before it – should have remanded the case to state court and should have never addressed the motion for summary judgment." *Crowe*, 113 F.3d at 1542.

At bottom, Guidant's removal simply attempts to stall this case and have it diverted to Minnesota, and for legal basis, it only plows old ground which has already been tilled many times by various federal judges in this state. Defense filings

subsequent to the removal – all made no doubt at Guidant's behest and to serve its interest – do no more than distract from that fact.  *Compare Tomlin v. Merck*, Case No. 04-14335, Slip op. at pp. 2 & 4-5, Feb. 22, 2005, U.S. District Court, S.D. Fla. (finding that Merck's filings "only serve to obscure the real issue before this Court of whether Merck should have removed this case based on fraudulent joinder in light of the prior remands in factually similar cases") (denying Merck's motion to stay, granting remand, and allowing plaintiff to seek "costs and expenses incurred as a result of Merck's removal").  (*Tomlin* is attached hereto at **Exhibit E**, which includes two other Florida federal court decisions.)  This case is due to be remanded to the Circuit Court of Randolph County, Alabama.

**II.    Under 11th Circuit Law, Guidant Has Not Demonstrated by "Clear and Convincing Evidence" That There is "No Possibility" That Plaintiff Can State a Valid Cause of Action Against the Resident Defendants.**

When a defendant seeks to invoke federal diversity jurisdiction under a theory of fraudulent joinder in the Eleventh Circuit, "[T]he burden . . . is on defendant to show that ***the allegations of the complaint state no possible cause of action***" against each resident (*i.e.*, non-diverse) defendant.  *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989) (emphasis added).  "If there is even a ***possibility*** that a state court would find that the complaint states a cause of action against any one of the resident defendants, the Federal court ***must find*** that the joinder was proper and remand the case to state court." *Coker v. Amoco Oil*, 709 F.2d 1440, 1441 (11th Cir. 1983) (emphasis added).

Where the plaintiff states even a colorable claim against a resident defendant, joinder is proper and the case should be remanded to state court. *Pacheco DePerez v. A T & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In fact, in our own Complaint, filed in Randolph County, Alabama, we stated, "Defendants, through Joe Napier, had specifically contacted Plaintiff and met with her in Dr. Aiken's office approximately one month after the Guidant 1294 was implanted. Defendants, through Joe Napier, had specifically represented to Plaintiff when they met with her in Dr. Aiken's office after the Guidant 1294 was implanted that, " Yours is not the one that was recalled." (Complaint ¶¶ 20-21)

In defeating a fraudulent joinder argument, a plaintiff need not prove that he has a winning case against the resident defendant. *Triggs v. John Crump Toyota*, 154 F.3d 1284 (11th Cir. 1998)(also cited repeatedly by Guidant). In fact, in defeating a fraudulent joinder argument, a plaintiff need not show that he could survive on a motion for summary judgment or a motion to dismiss filed by the in-state defendant. *See Crowe*, 113 F.3d at 1542; *see also Tillman v. R.J. Reynolds*, 253 F.3d 1302 (11th Cir. 2001) ("the plaintiff need not have a winning case against the allegedly fraudulently joined defendant, he need only have a possibility of stating a valid cause of action in order for joinder to be legitimate").

In *Pacheco*, the Court observed that "in a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claims beyond determining whether it is an arguable one under state law.'" *Pacheco*, 139 F.3d 1381 (quoting *Crowe*, 113

F.3d at 1538).  Specifically, when making this inquiry, "the district court must evaluate the factual allegations in a light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538.

Thus, on a motion to remand, the plaintiff's burden is light. The Eleventh Circuit holds that ". . . after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law <u>might</u> impose liability on the facts involved.'" *Crowe*, *ante*. Furthermore, for two reasons, district courts should not confuse a motion for remand with one for summary judgment, or with a motion to dismiss.  First, the substantive requirements for the two are different, and second, the movant for remand (this Plaintiff) benefits from those differences. *See e.g, Crowe*, 113 F.3d at 1542.  That was exactly the holding of Judges Hopkins and Acker of the Northern District Court in favor a plaintiff who brought a Vioxx suit against Merck and its resident sales representatives.  Those decisions, in which Judges Hopkins and Acker granted the plaintiff's motion for remand – *Slatton v. Merck* and *Hales v. Merck*, – are **Exhibits A** and **C** to this motion.

Guidant cites cases which do not contradict *Crowe* to support its unfounded contention that "'there is no possibility' that Plaintiff can prove any of her claims against Dr. Aikens, Mr. Nappier...[etc.]" contrary to the established standard for deciding that Plaintiff could prevail on any of her claim.  (Guidant Notice of

Removal, p. 7, ¶ 13, referring to claims against resident defendants). A close reading of *Crowe* – and of *Slatton* and *Hales, ante*, the case in which that same unfounded contention was met and denied – reveals that *Crowe* is not helpful in any way to Guidant. In *Crowe*, the defendant who alleged fraudulent joinder submitted an affidavit, along with some other co-defendants. Defendants claimed that these affidavits should be controlling and that the fraudulently joined defendant must be dismissed. **In ruling that the Plaintiff's motion to remand should have been granted** by the trial court, the Eleventh Circuit held as follows:

> . . . over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' [citations omitted]. In considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. '***If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.***'(emphasis added)113 F.3d at 1538.

Federal courts, in deciding an issue of fraudulent joinder, are not to delve into the merits of a claim. Again, we cite *Crowe*:

> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, ***we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.*** (emphasis added)113 F.3d at 1542.

> "When Plaintiff was implanted, by Dr. Aiken, with a Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number

215186, she was unaware of the design and/or manufacturing defect within her device, of which Defendants knew, or should have known, prior to her implantation surgery. Plaintiff had no knowledge that her pacemaker possessed any defect, much less the life-threatening defect described above, until learning of it from the business section of her local newspaper. Plaintiff, fully and completely dependant on a pacemaker for cardiac regulation and stabilization, relies on the functioning of a pacemaker at all times. Defendants never directly or indirectly informed Plaintiff of the risks associated with the design and/or manufacturing defect in the pacemaker implanted in Plaintiff known to Defendants, or about which they reasonably should have known. (Complaint ¶¶ 25-28)

The question is simple: does a possible cause of action exist under Alabama law against the sales representative Defendants? The question has been answered "Yes" in an undistinguishable case in this district that the Defendants did not even attempt to distinguish. *Hales* (**Exhibit C**, attached hereto). Accordingly, unless a conflict is to arise within this district, the case is due to be remanded.

## III.    The Plaintiff Has Pled Causes of Action Against the Resident Defendants Which Require Remand.

The Complaint is replete with allegations against the resident Defendants which are dispositive of Guidant's fraudulent joinder argument. The sales representatives were trained to deflect questions concerning the safety of Guidant pacemakers and defibrillators, and to obscure and hide the risks of the device from the doctors they promoted it to. In each such instance, and for each resident Defendant (*i.e.*, each sales representative), the Plaintiff alleges that this misconduct was directed to the Plaintiff's prescribing physician.

Defendant Joe Napier participated in various aspects of the implantation, siting, placement, setting, computer set-up, selection, and other aspects of the Guidant pacemaker and its leads, and also with regard to the

replacement thereof. The acts of the defendants included personal visits with the plaintiff for the purpose of dealing with and handling and otherwise reviewing and treating plaintiff with regard to her pacemaker, in Randolph County, Alabama. Defendant Joe Napier personally called on plaintiff and said to her that her device was "not recalled" but in fact it has been recalled (Complaint ¶¶ 33-34)

The Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186, manufactured and sold by Defendants was also defective due to inadequate marketing and post-marketing warnings or instruction because, after the Defendants knew or should have known of the risk of injury from Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186, from use of these devices, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product. (Complaint ¶¶ 55)

These facts, as noted in the complaint, set forth specific allegations regarding activities of Guidant and its sales representative Defendants.

**a.    Under Alabama law, it is for the jury to decide whether a cause of action exists against the sales representative Defendants.**

If a "possibility" exists under Alabama law that a cause of action may be maintained against the sales representative Defendants, then Guidant's contrivance of fraudulent joinder must fail. Guidant's argument of fraudulent joinder is eviscerated by Alabama law. Whether the Plaintiff has a cause of action under Alabama law against the resident Defendants can be resolved in the ***affirmative*** with ***absolute certainty***.

Alabama has long recognized the rule of law that a plaintiff may support a claim for fraud against a third party if he can show loss or injury resulting from such

fraud. *Thomas v. Halstead*, 605 So.2d 1181 (Ala. 1992).    In Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured.  *Sims v. Tigrett*, 229 Ala. 486, 491, 158 So. 326 (1934).

While generally a stranger to a transaction has no right of action for fraud, an exception to this general rule exists if a third person is injured by the deceit. In such a circumstance, he may recover against the one who made possible the damages by practicing the deceit in the first place. *National State Ins. Co. v. Jones*, 393 So.2d 1361 (Ala. 1980) (holding that a niece had standing to sue for fraud even though the representation had been made to her deceased aunt).

In Alabama, in order to maintain an actionable fraud claim, it is not necessary that the misrepresentation be made directly to the person who claims to have been injured. Indeed, in *Sims*, the Alabama court stated:

> But we may observe that if defendant caused the representations to be made, and the public were intended to be thereby induced to act upon them, and plaintiff was in the class of those so contemplated, the action for deceit against defendant may be maintained by plaintiff, though defendant did not sell the bonds to plaintiff, but sold them to another, and he to plaintiff, both in reliance on the truth of the representations.

*King v. Livingston Mfg. Co.*, 180 Ala. 118, 126, 60 So. 143.

Recent authority by the Alabama Supreme Court likewise supports this settled rule of law. *See Seward v. Dickerson*, 844 So.2d 1207 (Ala. 2002) (where a third party fraudulent misrepresentation is alleged, statements to persons other than the plaintiff will support the fraud allegations when there is sufficient evidence of an

intent on the part of the speaker to communicate to the third party in such a way as to induce the plaintiff to act). Moreover, in the case of *Delta Health Group, Inc. v. Stafford*, 2003 WL 22977449 (Dec. 19, 2003), the Alabama Supreme Court, in an opinion penned by Justice Stewart, again confirmed that a cause of action for fraud may be maintained by one who relied on the representation, even though the representation may have been made to another:

> We agree with *Stafford* that in certain limited circumstances not relevant here, a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff. However, we do not read *Thomas* as excusing a plaintiff from the requirement of establishing his reliance upon the misrepresentation. *Thomas* appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party.

> *Delta Health Group, Inc.* p.10.

Indeed, in *Delta Health Group*, the plaintiff did not allege that *he* relied on the false representation made by the third party, so the Alabama Supreme Court had no choice but to reverse the jury verdict entered in favor of the plaintiff. Of course, in the instant case, the Complaint is replete with allegations of reliance by the Plaintiff.

It is beyond any doubt that Alabama recognizes a cause of action against a third party for fraud. Alabama has allowed such causes of action for over 100 years and has affirmed such causes of action as recently as December, 2003 in the *Delta Health Group* case.

Plaintiff was implanted with a malfunctioning pacemaker which caused a severe cardiac event, and an otherwise unnecessary surgery. The doctor however did

more than passively prescribe a drug. He was the one who did the implantation surgery and the removal and the second lead surgery. Certainly, Plaintiff has alleged in the Complaint that the Defendant sales representatives made fraudulent representations concerning the safety of the device, and likewise concealed information from her physician that was material, and should have been disclosed. But it is not for the Defendants to escape to the MDL just because they made misrepresentations to the doctor. Clearly, the Plaintiff is in the class of individuals that the sales representatives sought to induce into buying Guidant pacemakers and defibrillators. Any representations made about the safety or efficacy of the device were communicated by the sales representative to be passed on to the patient, or in the case of concealment, to be withheld from the patient. As the Complaint alleges, the Plaintiff's physician, relied on the information, or misinformation, provided by the sales representatives and advised the Plaintiff accordingly. But this does not obviate the doctor's own acts or omissions.

> "Defendant Joe Napier and defendants C and D, whose names are otherwise unknown to plaintiff, participated in various aspects of the implantation, siting, placement, setting, computer set-up, selection, and other aspects of the Guidant pacemaker and its leads, and also with regard to the replacement thereof. The acts of the defendants included personal visits with the plaintiff for the purpose of dealing with and handling and otherwise reviewing and treating plaintiff with regard to her pacemaker, in Randolph County, Alabama." (Complaint ¶¶ 33)

Moreover, it matters not whether the sales representative defendants were acting within the line and scope of their employment with Guidant at the time the fraud occurred. In Alabama, regardless of whether a person is acting within the line

and scope, he or she is personally liable for the torts committed. *Galactic Employer Services, Inc. v. McDorman*, 2003 WL 21569815 (Ala. Civ. App. 2003); *Ex parte McInnis*, 827 So.2d 795 (Ala. 2001); *Sunshine Investments, Inc. v. Brooks*, 642 So.2d 408 (Ala. 1994).

Alabama law could not be any clearer. A cause of action exists against the sales representative Defendants. This easily meets the Eleventh Circuit standard. Guidant's efforts to remove cases clearly grounded under Alabama state law have failed for one simple reason: ***there is at least a possibility under Alabama law that a cause of action exists against the sales rep defendant as stated in the complaint. This is all that is required to defeat an allegation of fraudulent joinder under the law in the Eleventh Circuit.***

**b.    Federal Courts in Alabama have consistently held that a possible cause of action exists under Alabama law against pharmaceutical sales representatives**.

Guidant invokes two non-jurisdictional decisions (Notice of Removal, p.13-14, ¶ 22) as ostensible authority for its assertion that the sales representative Defendants are fraudulently joined. It cites *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D. N.Y. 2001) ("*Rezulin I*"), and *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004.   Guidant's reliance on these decisions is specious.  The decisions are patently distinguishable and inapposite.

Removal was upheld in *Rezulin I*, according to the court that issued it, because the Alabama Plaintiffs who sought a remand "did not specifically mention a

nondiverse physician or sales representative Defendant except in the caption and then sought to lump this defendant in with the manufacturing defendants for liability purposes." *In re Rezulin Products Liability Litigation*, 2002 WL 548750, at *2 (S.D.N.Y April 12, 2003) (order disposing of certain remand motions) ("*Rezulin II*"), attached hereto as **Exhibit D**. *Accord, Barragan v. Warner-Lambert Company*, 216 F.Supp.2d 627, 633 (W.D. Tex 2002) (quoting *Rezulin II* to describe basis of *Rezulin I* decision). Plaintiffs' allegations, in clearest contrast to the complaints at issue in *Rezulin I*, are made thoroughly and in detail against the nondiverse Defendants (*i.e.*, the doctor and the sales representatives), and thus her complaint is untouched by the extremely limited basis and rationale of *Rezulin I*.

Likewise, in the *In re Baycol Products Litigation* decision that Guidant cites, the court (the federal district court for Minnesota) found deficiencies in pleading not present here. Slip op. at 5-9. Equally important, *In re Baycol Products Litigation* is inapposite because it was decided under a non-jurisdictional standard. *Id.* at 3 (quoting *Wiles v. Capitol Indemnity Corporation*, 280 F.3d 868 (8th Cir. 2001)). That standard is a test of law and fact, *id.*, in contrast to the controlling Eleventh Circuit standard (which is *Crowe*). That difference, which appears more favorable to a defendant who removes than the Eleventh Circuit standard, may explain why Judge Propst, in *Fowler v. Pharmacia & Upjohn*, recognized that *In re Baycol Products Litigation* may wrongly "exclude claims against even active, knowledgeable sales representatives," including (or specifically) "failure to warn or suppression claims."

*Fowler*, slip op. at 30-31.  The sales representatives sued here by Plaintiffs were (according to the Complaint and the facts admitted) knowledgeable of the risks of Guidant pacemakers and defibrillators and active in obscuring and suppressing awareness of those risks.  The sales representatives were also active promoters of the device and earned money from the success of that promotion (again according to the Complaint and the attached documents).

In contrast to Guidant's preferred, non-jurisdictional authorities, numerous federal judges in Alabama who considered Motions to Remand in this litigation, ruled that sales representatives were not fraudulently joined.  Guidant, which certainly is aware of this large body of precedent, ignored same in its Notice of Removal.

It also ignored the decision of Judges Hopkins and Acker in *Slatton* and *Hales*, which placed it on notice that a remand would be in order.  Suffice it to say that federal courts in Alabama have a long history of removals based on ultimately discredited assertions of fraudulent joinder of pharmaceutical sales representatives, and those courts have repeatedly rejected such as a basis for federal diversity jurisdiction.

Previously discussed was a partial list of decisions by federal judges in Alabama, applying Eleventh Circuit law, who held that pharmaceutical sales representatives were not fraudulently joined. The claims asserted against the sales representatives in this case are virtually the same as those asserted against the sales

representatives in the decisions referenced herein.   Those district judges would have to be found to be "irrational" by a court to refuse remand in the case at bar.

**c.     Federal Courts in Florida in recent Vioxx litigation have recently held that a possible cause of action exists against pharmaceutical sales representatives**.

In Florida, three federal judges have remanded cases to state courts in the Vioxx litigation, denying in the process similarly unfounded assertions of fraudulent joinder and diversity jurisdiction. *White v. Merck & Co, Inc, et al.*, No. 05-243 (M.D. Fla.); *Kozic v. Merck & Co, Inc.*, No. 04-324 (M.D. Fla.); *Tomlin, et al. v. Merck & Co., et al.*, No. 04-14335 (S.D. Fla.) (all of which are attached hereto as **Exhibit E**). In each of these three cases, all of which are specific to the Vioxx litigation and similarly involve claims against Merck and its resident sales representatives, the courts held for purposes of remand that the plaintiffs had asserted causes of action against the sales representatives.

**d.     Guidant's arguments concerning the sufficiency of the claims stated in the original Complaint, are unavailing.**

In its notice, Guidant goes to great lengths to criticize the sufficiency of the claims against the sales representatives which were stated in the Complaint, but inaccurately so.

Guidant asserts that the sales representative are fraudulently joined claiming that Plaintiffs failed to make anything other than vague assertions regarding the sales representatives.  But this the Complaint is full of any specific allegations regarding

what the individual defendants named in this case are alleged to have done. As noted herein, and in the Complaint, numerous specific allegations have been laid out, that show clear and direct actions on the part of the Defendants. For example, in paragraph 34 of Complaint, "Defendant Joe Napier personally called on plaintiff and said to her that her device was "not recalled" but in fact it has been recalled."

Guidant argues that the allegations do not state a viable claim for relief against them because the sales representatives are not "sellers" as required under the AEMLD. Guidant ignores numerous holdings like Judge Hopkins' *Tracy* decision. Even if the sales representatives did not participate in the design, manufacture, or testing of the product at issue, they did participate, and indeed, were the primary distribution mechanism of sale of the product by promoting and distributing thousands upon thousands of Guidant pacemakers and defibrillators to Physicians throughout the State of Alabama. These products reached thousands of persons in the State of Alabama. The sales representatives were the key link between the Plaintiff's prescribing physician and Guidant. The sales representatives admit (by not denying the allegations of the Complaint) that there was other information used in speaking with physicians about Guidant pacemakers and defibrillators and this is selling pure and simple. See form Declarations each at ¶4, e.g., Exhibit D or F to Notice of Removal. What else do sales representatives do besides sell?

Further, as stated in the Complaint, an aggressive marketing campaign was made to Physicians and directly to consumers through advertising.

> At all pertinent times, Defendants conducted, and/or conspired jointly to conduct, a sales and marketing campaign to promote the sale of Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186, through advertisements and other promotional literature and fraudulently deceived the Plaintiff, physicians and the general public as to the health risks and consequences of Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186. Defendants also failed to disclose other effective methods for pacing. Defendants suppressed material facts that, if disclosed to Plaintiff would have resulted in Plaintiff's refusal of Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186.
>
> Defendants Guidant, Sales Representatives Defendants and fictitiously designated defendants' misrepresentation and suppressions of material facts were done intentionally, willfully and/or negligently. Plaintiff and her physician reasonably relied upon the skill and judgment of said Defendants as to whether the Guidant Pacemaker, model number 1294, serial number 104751, Lead, model number 4088, serial number 103329, and Lead, model number 4087, serial number 215186, were of merchantable quality, safe and fit for their intended uses.(Complaint, ¶ 89-90)

The sales force was a further extension of this concerted push to promote their product. Further, as Judge Acker noted in *Hales*, the "Alabama Supreme Court has never addressed whether an individual employee of a defendant designer and manufacturer of a prescription drug, who has responsibility for marketing and selling the drug on behalf of his employer, can be held liable on a claim arising under AEMLD, and accordingly, the court has never rejected individual liability against intermediary sellers."

Guidant argues that Counts VI and VII fail to state a cause of action against the sales representatives because some of the sales representatives have never met the

Plaintiff and have made no representations to her or the general public with regards to Guidant pacemakers and defibrillators. As noted herein, a claim for fraud has been clearly established against third party representatives. Indeed, in each of the declarations of sales representative defendants Joe Napier, Jeff Hall, Tab Whisenhut, and Linda Garmon (attached as Exhibits to Guidant's Removal), each notes in paragraph three that the knowledge they had was provided to each by their employer. As has been noted in the Complaint and herein, such information was fraudulent and this was provided to the Physician to induce him to prescribe Guidant pacemakers and defibrillators to his patients, including the Plaintiff.

Defendants also claim that Plaintiffs' fraud and fraudulent misrepresentation counts are deficient because Plaintiffs have not specifically alleged that the Employee Defendants, independently from Guidant, made a misrepresentation directly to the Plaintiffs or their prescribing physicians. Judge Hopkins dispelled that argument in *Tracy*, quoting two Middle District cases:

> "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity. Ex parte *Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala.1983)); see also *Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App.1976). Obviously, to the extent R.J.

Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions."

*Seaborn v. R.J. Reynolds Tobacco Co.*, 1996 WL 943621, *8 (M.D. Ala. 1996). And:

"The same language can be applied here: Defendants Philip Morris and Brown & Williamson clearly do not employ ghosts. That is, the court finds that some of the moving Defendants' employees are likely to hold some superior knowledge regarding the nature of cigarettes. The court finds that it is therefore conceivable that Plaintiff's AEMLD claims ... may be viable [against the individual nondiverse defendants]."

*Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D. Ala.   1999).

Judge Hopkins then said: "A similar situation to those present in Seaborn and Clay exists in the instant case. Green admits to being an Eli Lilly employee engaged to promote Zyprexa to physicians, including Tracy's prescribing physician. Therefore, she is liable for torts in which she personally participated. Also, if Eli Lilly violated the AEMLD, it acted through Green in this case, and Tracy should be allowed to

pursue Green as an individual defendant, considering Green's possible superior knowledge of the risks associated with Zyprexa and her representation to Tracy's prescribing physician that the drug was safe." *Tracy*, at page 18.

Additionally, although all of the resident sales representatives who are Defendants have been served or have appeared in this case, declarations are not submitted by some. (Notice of Removal, p. 2, ¶ 3, & Exhibit F) The allegations against those resident Defendants stand individually unrefuted, erasing any possibility of diversity jurisdiction for the reason given by controlling precedent.

While Guidant is suggesting to this Court it will prevail on the claims asserted against the doctor and the resident Defendants, by doing so, Guidant is "embarking upon a safari in search of a judgment on the merits", which, according to *Crowe* and other Eleventh Circuit authority, is not allowed. As *Crowe* and its progeny (*Tracey, Slatton* and *Hales,* included) teach, when deciding a question of fraudulent joinder, the "district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." *Crowe,* 113 F. 3d, at 1542.

This Motion should be decided on the law. While we don't think they will, it is possible that the defendants may ultimately prevail on the claims asserted against the resident Defendants, and our claims absolutely "do not appear readily to be frivolous or fraudulent." The defendants may have valid defenses to these claims (we think they don't). The sales representative defendants may be able to prove that the

Plaintiff's physician did not rely on any suppression or misrepresentation made by these gentlemen, or the doctor may prove that he did rely and did nothing wrong himself. In the end, before a jury, the doctor or sales representatives may vindicate themselves of the allegations. However, whether Guidant and/or the doctor or sales representatives will prevail on these claims is immaterial to this Court's ruling here. The standard set forth by the Eleventh Circuit to determine fraudulent joinder is clear. If a *possibility* exists that the Complaint states a cause of action against the resident Defendants under Alabama law, then this case must be remanded.

## IV.    Plaintiffs Request Emergency Consideration of their Remand Motion.

Plaintiffs request that their Motion to Remand be heard on an emergency and expedited basis due to the fact that they have been damaged by the use of Guidant pacemakers and defibrillators, and are entitled to their timely day in the court which has jurisdiction, which is the Circuit County of Randolph County, Alabama. Plaintiffs respectfully request that all remand motions relating to the interpretation of state law be addressed by the District Court in the district where the action was removed. Lastly, due to the clear absence of federal jurisdiction, as evidenced by the arguments herein, and other decisions granting similar remand motions, the matter should be disposed of on an expedited basis, else the case be sent off for years to Minnesota.

**Wherefore** the Plaintiffs respectfully move that the Court remand this civil action to the Circuit Court of Randolph County, Alabama, from which it was

improvidently removed without jurisdiction.

/S/ James S.  Hubbard
Attorney for Plaintiffs


/S/ Thomas J.  Knight
Attorney for Plaintiffs

HUBBARD & KNIGHT
1125 Noble Street
Anniston, Alabama 36202
(256) 237-9586

## Certificate of Service

I hereby certify that on August 16, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

Fred M. Haston, III (HAS012)
Andrew B. Johnson (JOH168)
Bradley Arant Rose & White LLP
1819 Fifth Ave. North
Birmingham, Alabama 35203
(205) 521-8000
(205) 521-8810 (fax)

/S/ Thomas J.  Knight
Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA TRACY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:06-CV-00536-VEH** |
| | ) | |
| ELI LILLY AND COMPANY, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the court is Plaintiff's Emergency Motion to Remand (doc. 13). This motion has been briefed extensively and is ripe for review. A hearing has not been requested on the instant motion, and the court is satisfied that a decision can be reached based on the papers submitted by the parties. For the reasons stated herein, the Motion to Remand is due to be **GRANTED**.

## Procedural History

Plaintiff Patricia Tracy commenced this action in the Circuit Court of Jefferson County, Alabama, on February 14, 2006, by filing a Complaint against Defendants Eli Lilly and Company, Richard Leventry, and Mary V. Green. Eli Lilly is an Indiana corporation. Richard Leventry, a district manager for Eli Lilly, and Mary V. Green,

a sales representative for Eli Lilly, are both alleged to be citizens of Alabama. Tracy is a citizen of Alabama. The Complaint asserts claims for violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), failure to warn, breach of warranty of merchantability, negligence and fraud against all defendants as well as a claim for negligent training and supervision against Eli Lilly.

Defendants removed this action to the United States District Court for the Northern District of Alabama on March 20, 2006. The basis for removal is that complete diversity among the parties to this action exists due to Leventry and Green having been fraudulently joined. Simultaneously with filing the Notice of Removal, Defendants also filed a Motion to Stay this action pending transfer of this case to a MDL proceeding that has been established in the Eastern District of New York.[1] Tracy filed an Emergency Motion to Remand on March 30, 2006.

## **Facts**[2]

Tracy was prescribed the drug Zyprexa by Dr. Wolfman Glaser on or about

---

[1]Defendants invite the court to stay this case without reaching a decision on the motion to remand so that the instant motion may be decided by the MDL once the case is transferred. Such a course of action would be improper in that the parties are entitled to a determination of this court's jurisdiction as soon as is practicable. Additionally, the facts which establish (or fail to establish) fraudulent joinder are likely to be unique to this case.

[2]As it must, the court will decide all disputed issues of fact in favor of the plaintiff; however, where an affidavit is undisputed by the plaintiff, the court will give weight to the sworn statement over unsupported allegations in the Complaint. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005).

April, 2003, and continued taking the drug under physician supervised care until about August, 2005. In January, 2005, Tracy was diagnosed with borderline diabetes. Following further tests, she was diagnosed as a Type II diabetic in April, 2005. Tracy alleges that her diabetes is the proximate and legal result of the ingestion of Zyprexa, and that her life expectancy has been shortened as a consequence of her diabetic condition.

Zyprexa, a product of Eli Lilly, was initially approved for the treatment of schizophrenia in October, 1996, and was subsequently approved for the short-term management of acute manic episodes associated with bipolar disorder in March, 2000.

In 1998, the worldwide pharmacology and epidemiology department at Eli Lilly began receiving adverse event reports revealing excessive weight gain as well as reports for diabetes mellitus, ketoacidosis, and increased incidents of hyperglycemia in patients who were taking Zyprexa. These reports are consistent with reports provided to Eli Lilly prior to the launch of the drug which warned against a risk of significant weight gain and Type II diabetes. During clinical trials, Eli Lilly denied that any patient using Zyprexa developed diabetes due to weight gain associated with ingesting the drug. Eli Lilly continued to market and sell the drug despite additional reports that its use was associated with instances of weight gain

and diabetes.

In April, 2002, the Japanese Ministry of Health required Eli Lilly to revise the Zyprexa label to include warnings that the drug has been linked to cases of weight gain and diabetes. Eli Lilly did not update the label for Zyprexa distributed to the American market until July, 2003, when the FDA placed Eli Lilly on notice that the label on Zyprexa must be updated with information on the metabolic disorders, including diabetes, that were linked to the drug. By this time, Eli Lilly was aware of the risk of diabetes associated with Zyprexa; however, Eli Lilly did not update the drug's label to include a warning of the risk until March, 2004.

The sales force for Eli Lilly were trained to avoid or, in the alternative, to give protracted answers to questions from physicians regarding the risk of diabetes associated with Zyprexa. In addition, Eli Lilly employed the services of at least one physician to assist sales personnel at trade shows in an effort to minimize inquiring physicians' concerns about the risk of diabetes associated with the drug.

Eli Lilly's sales representatives were not instructed to conduct any independent medical research, including review of scientific articles not provided to them by Eli Lilly, as to any of the risks or benefits associated with Zyprexa, and were limited to discussing issues approved during their sales training. In many cases, the sales representatives were instructed by Eli Lilly to refer physicians, as the ultimate

4

decision maker to prescribe the drug, to the written information provided by Eli Lilly regarding Zyprexa.

Leventry, through an affidavit dated March 14, 2006, admits that he is a district manager for Eli Lilly; however, he denies being responsible for training the sales staff who promoted Zyprexa, supervising the sales force or any other person responsible for promoting Zyprexa, supervising anyone who called on Tracy's prescribing physician, and having any involvement in the manufacture or development of Zyprexa, the preparation of package inserts, or otherwise participating in the promotion of Zyprexa.

Green, through two affidavits dated March 14, 2006, and April 6, 2006, admits being a sales representative for Eli Lilly responsible for promoting Zyprexa to psychiatrists, including Tracy's prescribing physician, beginning prior to and extending throughout the duration of Tracy's prescribed use of Zyprexa. Her knowledge of the drug was derived exclusively from materials and education provided by Eli Lilly. At no point did she conduct any independent research on Zyprexa.

Green states that she did not represent Zyprexa to have efficacy for any uses other than those approved by the FDA. However, Green was trained to promote the drug with the tale of a fictitious individual known as "Donna" who was a single

mother suffering from anxiety and irritability issues. Donna was created to enhance profits for Eli Lilly for promoting Zyprexa for off-label uses. Anxiety, in any form, is not an approved ailment for which Zyprexa is a treatment.

Green represents that she had not seen any of the documents accompanying Tracy's Motion to Remand, that those documents were not a part of her training, nor did she use those documents when she called on Tracy's physician.

Green denies any knowledge of any risks associated with Zyprexa other than those provided in the FDA approved package insert accompanying the drug, and she denies that Eli Lilly trained her to mislead or withhold information from physicians or that she mislead or withheld information from physicians regarding the risks associated with Zyprexa.

Tracy has produced documents generated by Eli Lilly and used for the purpose of training its sales force. These documents acknowledge a risk of weight gain and diabetes associated with Zyprexa and instruct sales representatives on methods designed to minimize any physicians' concerns regarding the link between the drug and these risks. Green, as a sales representative for Eli Lilly responsible for promoting Zyprexa, would have access to these materials.[3]

---

[3]A genuine issue of disputed of fact exists regarding Green's knowledge and training as to the risks of weight gain and diabetes associated with ingesting Zyprexa. Green flatly denies having ever seen any of the documents offered by Tracy, and she additionally denies that Eli Lilly

Green represented, to Tracy's prescribing physician, that Zyprexa was safe and effective. That representation led, in part, to Dr. Glaser's prescribing Zyprexa to Tracy.

## Standard of Review

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional issue; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.[4] *Id. See also Coker v. Amoco Oil Co.*,

---

trained her to mislead or withhold information from physicians about risks associated with Zyprexa. Tracy has produced documents that were used by Lilly to train its sales force on how to address or avoid questions about Zyprexa and diabetes. The fact that these documents predate Green's employment is of no consequence. The court rejects Defendants' contention that *Legg* stands for the proposition that Green's affidavit trumps all allegations made and supporting documents provided by Tracy. Such a reading of *Legg* would allow nondiverse defendants to satisfy their burden on a motion to remand solely by executing affidavits that deny the allegations in a plaintiff's complaint. Tracy has effectively disputed Green's affidavit. For purposes of this motion, the court must decide these disputed issues of fact in favor of the plaintiff.

[4] In the present case, Defendants assert that only the first type of fraudulent joinder is applicable; accordingly, the court will offer no analysis as to the second and third situations under which a fraudulent joinder can occur.

7

709 F.2d 1433, 1440 (11ᵗʰ Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11ᵗʰ Cir. 1993); *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11ᵗʰ Cir. 1996), *overruled as conflicting with prior panel decision on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11ᵗʰ Cir. 2000). If any of these situations are present, the nondiverse defendant has been fraudulently joined and its citizenship should be ignored for purposes of determining jurisdiction. *Id.*

"In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11ᵗʰ Cir. 1998). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by the parties." *Id.* at 1380. "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b) ... the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11ᵗʰ Cir. 1997) (internal citations and marks omitted). A district court must resolve all questions of fact in favor of the plaintiff; however there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11ᵗʰ Cir. 2005). When a defendant's affidavits

are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.*

A federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538. A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542.

## Discussion

### I.    Tracy has not asserted facts that could be construed to give rise to a possible cause of action against Leventry

Tracy does not dispute that Leventry was not responsible for training the sales staff who promoted Zyprexa, supervising the sales force or any other person responsible for promoting Zyprexa, supervising anyone who called on Tracy's prescribing physician, and does not dispute that Leventry had no involvement in the manufacture or development of Zyprexa, the preparation of package inserts, or otherwise participated in the promotion of Zyprexa. In an attempt to defuse the disputed facts as they apply to Leventry, Tracy asserts that the veracity of the declarations contained in Leventry's affidavit is a matter to be navigated during

9

discovery, and that the court need not concern itself with Leventry's representations. Contrary to Tracy's position, the court is obligated to make factual determinations where there is obvious dispute.

Under the precedent articulated in *Legg*, the court must resolve all factual disputes in favor of Tracy; however, because Leventry's declaration conflicts with Tracy's assertions contained within her complaint, and because Tracy does not dispute or adequately rebut the statements contained in Leventry's affidavit, the court is obligated to accept Leventry's affidavit as fact for the purpose of deciding the instant motion. *See Legg*, 428 F.3d at 1323. Accordingly, Tracy cannot maintain a cognizable claim against Leventry, the court concludes that Leventry has been fraudulently joined in this action, and his citizenship will be ignored for the purpose of establishing diversity jurisdiction in this case. *See Triggs*, 154 F.3d at 1287.

## II.     Tracy can maintain a possible cause of action against Green

Tracy's arguments as to the improper removal of this case are based solely on the claims asserted against Green. The issue before the court is whether a possible claim for violation of the AEMLD, fraud, or negligence might be maintained against Green in state court. A possibility of success as to any of the aforementioned claims will lead to a determination that Green is not fraudulently joined in this action, that complete diversity does not exist among the parties, and that this action is due to be

remanded.

It is undisputed that Green transmitted information to Tracy's prescribing physician regarding Zyprexa. Tracy directs the court to numerous internal Eli Lilly documents that demonstrate Eli Lilly's knowledge that Zyprexa was linked to reports of weight gain and diabetes. Knowledge of those risks, to some degree, was imparted to sales representatives through documents that outline plans, created and executed by Eli Lilly, to craft sales materials and jargon designed specifically for the purpose of minimizing, by virtue of Green's solicitations, physicians' concerns, including those of Tracy's prescribing physician, about the link between Zyprexa and weight gain or diabetes.

### A. Tracy can possibly maintain a claim for violation of the AEMLD against Green[5]

The AEMLD establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a matter of law." *Castrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976). In order to establish liability under the AEMLD, Tracy must prove:

---

[5]Because Tracy could possibly maintain a claim against Green for violation of the AEMLD, the court will not offer analysis as to the possibility of the remaining claims of fraud and negligence asserted against Green.

> [She] suffered injury or damages to [herself] or [her] property by one
> who sold a product in a defective condition unreasonably dangerous to
> the plaintiff as the ultimate user or consumer, if (a) the seller was
> engaged in the business of selling such a product, and (b) it was
> expected to, and did, reach the user or consumer without substantial
> change in the condition in which it was sold.

*Key v. Maytag Corp.*, 671 So.2d 96, 101 (Ala. Civ. App. 1995); *quoting Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976).

Tracy asserts that, as a seller of Zyprexa, Green faces possible liability under the AEMLD. Defendants argue that Green is not a "seller" as defined under the AEMLD; thus, she cannot be held liable for a violation of the statue.

The sole issue addressed in the parties briefs is whether Green is a "seller" under the AEMLD or a representative of the seller.[6] The Alabama Supreme Court has not yet addressed the question of whether a sales representative is a "seller" exposed to possible liability under the AEMLD or, conversely, a representative for the "seller" who would be shielded from liability.

Tracy contends that because Alabama courts have never addressed the issue at hand and due to the lack of a clear mandate by Alabama courts on the issue, an

---

[6]Due to Defendants' burden to demonstrate the propriety of removal, and given that the additional elements necessary to establish liability under the AEMLD are not addressed in any of Defendants' papers, the court finds that Defendants concede the possibility that an Alabama state court could find that Zyprexa is "a product not reasonably safe when applied to its intended use in the usual and customary manner."

Alabama court might determine Green to be a "seller" under the AEMLD. The bright-line rule to which Tracy clings is that a "seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner" is exposed to liability under the AEMLD "[a]s long as there is a causal relationship between the defendant's conduct and the defective product." *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976).[7] The parties have not cited, and this court is unaware, of the existence of any published opinion from an Alabama court addressing liability under the AEMLD of a product sales representative who is employed by the manufacturer of the product. However, there are persuasive cases that distinguish between a sales representative and a "seller." The court agrees with Defendants that these cases indicate that a sales representative is not a "seller" as defined under the AEMLD in certain instances; however, none of those situations exist in the case at hand. While numerous persuasive decisions exist supporting both sides of this argument, the court is persuaded that a pharmaceutical representative, under the specific facts and allegations in this case, is a "seller" for purposes of the AEMLD.

Defendants direct the court to the case of *In re Rezulin Products Liability*

---

[7]*Casrell*, along with *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976), are cited by the parties as the cases defining the scope of the AEMLD. Neither case addresses a distinction between a "seller" or a "representative of the seller."

*Litigation*, 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001), in which the court considered Alabama law and opined that holding a pharmaceutical sales representative liable under the AEMLD would contravene the doctrine's purpose and scope. The court observed, "[t]he AEMLD is founded on broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." *Id.* at 287 (quoting *Atkins v. American Motor Corp.*, 335 So.2d 134, 139 (Ala. 1976)) (internal marks omitted). The court found that there was "no reasonable basis for supposing that [an Alabama court] would impose liability on the sales representative" due to the representative's status as merely an agent of the manufacturer/seller and, as a corporate employee, the sales representative was not "the best one able to prevent sales of defective drugs." *Id.* at 288 (internal marks omitted).

The facts of *In re Rezulin* are distinguishable from the present case in that the AEMLD was inapplicable to the *Rezulin* defendant pharmaceutical sales representative, in part, due to an "absence of any alleged connection between the sales representative and Plaintiff ... [which is] fatal to all of the claims against the sales representative." *In re Rezulin*, 133 F.Supp.2d at 287. Green admits that she called upon Tracy's prescribing physician for the purpose of promoting Zyprexa before and

14

continuing throughout the time Tracy was undergoing treatment with the drug. There is a clear link between the sales representative and the plaintiff in this case that simply was not present in *In re Rezulin,* thereby providing an important distinction between the two cases.

Applying the holding in *In re Rezulin*, a district court in *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *6 (M.D. Ala. 2005) held that a sales representative who sold a replacement hip that later proved defective "is not deemed a 'seller' within the meaning of the AEMLD."[8]  While the *Bloodsworth* court relied heavily on *In re Rezulin*, the court noted an unpublished opinion by the Multi-District Litigation Court in *In re Baycol Products Liability Litigation*, M.D.L. No. 1431, *4-*7 (D.Minn. March 26, 2004), holding that "the purpose of the AEMLD did not support a claim against a sales agent who had no authority to compel or prevent the distribution of particular products." *Id.* (internal marks omitted).

In the instant case, Green compelled the distribution of Zyprexa to Tracy by virtue of promoting the drug to Tracy's prescribing physician while ensuring the safety of the drug. There is no indication in *Bloodsworth* that the sales representative made any assertions as to the safety of the artificial hip that caused injury to the

---

[8]The court notes that district court decisions, including decisions of this district, are not binding on this court.

plaintiff in that case. On the other hand, Green represented that Zyprexa was a safe form of treatment, thereby opening herself up to potential liability given that Zyprexa, at the time Green made the representation, had been linked to the risks of weight gain and diabetes. This distinguishing factor separates the case at bar from the holding in *Bloodsworth*.

The jewel of Defendants' contention that Green has been fraudulently joined in this action is *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). In *Legg*, the court, in dicta, quotes *Anderson v. Am. Home Prods. Corp.*, 220 F.Supp.2d 414, 425 (E.D. Pa. 2002), for the general proposition that joinder of individual sales representatives in a lawsuit against a diet drug manufacturer can "only be characterized as a sham, at the unfair expense not only of [Defendants] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Defendants], the real target, in a federal forum." However, as Tracy points out, *Legg* did not hold that all sales representatives in pharmaceutical cases are fraudulently joined. The individual sales representatives who were determined to be fraudulently joined in *Legg* were so found due to Legg's insufficient response or rebuttal to affidavits, executed by the defendants in that case, that were contrary to Legg's allegations in the complaint. The *Legg* defendants' uncontroverted testimony establishing a lack of knowledge in that case is

16

distinguishable from the instant case where Green's affidavit, purporting to establish her lack of knowledge as to the risks associated with Zyprexa, has been adequately challenged by the Plaintiff. In addition, the court in *Legg* was not called upon to interpret the definition of "seller" under the AEMLD. This court does not read the holding in *Legg* to mean that all nondiverse sales representatives are per se fraudulently joined in actions involving pharmaceutical companies.

There are persuasive cases in which a district court has found potential liability under the AEMLD for an individual corporate employee, including sales representatives employed by a manufacturer. Two such cases, involving the possible validity of AEMLD claims against individual, nondiverse defendants in products liability actions held that:

> In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity. *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.,* 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.,* 563 F.Supp. 505, 513 (M.D.Ala.1983)); *see also Chandler v. Hunter,* 340 So.2d 818, 822 (Ala.Civ.App.1976). Obviously, to the extent R.J. Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions.

*Seaborn v. R.J. Reynolds Tobacco Co.,* 1996 WL 943621, *8 (M.D. Ala. 1996).

> The same language can be applied here: Defendants Philip Morris and
> Brown & Williamson clearly do not employ ghosts. That is, the court
> finds that some of the moving Defendants' employees are likely to hold
> some superior knowledge regarding the nature of cigarettes. The court
> finds that it is therefore conceivable that Plaintiff's AEMLD claims ...
> may be viable [against the individual nondiverse defendants].

*Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D. Ala.
1999).

A similar situation to those present in *Seaborn* and *Clay* exists in the instant
case. Green admits to being an Eli Lilly employee engaged to promote Zyprexa to
physicians, including Tracy's prescribing physician. Therefore, she is liable for torts
in which she personally participated. Also, if Eli Lilly violated the AEMLD, it acted
through Green in this case, and Tracy should be allowed to pursue Green as an
individual defendant, considering Green's possible superior knowledge of the risks
associated with Zyprexa and her representation to Tracy's prescribing physician that
the drug was safe.

Eli Lilly's position, that its sales representatives are never "sellers" within the
definition of the AEMLD, is untenable when examined from the perspective that such
a holding would shield all nondiverse pharmaceutical sales representatives from any
liability under the doctrine. Such a holding would be contrary to the purpose and
scope of the AEMLD by allowing Green, an individual who potentially had

knowledge of the risks of weight gain and diabetes associated with Zyprexa, who promoted the drug as being safe to Tracy's prescribing physician, and who was in a position to prevent the defective product from reaching Tracy, to escape all liability under the doctrine.

Accordingly, the court holds that Green is a "seller" under the AEMLD and is therefore subject to liability. On a motion to remand, a court must determine whether there is no possibility that the plaintiff can prove a cause of action against the resident defendant. Due to Green's status as a "seller," and due to Defendants' apparent concession of the additional elements of an AEMLD claim against Green, a state court could possibly find a valid AEMLD claim against Green.

## Conclusion

The court finds that joinder of the nondiverse party, Mary V. Green, is not fraudulent. Complete diversity among the parties as required by 28 U.S.C.A. § 1332 does not exist. Consequently, this court lacks subject matter jurisdiction over this action, and this case is due to be remanded to the Circuit Court of Jefferson County, Alabama. Accordingly, Tracy's Emergency Motion to Remand is due to be **GRANTED**.

A Final Order will be entered consistent with this Memorandum Opinion.

19

**DONE** this 25th day of April, 2006.

VIRGINIA EMERSON HOPKINS
United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DALE SLATTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 05-VEH-1056-S** |
| | ) | |
| **MERCK & CO., INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### Memorandum Opinion

Presently before the Court are Plaintiffs' Emergency Motions to Remand and for Expedited Hearing (Doc. #13) and Motion for Hearing (Doc. #27) and Defendants' Motion to Stay (Doc. 10). Upon due consideration, and for the reasons that follow, Plaintiff's Motion to Remand will be **GRANTED** (Doc. #13), Plaintiff's Motion for Expedited Hearing (Doc. #13) will be **DENIED**, Plaintiff's Motion for Hearing (Doc. #27) will be **DENIED**, and Defendants' Motion to Stay (Doc. 10) will be **DENIED**.

On April 18, 2005, the Plaintiffs, Dale Slatton and Gary Albright, filed their Complaint against the Defendants in the Circuit Court of Jefferson County, Alabama. Defendant Merck & Company, Inc. ("Merck") removed the action to this Court on May 20, 2005. Only Merck, and not all of the Defendants, joined in the removal, despite the requirements of 28 U.S.C. 1441(b). Merck asserts that because the

individual Defendants were fraudulently joined, their consent to the removal was not necessary.  Merck also asserts that this court has original jurisdiction over this case under 28 U.S.C. § 1332 based on the diversity of citizenship of the parties.  28 U.S.C. § 1332 does confer jurisdiction on the Federal District Courts in cases between citizens of different states when the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

The Plaintiff does not dispute that the jurisdictional amount is met. The court will therefore turn to the question of diversity. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,*  511 U.S. 375, 377 (1994).  For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand.  *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  In reviewing a Motion to Remand, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.  *Friedman v. New York Life Ins. Co.,* --- F.3d ----, 2005 WL

2

1324593 (11th Cir. 2005); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

The Plaintiff argues that the case should be remanded because Robert Wall, Gary Harlan, Angela Finch, Matthew King, Patricia Aiken, and Sonya Coley ("individual Defendants") did not join in the removal and because complete diversity does not exist. Plaintiff asserts that the inclusion of the individual Defendants in the originally filed complaint destroyed complete diversity. Plaintiff and each of the individual Defendants are citizens of Alabama. As noted above, Merck asserts that the individual Defendants were fraudulently joined to avoid diversity.

"A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship." *Polyplastics, Inc. v. Transconex, Inc.,* 713 F.2d 875, 877 (C.A.Puerto Rico,1983) (citing 1A J. Moore, Moore's Federal Practice ¶¶ 0.161 [1.-1] at nn. 23 & 25, 0.161[2], 0.168[3.-2-2]). The determination of the issue of fraudulent joinder will thus determine whether the joinder of the individual Defendants in the removal was necessary.

*Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989) sets forth the test to be applied when it is alleged that a non-diverse party is fraudulently joined.

> The test for determining whether or not a defendant has been
> fraudulently joined is twofold: (1) look to see whether there
> is no possibility the plaintiff can establish any cause of action

3

> against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

*Cabalceta*, 883 F.2d at 1561.

This is indeed a difficult burden for the removing party to meet. The height of the bar is raised further by the fact that "[i]n addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff. . . ." *Id.* at 1561.

Defendant does not contend that the Plaintiff fraudulently pled jurisdictional facts in his complaint but instead relies on the first prong of the test described in *Cabalceta*. Therefore, the question presented to this court is whether the Defendant has carried the burden of proving that "there is no possibility the plaintiff can establish any cause of action against the resident defendant[?]" "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997). "For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant." *Crowe,* 113 F.3d 1541.

4

The Eleventh Circuit has gone as far as to require that "[d]oubts as to whether removal of an action is permissible should be resolved against removal." *Key Bank U.S.A., N.A. v. First Union Nat'l Bank of Florida*, 234 B.R. 827, 829 (M.D. Fla. 1999) (citing *Roe v. O'Donohue*, 38 F.3d 298, 303 (7th Cir. 1994)).

In Count VI, the Plaintiff asserts a claim for Fraud-Misrepresentation against the individual (Alabama-resident) Defendants.  Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Ex parte Michelin N. Am., Inc.*, 795 So. 2d 674, 678-79, (Ala. 2001).

In Count VI the Plaintiff alleges:

1.    that Defendants "fraudulently made material misrepresentations that Vioxx . . . was safe and effective.  Defendants represented Vioxx as safe so that the general consuming public, including each Plaintiff, would rely upon said representations when purchasing said product;" *Complaint*, at 21.

2.    that these representations were made so that Plaintiff and the general public would rely on these representations and take the drug; *Id.*

3.    that "[individual] Defendants made representations to each Plaintiff's prescribing physician that Vioxx was safe and effective, and did not cause

cardiovascular risks. [That] these representations were false, and were made intentionally and/or recklessly, but with knowledge of their falsity. The prescribing physician relied upon these representations and prescribed Vioxx to the Plaintiff, proximately resulting in [injury]." *Id.*

At least with regard to Count VI, Plaintiff has not asserted "obviously fraudulent or frivolous claims" against the individual Defendants and thus their joinder is not fraudulent. The court is of the opinion that it does not have diversity jurisdiction.

As to the issue of whether this Court should defer to the transferee Court to decide the remand issue, the court is persuaded by the logic of *Morales v. American Home Products Corp.*, 214 F. Supp. 2d 723 (S.D. Texas 2002), where the Eastern District Court wrote:

> It is abundantly clear that a conditional transfer order by the MDL panel does not affect or suspend any pretrial proceedings in this Court. This Court has sometimes deferred to the MDL court when presented with an issue likely to be common among all other cases throughout the nation. Here, however, the key question is whether Defendant Circle K has been fraudulently joined. This issue is controlled by the law of the Fifth Circuit Court of Appeals and ultimately the laws of Texas, as applied to the pleadings in this case. There is no reason to ask a federal court in Washington to make that decision.

*Morales v. American Home Products Corp.*, 214 F.Supp.2d 723, 725 (S.D.Tex.,2002). Similarly, the key issue being decided by this Court is whether the

6

individual Defendants have been fraudulently joined.  This is a question of Eleventh

Circuit and Alabama law, best decided by a federal Court sitting in Alabama.

This case will be **REMANDED** to the Circuit Court of Jefferson County,

Alabama.  A separate order will be entered.

**DONE** this 21st  day of July, 2005.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

7

FILED
2005 Jul-21  AM 09:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DALE SLATTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 05-VEH-1056-S** |
| | ) | |
| **MERCK & CO., INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Presently before the Court are Plaintiffs' Emergency Motions to Remand and for Expedited Hearing (Doc. #13) and Motion for Hearing (Doc. #27), and Defendants' Motion to Stay (Doc. 10).  For the reasons stated in the Memorandum of Opinion filed contemporaneously herewith, it is hereby **ORDERED, ADJUDGED,** and **DECREED,** as follows:

1.    The Plaintiff's Motion to Remand is **GRANTED** (Doc. #13);

2.    The Plaintiff's Motion for Expedited Hearing (Doc. #13) is **DENIED**;

3.    The Plaintiff's Motion for Hearing (Doc. #27) is **DENIED**; and

4.    Defendants' Motion to Stay (Doc. 10) is **DENIED**.

5.    This case is hereby **REMANDED** to the Circuit Court of Jefferson County, Alabama.

**DONE** and **ORDERED** this 21st day of July, 2005.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

FILED

2005 Mar 28 PM 04:07
U.S. DISTRICT COURT
2005 Feb 10 PM 01:39 MA
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | CIVIL ACTION NO. 02-RRA-2710-S |
| | ) | |
| MERCK & COMPANY, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The motion to remand is **GRANTED**, and this case is ORDERED remanded to the state court from which it was removed. The Clerk shall effect the remand after ten (10) days.[1]

DONE this day 10th of February, 2005.

*Robert R Armstrong*

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE

---

[1]The parties are directed to Rule 72(b), *Federal Rules of Civil Procedure*, and the General Order of Referrals of Civil Matters to United States Magistrate Judges at paragraph 5.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 JUN 26 PM 3: 58

U.S. DISTRICT COURT
N.D. OF ALABAMA

LAVAUGHN HALES,                    )
                                   )
        Plaintiff,                 )
                                   )        CIVIL ACTION NO.
v.                                 )
                                   )        03-AR-1028-M
MERCH & CO., INC., et al.,         )
                                   )
        Defendants.                )
                                   )

ENTERED
JUN 2 6 2003

### ORDER OF REMAND

In accordance with the accompanying memorandum opinion, plaintiff's motion to remand is GRANTED upon the court's finding pursuant to 28 U.S.C. § 1447(c) that it lacks subject matter jurisdiction. Accordingly, the above-entitled action is REMANDED to the Circuit Court of Dekalb County, Alabama from which it was improvidently removed. The Clerk is DIRECTED to effectuate this order.

The parties shall bear their own respective costs in this court.

DONE this 26th day of June, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LAVAUGHN HALES,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )          CV 03-AR-1028-M
                                   )
MERCK & CO., INC., *et al.*        )
                                   )
        Defendant.                 )

**MEMORANDUM OPINION**

Before the court is a motion to dismiss filed by Hal

Henderson ("Henderson")[1], Steve Santos ("Santos")[2], and Matthew

King ("King")[3] and a motion to remand to the Circuit Court of

DeKalb County, Alabama filed by plaintiff, Lavaughn Hales

("Hales"). Hales brought this products liability case against

defendant, Merck & Co., Inc. ("Merck"), and its agents Henderson,

Santos, King, and Patricia Aiken ("Aiken")[4], alleging that she

---

[1]Henderson is a district sales manager for Merck, and a resident
of Cobb County, Georgia.

[2]Santos is a district sales manager for Merck and a resident of
Montgomery County, Alabama.

[3]King is a sales representative for Merck, and a resident of
Jefferson County, Alabama.

[4]Aiken is a sales representative for Merck, and a resident of
Jefferson County, Alabama. Aiken had not yet been served when
the case was removed to this court.

1

suffered a heart attack after taking the prescription drug Vioxx, manufactured and marketed by Merck.

### Facts

Hales filed suit in the state court on March 24, 2003. Her complaint contained five counts charging various defendants with 1)designing, manufacturing, and/or selling a defective product and failing to warn; 2)negligence; 3)breach of express warranty; 4)breach of implied warranty; 5)negligent, reckless, intentional and fraudulent misrepresentation and suppression. Three of the individual non-diverse defendants were served on April 3, 2003. Merck, Henderson, Santos, and King are all represented by the same counsel. On May 5, 2003, Merck, Santos, Henderson, and King filed their notice of removal and answer in this court alleging diversity jurisdiction based on plaintiff's alleged fraudulent joinder of the four non-diverse individual defendants. The court deemed the affirmative defense of fraudulent joinder a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), and included Aiken because a dismissal of the action against Aiken is as necessary to this court's diversity jurisdiction as a dismissal of the action against the three non-diverse individuals who have filed appearances. Oral argument was heard at the court's regular motion docket on June 20, 2003.

2

The dispositive jurisdictional question is whether Hales can assert **any** valid cause of action against a non-diverse sales representative/manager under Alabama's substantive law or under a legitimate prospect for a change in Alabama law.  This court in *Barnes v. American Honda Motor Co.*, 02-AR-1664-J, stated a court's duty in evaluating a motion to remand a diversity removal challenged on fraudulent joinder grounds as follows: "If there is a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court." *Whitlock v. Jackson Nat'l Life Ins.*, 32 F. Supp. 2d 1286, 1289 (M.D. Ala. 1998)(emphasis supplied).  In the present action Hales argues that she has a valid AEMLD claim against the sales representatives/managers for supplying and/or for failing to warn and/or inadequately warning and/or failing to instruct her treating physician of the dangers of Vioxx.  Henderson, Santos, and King argue that no cause of action has been stated nor can be stated against the sales representatives/managers because only the manufacturer is liable as a "seller" of a defective product under AEMLD, and all other claims are subsumed or merged into the AEMLD claim.  Hales argues to the contrary that the Alabama

3

Supreme Court has never addressed whether an individual employee

of a defendant designer and manufacturer of a prescription drug,

who has responsibility for marketing and selling the drug on

behalf of his employer, can be held liable on a claim arising

under AEMLD, and accordingly the court has never rejected

individual liability against intermediary "sellers."

Furthermore, Hales points out that under Alabama law a

person is liable for his intentional torts.  Hales asserts that a

cause of action exists against Henderson, King, Santos, and Aiken

for the intentional tort of fraudulent misrepresentation and

suppression of material information regarding the safety and

efficacy of Vioxx, and the participation in an aggressive

marketing campaign that fraudulently misrepresented the product

to treating physicians.  Hales also contends that a cause of

action for negligence and breach of warranty exists against the

individual sales representatives because they had a duty to warn

her treating physician of the dangers of Vioxx.

Hales cites three decisions by federal courts in Alabama

that have remanded in cases similar to the instant action:

*Roughton v. Warner-Lambert Co.*, 01-D-865-N (De Ment, J.)(court

remanded for a second time a products liability case brought in

state court against the defendant Warner-Lambert, Co. as the

4

manufacturer and its sales representatives/territory manager, an
Alabama citizen.  The case was originally remanded after Judge
Myron H. Thompson found that defendants had not met their burden
of showing either fraudulent joinder or fraudulent misjoinder);
*Pace v. Davis a division of Warner-Lambert*, 00-J-3046 (Johnson,
J.)(court remanded a products liability case against a drug
manufacturer and the non-diverse treating physician); *McCaffery
v. Warner-Lambert Co.*, 00-PT-2848-M (Propst J.) (court remanded
in case brought against drug manufacturer and treating
physician).

      Henderson, Santos and King cite *Tillman v. R.J. Reynolds
Tobacco*, 253 F.3d 1302 (11th Cir. 2001) in support of their
position that claims asserted against a retailer merge into an
AEMLD claim against the manufacturer.  But in *Tillman*, the
Eleventh Circuit certified the following question to the Alabama
Supreme Court: "Whether there is any potential cause of action
under any theory against any retail defendants including those
that employ pharmacists who sell cigarettes for claims brought
under the Alabama Extended Manufactures Liability Doctrine, or
premised on negligence wantonness, or civil conspiracy under
Alabama law."  The question has not been answered.  A similar
question was certified in *Spain v. Brown & Williamson Tobacco*

5

Corp., 230 F.3d 1300 (11th Cir. 2000). It too, has not been answered.

This court unashamedly quotes itself: "[T]his court cannot substitute its uncertain judgment of what the Alabama law ought to be, or to predict what it someday will be, when this court's jurisdiction is premised on 28 U.S.C. §§ 1441 and 1332. The court must give a plaintiff the benefit of all doubt on questions of Alabama law when deciding upon subject matter jurisdiction that depends upon the state of the state of the law." *Barnes*, at 3.

Henderson, Santos, and King argue alternatively that even if there is a viable cause of action against intermediary sellers under AEMLD, there is no cause of action against these four sales representatives/managers because three of them have presented affidavits stating that they have never visited Dr. Cornelius B. Thomas, Hales' treating physician, and accordingly there is no causation. The court notes, without finding it unduly significant, that there is no such affidavit for Aiken. The court disagrees. If the court were to consider the affidavits of Henderson, Santos, and King it would have to convert the motion to dismiss under Rule 12(b)(6) to one under Rule 56 and find as a matter of law that no genuine issue of material fact existed.

6

This would require the court do what it explicitly said it could not do in *Barnes*, adjudicate the claims against the defendants on their merits before finding that the court has subject matter jurisdiction. *Barnes*, at 3-4.

### Conclusions

Because the defendants must prove by clear and convincing evidence that no cause of action exists, and because the question of whether a cause of action exists against an intermediary supplier under AEMLD is uncertain, plaintiff's motion to remand is due to be granted, and defendants' motions to dismiss are due to be denied. A separate order will be entered.

DONE this _26th_ day of June, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 OCT 20 PH 3: 45

U.S. DISTRICT COUR
N.D OF ALABAMA

|  |  |
|---|---|
| PAMELA FLOYD, STACIE H. RICHARDS, and ANN RUTLEDGE,<br><br>Plaintiffs,<br><br>vs.<br><br>WYETH, a corporation; STACY STUBBLEFIELD, an individual; MICHAEL T. SULLIVAN, an individual; and BETSY R. WEAVER, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action Number
03-C-2564-M

**ENTERED** pc

OCT 2 0 2003

REMAND ORDER

Because the removing Defendant has failed to carry its heavy burden of proof of fraudulent

joinder, and the attendant lack of complete diversity of the parties, this case is hereby REMANDED

to the Circuit Court of Marshall County, Alabama, from whence it was improvidently removed.

The costs of this action are hereby taxed against the removing Defendant.

Done this _____20th_____ day of October, 2003.

_____
Chief United States District Judge
U.W. Clemon



FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NOV 2 1 2003

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CLERK

U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

SHARON C. CRITTENDEN,      )
et al.,                    )
                           )
        Plaintiffs,        )
                           )
        v.                 )        CIVIL ACTION NO.
                           )        03-T-920-N
WYETH, a corporation,      )
et al.,                    )
                           )
        Defendants.        )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

EOD ___11/21/03___

20

Second, there has not been <u>fraudulent misjoinder</u> of any
resident defendant (that is, plaintiffs have reasonably
joined such a defendant with other defendants pursuant to
Rule 20 of the Federal Rules of Civil Procedure), <u>see</u>
<u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360
(11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of
the court that plaintiffs' motions to remand, filed on
September 30 and October 15, 2003 (doc. nos. 9, 13, and
14), are granted and that, pursuant to 28 U.S.C.A.
§ 1447(c), this cause is remanded to the Circuit Court of
Covington County, Alabama.

It is further ORDERED that all other outstanding
motions are denied.

The clerk of the court is DIRECTED to take appropriate
steps to effect the remand.

DONE, this the 21st day of November, 2003.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHANIE TERRELL, et al.,        ]
                                  ]
        Plaintiffs,               ]
                                  ]
v.                                ]          CV-03-BE-2876-S
                                  ]
WYETH, et al.,                    ]
                                  ]
        Defendants.               ]
                                  ]
                                  ]
                                  ]
                                  ]
                                  ]

**ENTERED**
DEC 1 2 2003

## MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT

The case comes before the court on Plaintiff's Motion to Remand (Doc. 10). Having reviewed the pleadings and briefs of counsel, the court is not persuaded that the plaintiffs failed to state a viable claim against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and, therefore, the court is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on October 23, 2003 from the Circuit Court of Jefferson County, Alabama. Although the complaint purports to state claims against corporate defendants who admittedly are not Alabama residents, it also names as a defendant Pam Parker, admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441. Defendants argue, however, that Ms. Parker is fraudulently joined.

1

The standard for successfully removing a case from state to federal court is a high one, and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheo de Perez v. AT&T Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility to establish a cause of action against non-diverse defendants in state court, or (b) that the plaintiff's pleading of jurisdictional facts have been made fraudelently. Cabelcata, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." See Coker, 709 F.2d at 1440-41; see also Pacheo de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand.* See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (emphasis added). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

2

Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and timing of the injuries sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that the plaintiffs would not be successful in urging its various theories under Alabama law.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve *all* doubts in favor of remand, the Plaintiffs' Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Jefferson County, Alabama.

DONE and ORDERED this _____ day of December, 2004.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

**FILED**

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

JAN 2 3 2004

|                           |     |                              |
|---------------------------|-----|------------------------------|
| SARA BLAIR, et al.,       | )   | **CLERK**                    |
|                           | )   | **U. S. DISTRICT COURT**     |
| Plaintiffs,               | )   | **MIDDLE DIST. OF ALA**      |
|                           | )   |                              |
| v.                        | )   | CIVIL ACTION NO. 03-T-1251-S |
|                           | )   |                              |
| WYETH, et al.,            | )   |                              |
|                           | )   |                              |
| Defendants.               | )   |                              |

### ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

**EOD** January 23, 2004

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on December 30, 2003 (Doc. No. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 22d day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

**FILED**

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION JAN 2 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

RITA BRUNSON,                      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    CIVIL ACTION NO. 03-T-1167-S
                                   )
WYETH, et al.,                     )
                                   )
        Defendants.                )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiff's motion to remand. The court agrees with plaintiff that this case should be remanded to state court. First, there has not been _fraudulent joinder_ of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been _fraudulent misjoinder_ of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

**EOD** _1/23/04_



Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand, filed on December 16, 2003 (Doc. No. 11), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the ___23rd___ day of January, 2004.


                                        MYRON H. THOMPSON
                                UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION FILED

·JAN 2 3 2004

CLERK ☐
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| VALERIE BALLARD, et al.,     ) | |
|                       ) | |
|     Plaintiffs,        ) | |
|                       ) | |
|     v.               :    ) | CIVIL ACTION NO. 03-T-1255-N |
|                       ) | |
| WYETH, et al.,          ) | |
|                       ) | |
|     Defendants.     ) | |

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

12

E OD 1/23/04

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 6, 2004 (Doc. No. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the ___28___ day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

04 JAN 30  PM 3: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SANDRA STOREY, | ] | |
| | ] | |
|     Plaintiff, | ] | |
| | ] | |
| v. | ] | CV-04-BE-27-E |
| | ] | |
| WYETH, INC., WYETH | ] | |
| PHARMACEUTICAL, and | ] | |
| ANTHONY CHERRY, | ] | |
| | ] | |
|     Defendants. | ] | |
| | ] | |
| | ] | |
| | ] | |

ENTERED

JAN 3 0 2004

## MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT

The case comes before the court on the plaintiff's "Motion to Remand" (Doc. 5). Having reviewed the entirety of the pleadings and briefs of counsel, the court hereby GRANTS the motion to remand. The court is not persuaded that the plaintiffs failed to state a viable claim against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and, thus, is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on January 7, 2004, from the Circuit Court of Calhoun County, Alabama. Although the complaint purports to state claims against corporate defendants who admittedly are not Alabama residents, it also names as a defendant Anthony Cherry, admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441. Defendants argue, however, that Mr. Cherry is fraudulently joined.

The standard for successfully removing a case from state to federal court is a high one,

and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheo de Perez v. AT&T Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility of establishing a cause of action against a non-diverse defendant in state court, or (b) that the plaintiff's pleading of jurisdictional facts has been made fraudulently. Cabelcata, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41; see also Pacheo de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand*. See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

Although whether the plaintiff will be able to successfully prove Mr. Cherry's liability is unclear, this court will not speculate that the plaintiff has *no* possibility of establishing its claims

of negligence and fraud against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, this court cannot make rash decisions regarding actions made by the defendants and their resulting consequences. Nor can the court conclusively determine that the plaintiff would not be successful in urging her various theories under Alabama law.

Similarly, the court is not prepared to conclude that the plaintiff's fraud claims should be struck for lack of specificity. While the complaint is indicative of a "form" pleading, it adequately informs the defendants of the nature of the fraud.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve all doubts in favor of remand, the Plaintiff's Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Calhoun County, Alabama.

DONE and ORDERED this 30th day of January, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

04 FEB -3 AM 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

SANDRA CASH,                        )
                                    )
            Plaintiff,              )
                                    )
                                    )
                                    )
vs.                          :      )     CIVIL ACTION NO. 03-RRA-3378-E
                                    )
WYETH, et al.,                      )
                                    )
            Defendants.             )

ENTERED
FEB - 3 2004

## MEMORANDUM OF DECISION

This action was removed from the Circuit Court of Calhoun County, Alabama. The

plaintiff has filed a motion to remand. The complaint alleges that she suffered valvular heart

disease as a result of taking the drug Pondimin or Redux. (The defendants state that the

plaintiff took Pondimin only.) The question before the court is whether defendant Anthony

Cherry, Wyeth's sales representative, was fraudulently joined as a defendant in order to defeat

diversity jurisdiction.

Remand must be granted if there is a possibility that the state court would find that the

plaintiff has stated a claim against the defendant in question. *Cabalceta v. Standard Fruit Co.*,

883 F.2d 1553, 1561 (11th Cir. 1989). Evidence may be considered as well as the allegations

in the complaint:

> To determine whether the case should be remanded, the district court must
> evaluate the factual allegations in the light most favorable to the plaintiff and must
> resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549.
> The federal court makes these determinations based on the plaintiff's pleadings at the



time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11ᵗʰ Cir. 1997), *quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Along with other submissions, the defendants have submitted the affidavit of Cherry, and the plaintiff has presented the affidavit of her doctor, Omar Khalaf. The parties have not conducted discovery.

The complaint alleges the following against Cherry:

22.  Upon information and belief the positive tortious acts which were committed by the Sales Rep Defendant in his individual and/or corporate capacity, include, but are not limited to, the following:

a.  Sales Rep Defendant failed to convey adequate warnings to the Plaintiff through the prescribing physician set forth above regarding the risks of prescribing fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

b.  Sales Rep Defendant was in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™) which has caused harm to the Plaintiff SANDRA CASH;

c.  Sales Rep Defendant negligently distributed, marketed, advertised and/or promoted the drugs fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

d.  Sales Rep Defendant made fraudulent and reckless misrepresentations regarding the character, safety and efficacy of the drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), and;

e.  Sales Rep Defendant, with knowledge of unreasonable risks associated with the ingestion of fenfluramine (Pondimin®) and dexfenfluramine (Redux™), alone and/or in combination with phentermine continued to make misrepresentations regarding the character, safety and efficacy of drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), while providing and/or offering incentives, rebates, reimbursements, perks, and/or other consideration to Plaintiff's prescribing physician

2

> in furtherance of attempting to influence the prescribing of
> said diet drugs.

> 23.   Defendant Anthony Cherry is a citizen of Calhoun County and is over nineteen
> years of age.  At all times material hereto, this Defendant was <u>in the business of
> promoting, marketing , developing, selling and/or distributing the pharmaceutical
> drugs fenfluramine and/or dexfenfluramine in the State of Alabama and did market,
> develop, sell, detail and/or distribute said drugs to Plaintiff, Sandra Cash's prescribing
> physician, Omar Khalaf, M.D.</u>  This defendant was also involved in a <u>conspiracy to
> conceal certain information relating to the dangers associated with the subject drug</u>
> products from the consuming public, including but not limited to Plaintiff.

*Complaint*, ¶¶22-23 (emphasis added).  Thus, the complaint alleges that Cherry failed to warn

of the dangers of Pondimin, negligently marketed and distributed this dangerous drug,

recklessly and intentionally misrepresented its dangers, and conspired to conceal its dangers.

The defendants state that under Alabama law the plaintiff clearly cannot state a claim

against Cherry.  They cite law holding that, absent personal participation, an employee is not

liable for the negligence of his employer, that the fraud and conspiracy claims are not pled

with particularity, and that a conspiracy claim fails when the claims underlying the conspiracy

fail. Moreover, they factually contend that Cherry said nothing about Pondimin whatsoever.

Relying on Cherry's affidavit, the defendants state that Cherry did not even promote

Pondimin, that Wyeth composed warnings and other information concerning Pondimin for

Cherry, who was not a part of that process, and that Cherry did not have the expertise to

question the accuracy of any information supplied by Wyeth.  Cherry further states in his

affidavit that he was unaware of any association between Pondimin and the heart disease of

which the plaintiff complains, and he made no representation whatsoever concerning this

drug. The defendants assert in their written opposition to remand that this evidence is uncontroverted. However, Dr. Khalaf states that Cherry visited his office and "promoted and marketed" Pondimin, *Khalaf Affidavit*, ¶3, and that Cherry "continuously represented that [Pondimin and Redux] were safe and effective. Also, [Cherry] represented to [him] that the drugs were safe and effective for long term use," *id.* at ¶6.[1] Khalaf additionally states:

> The reliance I placed on Mr. Cherry and Mr. Lavender regarding safety issues for Pondimin and Redux was made even more critical by the fact that warnings to physicians prescribing Pondimin and Redux that these drugs could cause valvular heart disease were not contained in the Physicians' Desk Reference ("PDR") until the 1998 edition, which was after Pondimin and Redux were withdrawn from the market.

*Id.* at ¶7.

### Whether to Defer to MDL Judge

The defendants want the court to allow this remand issue to go to the MDL court. In her motion to remand, the plaintiff responds that in an MDL hearing the judge "indicated a preference" for all remand motions to be handled by the various district courts. In their written opposition to remand, the defendants respond that a copy of the transcript of the 1998 hearing stating such "sentiments" has not been supplied by the plaintiff. The defendants, however, do not deny that the judge did, in fact, indicate such a preference.

The defendants refer to statements in an August, 2003 memorandum written by the MDL judge:

---

[1] Materials presented to the court by the defendants included information sent to Wyeth's sales force. In "Questions and Answers About Pondimin" and in the Pondimin "Fact Sheet" it is stated that Pondimin is for short-term use.

> [R]ecurrent issues have continued to emerge in connection with motions to remand to state courts cases removed by Wyeth on the basis of diversity of citizenship. We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts. Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.   :

This memorandum was addressing motions to remand all pending *cases* to the various transferor courts on the ground that the MDL had done its work. The court gave several reasons why the cases should not be remanded to the transferor courts, one of which was that, after all its work, the MDL had developed a "broader perspective than is usually available" to the transferor courts in dealing with motions to remand to state courts based on fraudulent joinder.

Also, the defendants cite *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990):

> Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common *questions of law and fact, some or all of which relate to the Agent* Orange class action and settlement, *see In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988), and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years, *see In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 154-59 (2d Cir.1987) (describing history of proceedings before Judge Weinstein), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL

> Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, *cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947) (district court has authority to issue injunction while jurisdictional questions are pending), that objection to be resolved by the transferee court.

*Id.* at 9. This language points out what lies at the heart of MDL litigation: common questions of law or fact.

The question of whether Cherry was negligent or made fraudulent statements is specific to this case. The MDL court would not be in a better position to decide remand than this court. Also, this court has heard oral argument and considered the parties' contentions. Wherefore, the court will exercise its discretion to decide the question of fraudulent joinder.

## Whether There Is Fraudulent Joinder

The defendants' argument against remand is premised upon the evidence being uncontroverted that Cherry did not promote or market or make any representation to Dr. Khalaf about Pondimin. If that were true, the motion to remand might be due to be denied. But there is clearly a factual dispute about what Cherry did and said, as Dr. Khalaf states that Cherry visited his office, promoted and marketed Pondimin, and represented that Pondimin was safe and effective for long-term use. Wherefore, there is at least a possibility that the plaintiff has a claim against Cherry.

## Decision

For the reasons stated above, the court has decided to exercise its discretion to decide

6

the remand issue, this is not a case of fraudulent joinder, and the motion to remand is due to

be granted for lack of subject matter jurisdiction. An appropriate order will be entered.

DONE this _2nd_ day of February, 2004.

Robert R. Armstrong, Jr.
United States Magistrate Judge

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEVENARI MARSHAL, DIANE POLITO, )
and MAXINE SMITHEY, )
)
Plaintiffs, )
)
vs. )
)
WYETH, INC., WYETH )
PHARMACEUTICALS, INC., )
BEN LAVENDER, and WILLIAM OWEN, )
)
Defendants. )

**ENTERED**

FEB 18 2004

Case No. CV-04-TMP-179-S

## ORDER OF REMAND

This cause is before the court on the plaintiffs' emergency motion to remand, filed January 30, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

### Procedure History

Plaintiffs Marshal, Polito, and Smithey filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Lavender and Owen, in the Circuit Court of Jefferson County, Alabama, on December 30, 2003. It alleges claims for "strict liability (defective product)," "strict liability–failure to warn," "strict liability–failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs,

Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated

with several medical problems, including primary pulmonary hypertension and heart valve defects.

Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently,

have suffered medical injuries due to that use. With respect to defendants Lavender and Owen,

plaintiffs contend that these salesmen were one of the primary sources by which Wyeth

communicated to physicians the risks and benefits associated with use of these medications and,

further, that these defendants either innocently, negligently, or recklessly failed to reveal to

physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on January 29, 2004, contending that the

court has original diversity jurisdiction because Lavender and Owen, both Alabama residents, are

fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction.

Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Owen are

not fraudulently joined and that the removal to this court was intended to do nothing more than delay

the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with

an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand

motion on an expedited basis before the case can be transferred to the MDL court.

### Fraudulent Joinder

The parties agree that the case involves more than $75,000 in controversy and that the

plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Owen are

Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that

no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper,

2

and the case is due to be remanded to the state circuit court. Defendants maintain, however, that

Lavender and Owens were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction

and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis

for this contention, defendants have offered evidence that Lavender and Owen did not sell or

promote the drug Pondimin at all and that they knew nothing about the medical risks associated with

Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender

or Owen, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity

jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in Crowe

v. Coleman, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of
> proving that either: (1) there is no possibility the plaintiff can establish a cause of
> action against the resident defendant; or (2) the plaintiff has fraudulently pled
> jurisdictional facts to bring the resident defendant into state court. Cabalceta v.
> Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the
> removing party is a 'heavy one.' B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549
> (5th Cir. Unit A 1981).

Id. at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the

absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of

his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff
> has the right to select the forum, to elect whether to sue joint tortfeasors and to
> prosecute his own suit in his own way to a final determination." Parks v. The New
> York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of
> removal statutes also prevents "exposing the plaintiff to the possibility that he will
> win a final judgment in federal court, only to have it determined that the court lacked
> jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.,
> 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E.

3

Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. **When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.** See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco

4

Oil Co., 709 F.2d 1433, 1440-41 (11ᵗʰ Cir. 1983), *superceded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11ᵗʰ Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

See also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11ᵗʰ Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Owen, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Owens misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians, reasonably relied upon such misrepresentations. It is unimportant that Lavender and Owen did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent

---

[1] Lavender and Owen have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. They reason from this and the fact that plaintiff Smithey took only Pondimin that there is no possibility that, at the very least, Smithey has any claim against them. They nonetheless admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

misrepresentation as well as for reckless and intentional misrepresentations. For example, the
Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended
> misrepresentation. The good faith of a party in making what proves to be a material
> misrepresentation is immaterial as to whether there was an actionable fraud. Smith
> v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though
> a misrepresentation be made by mistake and innocent of any intent to deceive, if it
> is a material fact and is acted upon with belief in its truth by the one to whom it is
> made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d
> 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v.
Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Owen did not know of the PPH and valvular
heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally
misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint,
understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible
that a state court may find that the complaint states a claim against the non-diverse defendant, even
if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been
fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing
fraudulent joinder of Lavender and Owen. There is a possibility that the plaintiffs can state a claim
against them, as sales representatives who met with physicians and answered questions regarding
the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts
concerning the risks associated with the drugs. At the very least, the claim against Lavender and

Owen is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Owen are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this ___18th___ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 23 PM 3: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

FEB 2 3 2004

JUANITA JOHNSON, LORETTA SUE        )
KERCE, MYRTICE D. MILLS,            )
VICKI N. PARSONS, DEENA L. PHILLIPS,)
LINDA J. PIPER, BRENDA J. ROTH,     )
ALLISON L. WEST,                    )
                                    )
           Plaintiffs,              )
                                    )
vs.                                 )     Case No. CV-04-TMP-224-S
                                    )
WYETH, a corporation; DAVID WURM, an)
individual, et al.,                 )
                                    )
           Defendants.              )

### MEMORANDUM OPINION AND REMAND ORDER

This cause is before the court on the plaintiffs' motion to remand and for sanctions (Doc. 8) filed February 10, 2004, as well as defendant Wyeth's motion to stay pending transfer to the Multi-District Litigation court (Doc. 10), filed February 17, 2004. For the reasons expressed below, the court finds that the motion for remand is due to be granted, the motion for sanctions denied, and the motion for a stay denied.

### Procedure History

Plaintiffs filed their joint complaint against defendants Wyeth and one of Wyeth's pharmaceutical salesmen, David Wurm, in the Circuit Court of Jefferson County, Alabama, on January 5, 2004. They allege claims under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") and for product liability–failure to warn, breach of the implied warranty of

merchantability, negligence, wantonness, fraud, misrepresentation, and suppression, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, have suffered medical injuries due to that use. With respect to defendant Wurm, plaintiffs contend that this salesmen was one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with use of these medications and, further, that he either innocently, negligently, or recklessly failed to reveal to plaintiffs' physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on February 4, 2004, contending that the court has original diversity jurisdiction because Wurm is fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their motion to remand that Wurm is not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

2

<u>Fraudulent Joinder</u>

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Wurm, a pharmaceutical representative employed by Wyeth and its predecessor, American Home Products, Inc., is an Alabama resident and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Wurm was fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, his presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Wurm did not sell or promote the drug Pondimin at all and that he knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against Wurm, making his joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' <u>B, Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

<u>Id.</u> at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of

3

his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. **When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.** See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

4

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendant, Wurm, in the form of a negligent fraud claim. To state such a possible claim, the plaintiffs need only allege that Wurm misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians,

---

[1] Wurm has filed an affidavit in which he states that he never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Wurm's liability. Wurm admits that when questioned by physicians about Pondimin, he attempted to provide answers based on the information he received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that he made misstatements about the risks of using Pondimin, as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

reasonably relied upon such misrepresentations. It is unimportant that Wurm did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Wurm did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *he* knew, his innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Wurm. There is a possibility that the plaintiffs can state a claim against him,

6

as a sales representative who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Wurm is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Wurm, a non-diverse defendant, is not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _____ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 24 AM 10: 15

U.S. ⟨illegible⟩
N.D. ⟨illegible⟩

| | | |
|---|---|---|
| ANN McGOWAN, BECKY PARTINGTON, and LAURA STANFIELD, | ) | |
| | ) | |
| | ) | **ENTERED** |
| Plaintiffs, | ) | |
| | ) | FEB 2 4 2004 |
| vs. | ) | Case No. CV-04-TMP-298-S |
| | ) | |
| WYETH, INC., WYETH PHARMACEUTICALS, INC., BEN LAVENDER, and ANTHONY CHERRY, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF REMAND

This cause is before the court on the plaintiffs' emergency motion to remand, filed February 17, 2004, to which defendants responded with a motion to stay pending transfer to the MDL proceedings on February 19, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

### Procedure History

Plaintiffs McGowan, Partington, and Stanfield filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Ben Lavender and Anthony Cherry, in the Circuit Court of Jefferson County, Alabama, on January 16, 2004. The complaint alleges claims for "strict liability–defective product," "strict liability–failure to warn," "strict liability–failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet

medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, they have suffered medical injuries due to that use. With respect to defendants Lavender and Cherry, plaintiffs contend that these salesmen were one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with the use of these medications and, further, that these defendants either innocently, negligently, or recklessly failed to reveal to physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court[1] on February 13, 2004, contending that the court has original diversity jurisdiction because Lavender and Cherry, both Alabama residents, are fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Cherry are not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

---

[1] There has been a spate of these removals in the last few weeks. The undersigned himself has dealt with two earlier removals in Marshal, et al., v. Wyeth, Inc., et al., CV-04-TMP-179-S, and Johnson, et al., v. Wyeth, et al., CV-04-TMP-224-S. Consequently, the court is thoroughly familiar with the positions and arguments of the parties.

<u>Fraudulent Joinder</u>

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Cherry are Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Lavender and Cherry were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Lavender and Cherry did not sell or promote the drug Pondimin at all and that they knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender or Cherry, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' <u>B. Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

<u>Id.</u> at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.

3

This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. **When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.** See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

4

For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Cherry misrepresented certain material facts about the risks associated with use of Pondimin[2] and Redux and that plaintiffs,

---

[2] Lavender and Cherry have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Lavender's and Cherry's liability. They admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must

through their physicians, reasonably relied upon such misrepresentations.  It is unimportant that

Lavender and Cherry did not know of the risks and, therefore, did not *intentionally* misrepresent the

risks associated with these drugs.  Alabama law recognizes an action for innocent or negligent

misrepresentation as well as for reckless and intentional misrepresentations.  For example, the

Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended
> misrepresentation.  The good faith of a party in making what proves to be a material
> misrepresentation is immaterial as to whether there was an actionable fraud.  Smith
> v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986).  Under the statute, even though
> a misrepresentation be made by mistake and innocent of any intent to deceive, if it
> is a material fact and is acted upon with belief in its truth by the one to whom it is
> made, it may constitute legal fraud.  Mid-State Homes, Inc. v. Startley, 366 So. 2d
> 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v.

Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Cherry did not know of the PPH and valvular

heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally

misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint,

understating the risks constitute a "possible" cause of action in Alabama.  As long as it is possible

that a state court may find that the complaint states a claim against the non-diverse defendant, even

if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been

fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

---

undertake.

6

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Lavender and Cherry. There is a possibility that the plaintiffs can state a claim against them, as sales representatives who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Lavender and Cherry is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Uncertainties must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Cherry are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

## Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to

the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _____ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

8

IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

04 FEB 25 PM 1:51

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA M. DAVIS,

    PLAINTIFF,

vs.                       CASE NO. CV 03-J-3167-J

WYETH, et al.,

    DEFENDANTS.

**ENTERED**

FEB 25 2004

## ORDER

In accordance with the accompanying memorandum opinion entered this day,

It is **ORDERED** by the court that the plaintiff's motion to remand (doc.10) is

**GRANTED**, the court finding that this action was improvidently removed. The

plaintiff's motion for sanctions is **DENIED**. This case is hereby **REMANDED** to the

Circuit Court of Walker County, Alabama.

**DONE** and **ORDERED** this the _____ day of February, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED

04 FEB 25 PM 1:5

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA M. DAVIS,

PLAINTIFF,

vs.

WYETH, et al.,

DEFENDANTS.

CASE NO. CV 03-J-3167-J

ENTERED

FEB 2 5 2004

## MEMORANDUM OPINION

This matter is before the court on the plaintiff's motion to remand and motion

for sanctions (doc. 10) and the defendant's opposition to remand (doc. 13). The court

having previously stayed this matter pending decision on conditional transfer by the

Judicial Panel on Multidistrict Litigation, said stay is hereby **LIFTED**.[1]  Having

considered the motion to remand and the opposition thereto, the court finds as follows:

Plaintiff filed suit in the Circuit Court of Walker County against defendant

Wyeth, Inc. ("Wyeth"), and three of defendant Wyeth's pharmaceutical sales

representatives, Mary Lou Carnaggio, Nikki N. Windham and David Wurm.  The

parties do not dispute that the sales representatives are Alabama residents.  The

plaintiff asserts claims under the Alabama Extended Manufacturer's Liability Doctrine

---

[1]The court has received notice from the Judicial Panel on Multidistrict Litigation
concerning opposition to the conditional transfer order.  Said notice further states that said
conditional transfer order "does not in any way limit the pretrial jurisdiction of [this] court."  The
letter further encourages the court to rule on "a motion pending before you in the action –
particularly a motion to remand to state court ..."  Given this stance by the Judicial Panel, this
court has revisited its prior stay of this litigation and the motion to remand pending before it.



(AEMLD), failure to warn, breach of warranty of merchantability, negligence, wantoness and fraud, misrepresentation and suppression arising from her use of the diet drugs fenfluramine (Pondimin) and dexfenfluramine (Redux). These diet drugs were removed from the market in 1997 due to their association with medical problems such as primary pulmonary hypertension and heart valve defects. Complaint, ¶¶ 14, 25-49. Defendant Wyeth removed this action from the Circuit Court of Walker County, Alabama, asserting that this court has jurisdiction under 28 U.S.C. § 1332 and that the individual defendants were fraudulently joined as the plaintiff has no reasonable possibility of prevailing on any of her claims against them. Notice of Removal, ¶¶ 4, 7.

"Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity – every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11ᵗʰ Cir.1996), rev'd on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). *See also Carden v. Arkoma Associates*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 94 L.Ed.2d 615 (1990) ("Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship); citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

The only means by which this case may remain in this court is if the lack of diversity which appears on the face of the complaint is through the fraudulent joinder

2

of the non-diverse party, as alleged by the defendant. Joinder is fraudulent when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

> "If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker*, 709 F.2d at 1440-41. The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

The defendant, as the party removing the action to federal court, have the burden to establish federal jurisdiction. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). All doubts (and uncertainties) about federal court jurisdiction must be resolved in favor of a remand to state court. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)); *Diaz*, 85 F.3d at 1505. "The burden of the removing defendant is a 'heavy one.' To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must

3

resolve any uncertainties in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted).[2]

Plaintiff alleges in her complaint that each of the defendants promoted, detailed, distributed, sold, and/or marketed and made representations to Dr. Jerry V. Mosely, the plaintiff's physician, concerning these drugs. Complaint, ¶ 8. Based on these representations, the plaintiff was prescribed these drugs by her physician, *Id.* Defendant Wyeth argues that the individual defendants never promoted Pondimin and hence, said individual defendants can not be liable for the plaintiffs' injuries from Pondimin. Defendant's opposition, at 4. However, this argument goes to the merits of the plaintiff's claim against the individual defendants, which is not the issue before this court. The fact that plaintiff may not ultimately prevail against any of the individual defendants is not a proper inquiry for this court in considering a motion to remand. Rather, this court may only consider whether the plaintiff has the possibility of stating a valid cause of action against the non-diverse defendants. *Triggs*, 154 F.3d at 1287. The individual defendants admit that they promoted Redux to physicians based on information provided to them by Wyeth. *See e.g.*, Affidavit

---

[2]This court is cognizant of the Eleventh Circuit's admonition in *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11th Cir. 1994), where the Court stated "Federal courts are courts of limited jurisdiction. While a defendant does have a right, by statute, to remove in certain situations, plaintiff is still the master of his own claim (citations omitted). Defendant's right to remove and plaintiff's right to chose his own forum are not on equal footing ... removal statutes are construed narrowly ... uncertainties are resolved in favor of remand (citations omitted)."

4

of defendant Wurm, ¶ 5, 7. Because the court need only find one possible valid cause of action against the non-diverse defendants, the court considers only the plaintiff's claim of fraud, misrepresentation and suppression (Count VI), which the plaintiff has pleaded against all defendants.[3]

To establish misrepresentation under Alabama law, irrespective of whether the misrepresentation was made willfully, recklessly, or mistakenly, the plaintiff must prove (1) a false representation, (2) that the false representation concerned an existing material fact, (3) that the plaintiff relied on the false representation, and (4) that the plaintiff was damaged as a proximate result of the reliance. *Chase v. Kawasaki Motors Corp*, 140 F.Supp.2d 1280, 1291 (M.D.Ala.2001). The fact that the representation was made to a different individual than the one suffering the injury is not fatal to a claim for misrepresentation under Alabama law. *See Thomas v. Halstead*, 605 So.2d 1181, 1184 (Ala.1992) ("if a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place"); *Chase*, 140 F.Supp.2d at 1291, n. 8 ("The court notes that under Alabama law it is not always required that a plaintiff prove that a misrepresentation was made directly to him, so long as his injuries resulted from the

---

[3]The court has not considered whether Counts I-V state possibly valid causes of action against the individual defendants. Rather, as only one stated cause of action must have a possibility of validity to destroy diversity jurisdiction, the court makes no judgment as to any cause of action stated in the complaint other than the count for misrepresentation.

5

misrepresentation"). Thus "there is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." *Wheelan v. Sessions*, 50 F.Supp.2d 1168, 1174 (M.D.Ala.1999) (quoting *Colonial Bank of Ala. v. Ridley & Schweigert*, 551 So.2d 390, 396 (Ala.1989).

Common sense dictates that the reason drug representatives make representations to physicians is to encourage physicians to prescribe the products the representatives promote to the physicians' patients. In other words, the drug representatives should have reasonably foreseen that the physicians' reliance on their representations would cause the prescription by the physicians of the products they promote to the physicians' patients for their consumption. There can be no other purpose to promote said products to physicians. Such a situation is clearly within Alabama law on third party standing in misrepresentation cases. "[T]he entire basis for third party standing in misrepresentation cases is that the deceiver contemplated that the third party would be induced to act by the deceiver's misstatements made to someone else." *Chase*, 140 F.Supp.2d at 1293, citing *Sims v. Tigrett*, 229 Ala. 486, 158 So. 326, 330 (1934). *See also Ex parte Grand Manor Inc.*, 778 So.2d 173, 182 (Ala.2000) ("If the fraudulent statement is made with the intent and expectation that the one to whom it is made will pass the statement on to the plaintiff, then the plaintiff

6

is entitled to rely on that statement, even if it is not made personally or directly to the plaintiff"); 37 Am.Jur.2d § 292 ("Third parties may recover damages for a fraudulent misrepresentation if they can establish that they relied upon the misrepresentation to their detriment and that the defendant intended the misrepresentation to be conveyed to them"). The court is therefore of the opinion that the plaintiff has stated a cause of action for misrepresentation against the non-diverse defendants.

Under Alabama law, this meets the requirement of "a possibility" of stating a valid cause of action. That is all that is necessary for joinder not to be fraudulent. The allegation that the individual defendants misrepresented material facts about Pondimin and Redux to a physician, who thereafter, and in reliance on said representations, prescribed these medications to a patient who was injured by them, possibly states a valid cause of action. The fact that the drug representatives made no attempt to ascertain the truth of the facts they presented is not a bar to liability under Alabama law. Rather, even an innocent misrepresentation made in good faith may constitute a legal fraud is such misrepresentation is of a material fact. *See Goggans v. Realty Sales & Mortgage*, 675 So.2d 441, 443 (Ala.Civ.App.1979).

Having reviewed the allegations set forth in Count VI of the plaintiff's complaint, the court finds such allegations do state a possible cause of action against the resident defendants. The plaintiff need not have a winning case against the

7

allegedly fraudulent defendant; she need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate. *Triggs*, 154 F.3d at 1287. That possibility exists in the pleadings before this court.

Having found that the plaintiff has stated a claim against the non-diverse defendants, this court finds that complete diversity between all parties is lacking. *See* 28 U.S.C. §§ 1332 and 1441(b)("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought"). Thus, the court finds that the joinder was proper and must remand the case to the state court. *See Coker*, 709 F.2d at 1440-41.

The court having considered the foregoing and finding that this case has been improvidently removed, the court shall grant the plaintiff's motion to remand this case to the Circuit Court of Walker County, Alabama, by separate Order.

**DONE** this the ___25___ day of February, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

8

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 04 FEB 27 AM 8 30
MIDDLE DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RHONDA P. BRADFORD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: CV 03-P-3157-M |
| | ) |
| WYETH, et al., | ) |
| | ) |
| Defendants. | ) |

DH

# ENTERED

FEB 27 2004

## ORDER

Pending before the court are several motions including Plaintiffs' Motion to Remand (Doc. #10) filed on December 22, 2003, and Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) filed on February 25, 2004.

On February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, Judge Wm. Terrell Hodges, sent a letter to all judges, including the undersigned, involved with MDL-1203—*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*. In this notice, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

With this directive from the *Judicial Panel in mind* and based upon the analysis set forth in recent related remand decisions by other judges of this court, Plaintiffs' Motion to Remand is **GRANTED**, and this case is **REMANDED** to the *Circuit Court of Etowah County*. See, e.g., *Martha M. Davis v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-I, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-

36

TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Accordingly, Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) is **GRANTED IN PART** as to the request for a ruling and **DENIED IN PART** as to the request for an emergency hearing. Plaintiffs' Motion for Sanctions (Doc. #10) is **DENIED**. Defendants' Motion to Stay (Doc. #23) filed on January 21, 2004, is **DENIED**. The various pending motions to strike (Docs. #24, #27, #29, #32) are **MOOT**. Defendants' Motion to Amend Answer (Doc. #16) filed on January 13, 2004, remains pending and will be transferred back with the court file to the Circuit Court of Etowah County.

DONE and ORDERED this _____26th_____ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA FEB 27  PM 3: 26
MIDDLE DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN W. SMITH,                        }
                                      }
        Plaintiff,                    }
                                      }
v.                                    }        Case No.: CV 04-P-226-M
                                      }
WYETH, et al.,               :        }        **ENTERED**
                                      }
        Defendants.                   }
                                               FEB 2 7 2004

## ORDER

On February 16, 2004, the court entered an Order staying this litigation pending action by the

Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine*

*/Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis

set forth in recent related remand decisions by other judges of this court, the stay is **LIFTED**,

Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is **GRANTED**, and this case is

**REMANDED** to the Circuit Court of DeKalb County. *See, e.g., Martha M. Davis v. Wyeth, et al.*,

United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J,

February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court

for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004

(Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern

District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari*

*Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of

Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is **DENIED**.

DONE and ORDERED this ___27th___ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| BOUDREAUX, et al., | } |
| | } |
| Plaintiffs, | } |
| | } |
| v. | } |
| | } |
| WYETH, et al., | } |
| | } |
| Defendants. | } |

Case No.: CV 04-P-227-M

**ENTERED**

FEB 27 2004

## ORDER

On February 18, 2004, the court entered an Order staying this litigation pending action by the Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine /Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis set forth in recent related remand decisions by other judges of this court, the stay is **LIFTED**, Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is **GRANTED**, and this case is **REMANDED** to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is **DENIED**.



02/27/2004 10:21 FAX 2052523536          K Stephen Jackson PC                    004

DONE and ORDERED this ___27th___ day of February, 2004.


R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

JASPER DIVISION

FILED

04 MAR -2 PM 3:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

MILDRED BRIDGES,

    Plaintiff,

v.

WYETH, et al.,

    Defendants.

CIVIL ACTION NO.
04-AR-0297-J



ENTERED

MAR 0 2 2004

### ORDER OF REMAND

For the separate and several reasons articulated by Honorable Inge Johnson of this court in *Davis v. Wyeth, et al*, CV-03-J-3167-J, and by other judges of this court in similar cases, this court finds that it lacks subject-matter jurisdiction over the above-entitled removed case. The court is not prepared to express the belief that there is no reasonable possibility that Alabama courts will allow the joinder of an agent of a manufacturer as a defendant in an Alabama Extended Manufacturer's Liability Doctrine (AEMLD) case. See the muddy water stirred by *Tillman v. R. J. Reynolds Tobacco Co.*, _____ So. 2d ___, 2003 WL 21489707 (Ala.). Accordingly, the motion to remand filed by plaintiff, Mildred Bridges, is GRANTED, pursuant to 28 U.S.C. §1447(c), and the above-entitled case is hereby REMANDED to the Circuit Court of Walker County, Alabama, from which it was improvidently removed.

Defendant, Wyeth, has, in the alternative, requested a certification for interlocutory appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b). Upon reflection, the court is

just as unwilling attempt to pass off to the Eleventh Circuit this serious question of Alabama law as it is to pass it off to the Multi-District Panel.

The Clerk is DIRECTED to effectuate this order.

The parties shall bear their own respective costs in this court.

DONE this _2nd_ day of March, 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 MAR -5 PM 2:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEBRA HOUGH, et al.,            )

    PLAINTIFF,              )

VS.                            )            CV-04-H-393-S

WYETH, et al.,                 )

    DEFENDANTS.             )

ENTERED

MAR 0 5 2004

## ORDER OF REMAND

The court has before it plaintiffs' emergency motion to remand filed March 2, 2004 and the response thereto of Wyeth filed on March 4, 2004 titled "Wyeth's Motion to Stay to Allow Transfer to the Multi-District Litigation Proceeding." Wyeth's motion includes a memo addressing the merits of a possible stay, and in paragraph one of Wyeth's motion counsel discusses a number of cases out of the three district courts in Alabama confronted with the same or a related issue with which this court is confronted. It is interesting to note that none of the ten very recent orders of Judges Clemon, Johnson, Bowdre, Proctor, and Acker, and Magistrate Judges Putnam and Armstrong of the Northern District of Alabama listed in footnote 3, *infra*, are included in the otherwise exhaustive list of relevant cases. The court also

has before it plaintiffs' opposition to Wyeth's motion to stay.[1]

It is clear to the undersigned that jurisdictional issues in a removed case should be decided as quickly as possible. The failure to do so may allow an improperly removed case to languish for many, many months before being remanded to state court.[2] Where a motion to remand is founded only on a claim of fraudulent joinder as is the circumstance before this court,[3] the motion can be resolved quickly. The court is to consider whether the removing party has met the onerous burden[4] of showing that "there

---

[1] Interestingly, plaintiff's opposition was filed on March 2, 2004 in "anticipation" of defendant's March 4, 2004 motion.

[2] It is not irrelevant that on February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, District Judge Wm. Terrell Hodges, sent a letter to all judges involved with MDL-1203 - In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation. In this letter, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

[3] Plaintiff's emergency motion to remand is based on the same issue *recently* addressed by the following judges in this district: Chief Judge U.W. Clemon (CV-03-C-2564-M), Judge William Acker (CV-04-AR-0297-J), Judge Karon Bowdre (CV-03-BE-2876-S and CV-04-BE-27-E), Judge Inge Johnson (CV-03-J-3167-J), Judge David Proctor (CV-03-P-3157-M and CV-04-P-226-M), Magistrate Judge Robert Armstrong (CV-03-RRA-3378-E), and Magistrate Judge Michael Putnam (CV-04-TMP-179-S and CV-04-TMP-298-S). All of these judges have entered remand orders in factually similar cases to the one with which this court is presented. However, the application of the law pertinent to removal and fraudulent joinder is particularly well stated in Judge Putnam's orders of remand, and therefore it is Magistrate Putnam's orders to remand which this court follows most closely.

[4] The standard facing the removing party is an onerous one because absent fraudulent joinder, plaintiffs have the absolute right to choose their forum.

is no possibility that the plaintiff can establish a cause of action against the resident defendant."[5] Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The merits of the claim against a diversity destroying defendant must not be weighed by the federal court; rather the task for the court is merely to determine whether the claim against a non-diverse defendant is a possible one under applicable state law. See id. The court must find joinder proper and remand to state court if there is *any possibility* that, on the facts as pled, the complaint states a cause of action against any non-diverse defendant. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983) (emphasis added).

For the foregoing reasons, Wyeth's motion to stay is **DENIED**. And upon review of the record, the court is persuaded that under Alabama law the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry.[6]

---

[5] The removing party may also succeed in a claim for fraudulent joinder by proving that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe, 113 F.3d at 1538. Defendant Wyeth does not attempt to show fraudulent joinder by use of this second method.

[6] Lavender and Cherry have given affidavits stating that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted the drug Pondimin. They also state that they never assembled, created, designed, distributed, labeled, made, manufactured, packaged, sold, sterilized, supplied, tested, or warranted the drug Redux. They assert that they were not aware of any alleged association between Pondimin and Redux and/or valvular heart disease until the time such an allegation was publicized.

Therefore, plaintiff's emergency motion to remand is **GRANTED** and this case is **REMANDED** to the Circuit Court of Blount County, Alabama for all further proceedings.

DONE this _5th_ day of March, 2004.

_[signature]_

SENIOR UNITED STATES DISTRICT JUDGE

---

Nevertheless, Lavender and Cherry's alleged innocent misrepresentations understating the risks associated with the use of the combination of drugs for weight loss constitutes a possible cause of action under Alabama law. See Ala. Code § 6-5-101 (Michie 1993); see also Ala. Pattern Jury Instructions Civil, 2d., APJI 18.03 (1993).

FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

JOAN REEDER,                      )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        CIVIL ACTION NO.
                                  )         04-T-066-N
WYETH, a corporation,             )
et al.,                           )
                                  )
        Defendants.               )

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiff's motion to remand. The court agrees with
plaintiff that this case should be remanded to state court.
First, there has not been fraudulent joinder of any
resident defendant (that is, plaintiff has colorable claims
against such a defendant), see Coker v. Amoco Oil Co., 709
F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard
Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second,
there has not been fraudulent misjoinder of any resident

EOD  3/8/04

defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motions to remand, filed on January 30, 2004 (doc. no. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Elmore County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION    *FILED*

MAR  8 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

EARLENE BROGDEN, et al.,,      )
                               )
        Plaintiffs,            )
                               )
        v.                     )        CIVIL ACTION NO.
                               )        04-T-068-S
WYETH, a corporation,          )
et al.,                        )
                               )
        Defendants.            )

ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiffs' motion to remand.  The court agrees with

plaintiffs that this case should be remanded to state

court.  First, there has not been <u>fraudulent joinder</u> of any

resident defendant (that is, plaintiffs have colorable

claims against such a defendant), see <u>Coker v. Amoco Oil</u>

<u>Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v.</u>

<u>Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been <u>fraudulent misjoinder</u> of any

**EOD**  3-8-04

21

resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 30, 2004 (doc. no. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

FILED

IN THE UNITED STATES DISTRICT COURT
04 MAR -9 AM 8: 29
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION
U.S. DISTRICT COURT
N.D. OF ALABAMA

WILMA SUE EATON, et al.,          }
                                  }
        Plaintiffs,               }
                                  }
v.                                }          Case No.:  CV 04-P-380-M
                                  }
WYETH, et al.,                    }
                                  }          **ENTERED**
        Defendants.               }          MAR - 9 2004

### ORDER

This case is before the court on Plaintiffs' Emergency Motion to Remand (Doc. # 9) filed on

February 27, 2004; Defendant Wyeth's Motion for Entry of Briefing Schedule (Doc. # 10) filed March

2, 2004; and Defendant Wyeth's Motion to Stay to Allow Transfer to the Multi-District Litigation

Proceeding (Doc. # 11) filed on March 4, 2004. Plaintiffs' motion is **GRANTED**, and this case is

**REMANDED** to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v. Wyeth, et al.*,

United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J,

February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court

for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004

(Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern

District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari

Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of

Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17). Defendant Wyeth's

motions for entry of briefing schedule (Doc. # 10) and motion to stay (Doc. # 11) are **DENIED**.



**DONE** and **ORDERED** this _____8 th_____ day of March, 2004.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

2

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

KIM ALLEN, et al.,         )
                           )
    Plaintiffs,        )
                           )
    v.                )    CIVIL ACTION NO.
                           )    2:04cv0238-T
WYETH,               )
et al.,            )
                           )
    Defendants.        )

<u>ORDER</u>

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been
fraudulent misjoinder of any resident defendant (that is,
plaintiffs have reasonably joined such a defendant with
other defendants pursuant to Rule 20 of the Federal Rules
of Civil Procedure), see Tapscott v. MS Dealer Service
Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE
of the court that plaintiffs' motion to remand, filed on
March 12, 2004 (doc. no. 7), is granted and that,
pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded
to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding
motions are denied.

The clerk of the court is DIRECTED to take
appropriate steps to effect the remand.

DONE, this the 9th day of April, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


EUNICE CHESTNUT, et al.,        )
                                )
        Plaintiffs,             )
                                )
        v.                      )        CIVIL ACTION NO.
                                )          1:04cv0295-T
WYETH,                          )
et al.,                         )
                                )
        Defendants.             )

ORDER

    This lawsuit, which was removed from state to
federal court based on diversity-of-citizenship
jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before
the court on plaintiffs' motion to remand.   The court
agrees with plaintiffs that this case should be remanded
to state court.   First, there has not been <u>fraudulent
joinder</u> of any resident defendant (that is, plaintiffs
have colorable claims against such a defendant), <u>see
Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir.
1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on April 1, 2004 (doc. no. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 3th day of May, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

M. REBECCA CROSS, et al.,                )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )    CIVIL ACTION NO.
                                         )    03-0882-BH-M
WYETH, et al.,                           )
                                         )
        Defendants.                      )

### ORDER

This action is before the Court on plaintiffs' motion (Doc. 14) to reconsider and to

lift the stay imposed on February 19, 2004 (Doc. 13), and thus to reverse the Court's prior

denial of plaintiffs' motion to remand (Docs. 6 and 7). Upon consideration of the parties'

oral arguments presented on March 15, 2004, as well as those set forth in Wyeth's

Supplemental Response (Doc. 19), and all other pertinent portions of the record, the Court

concludes that plaintiffs' motion to reconsider is due to be granted because the Court

lacked jurisdiction at the outset to enter an order denying plaintiffs' motion to remand and

in imposing a stay until the action could be transferred for consolidation with the pending

MDL-1203 case.

As recognized by other federal Courts in Alabama, the grounds upon which Wyeth

contends that the Wyeth Sales Representatives Paul Windham and John Land have been

fraudulently joined go to the merits of plaintiffs' claims against these individual resident

defendants, which is not a proper inquiry for this Court, rather than the viability of the claims themselves.[1] *See e.g., Martha M. Davis v. Wyeth, et al.,* Civil Action No. CV 03-J-3167-J (N.D. Ala. February 25, 2004)(J. Johnson). *See also, Michael Hall, et al. v. Wyeth, et al.,* Civil Action No. CV 04-J-0434-NE (N.D. Ala. March 9, 2004)(J. Johnson); *Smith v. Wyeth et al.,* Civil Action No. CV 04-P-226-M (N.D. Ala. February 27, 2004)(J. Proctor); *Sharon C. Crittenden, et al., v. Wyeth, et al.,* Civil Action No. 03-T-920-N (M.D. Ala. November 21, 2003)(J. Thompson); *Pamela Floyd, et al., v. Wyeth, et al.,* Civil Action No. 03-C-2564-M (N.D. Ala. October 20, 2003)(J. Clemon); *Haleb v. Merck & Co., Inc., et al.,* Civil Action No. CV 03-AR-1026-M (N.D. Ala. June 26, 2003) (J. Acker). This Court **cannot** declare at this juncture of the litigation that "there is no possibility that the plaintiff[s] can prove a cause of action against the resident (non-diverse) defendant[s]," a prerequisite to any declaration that the resident defendants were fraudulently joined. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983). *See also, Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998)("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have the possibility of stating a valid cause of action in order for the joinder to be legitimate.").

For the above stated reasons, it is **ORDERED** that the Orders entered by this Court on February 5, 2004 (Doc. 11) denying plaintiffs' motion to remand and February 19, 2004

---

[1]Consequently, Wyeth's reliance on such cases as *Fisher v. Comer Plantation, Inc.* 772 So.2d 455 (Ala. 2000), and *Speigner v. Howard,* 502 So.2d 367 (Ala. 1987), is misguided because they were decided on the merits on motions for summary judgment following the completion of discovery.

(Doc. 13) granting Wyeth's motion to stay, be and are hereby **VACATED AND SET ASIDE**. In lieu thereof, it is now **ORDERED** that plaintiffs' motion to remand (Doc. 6) be and is hereby **GRANTED**. The Clerk is directed to take such steps as are necessary to transfer this case back to the Circuit Court of Dallas County, Alabama, from whence it was removed.

As a final matter, the Court acknowledges that plaintiffs' motion to remand also contained a motion for sanctions against Wyeth. The Court concludes, however, that sufficient questions existed concerning the appropriateness of removal, as evidenced by this Court's initial decision to deny remand, to preclude the requisite finding that the removal in this case was not only improvident but done in bad faith. It is therefore **ORDERED** that plaintiff's motion for sanctions be and is hereby **DENIED**.

**DONE** this 29th day of March, 2004.

                                        _____s/ W. B. Hand_____
                                        SENIOR DISTRICT JUDGE

3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

JERRY BRADEN, et al.,           )
                                )
        Plaintiffs,             )
                                )
        v.                      )    CIVIL ACTION NO.
                                )      1:04cv0384-T
WYETH, etc.,                    )
et al.,                         )
                                )
        Defendants.             )

<u>ORDER</u>

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiffs' motion to remand. The court agrees with
plaintiffs that this case should be remanded to state court.
First, there has not been <u>fraudulent joinder</u> of any resident
defendant (that is, plaintiffs have colorable claims against
such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d
1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit</u>
<u>Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there
has not been <u>fraudulent misjoinder</u> of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on April 27, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Coffee County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson

———————————————————————
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
BARBARA CULPEPPER, et al.,    )
                              )
     Plaintiffs,              )
                              )
     v.                       )    CIVIL ACTION NO.
                              )      2:04cv0411-T
WYETH, INC.,                  )
et al.,                       )
                              )
     Defendants.              )
```

<u>ORDER</u>

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 10), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Montgomery County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson

_____

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
LONNE KING, et al.,           )
                              )
        Plaintiffs,           )
                              )
        v.                    )    CIVIL ACTION NO.
                              )      2:04cv0409-T
WYETH, INC., etc.,            )
et al.,                       )
                              )
        Defendants.           )
```

<u>ORDER</u>

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 1), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
VICTORIA BENNETT, et al.,    )
                             )
      Plaintiffs,            )
                             )
      v.                     )    CIVIL ACTION NO.
                             )    2:04cv0416-T
WYETH, INC., etc.,           )
et al.,                      )
                             )
      Defendants.            )
```

### ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiffs' motion to remand.    The court agrees with

plaintiffs that this case should be remanded to state court.

First, there has not been fraudulent joinder of any resident

defendant (that is, plaintiffs have colorable claims against

such a defendant), see Coker v. Amoco Oil Co., 709 F.2d

1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit

Co., 883 F.2d 1553, 1561 (11th Cir. 1989).    Second, there

has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Crenshaw County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2nd day of June, 2004.

/s/ Myron H. Thompson

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

FILED
2003 Jun 26 PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LAVAUGHN HALES,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CIVIL ACTION NO.
                                   )
MERCH & CO., INC., et al.,         )        03-AR-1028-M
                                   )
        Defendants.                )
                                   )
                                   )

03 JUN 26 PM 3:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 2 6 2003

### ORDER OF REMAND

In accordance with the accompanying memorandum opinion, plaintiff's motion to remand is GRANTED upon the court's finding pursuant to 28 U.S.C. § 1447(c) that it lacks subject matter jurisdiction. Accordingly, the above-entitled action is REMANDED to the Circuit Court of Dekalb County, Alabama from which it was improvidently removed. The Clerk is DIRECTED to effectuate this order.

The parties shall bear their own respective costs in this court.

DONE this _26th_ day of June, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LAVAUGHN HALES,                    )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          CV 03-AR-1028-M
                                   )
MERCK & CO., INC., et al.          )
                                   )
          Defendant.               )

**ENTERED**
JUN 2 6 2003

**MEMORANDUM OPINION**

Before the court is a motion to dismiss filed by Hal

Henderson ("Henderson")[1], Steve Santos ("Santos")[2], and Matthew

King ("King")[3] and a motion to remand to the Circuit Court of

DeKalb County, Alabama filed by plaintiff, Lavaughn Hales

("Hales").  Hales brought this products liability case against

defendant, Merck & Co., Inc. ("Merck"), and its agents Henderson,

Santos, King, and Patricia Aiken ("Aiken")[4], alleging that she

---

[1]Henderson is a district sales manager for Merck, and a resident
of Cobb County, Georgia.

[2]Santos is a district sales manager for Merck and a resident of
Montgomery County, Alabama.

[3]King is a sales representative for Merck, and a resident of
Jefferson County, Alabama.

[4]Aiken is a sales representative for Merck, and a resident of
Jefferson County, Alabama.  Aiken had not yet been served when
the case was removed to this court.

1



suffered a heart attack after taking the prescription drug Vioxx, manufactured and marketed by Merck.

### Facts

Hales filed suit in the state court on March 24, 2003. Her complaint contained five counts charging various defendants with 1)designing, manufacturing, and/or selling a defective product and failing to warn; 2)negligence; 3)breach of express warranty; 4)breach of implied warranty; 5)negligent, reckless, intentional and fraudulent misrepresentation and suppression. Three of the individual non-diverse defendants were served on April 3, 2003. Merck, Henderson, Santos, and King are all represented by the same counsel. On May 5, 2003, Merck, Santos, Henderson, and King filed their notice of removal and answer in this court alleging diversity jurisdiction based on plaintiff's alleged fraudulent joinder of the four non-diverse individual defendants. The court deemed the affirmative defense of fraudulent joinder a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), and included Aiken because a dismissal of the action against Aiken is as necessary to this court's diversity jurisdiction as a dismissal of the action against the three non-diverse individuals who have filed appearances. Oral argument was heard at the court's regular motion docket on June 20, 2003.

2

The dispositive jurisdictional question is whether Hales can assert **any** valid cause of action against a non-diverse sales representative/manager under Alabama's substantive law or under a legitimate prospect for a change in Alabama law. This court in *Barnes v. American Honda Motor Co.*, 02-AR-1664-J, stated a court's duty in evaluating a motion to remand a diversity removal challenged on fraudulent joinder grounds as follows: "If there is a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court." *Whitlock v. Jackson Nat'l Life Ins.*, 32 F. Supp. 2d 1286, 1289 (M.D. Ala. 1998)(emphasis supplied). In the present action Hales argues that she has a valid AEMLD claim against the sales representatives/managers for supplying and/or for failing to warn and/or inadequately warning and/or failing to instruct her treating physician of the dangers of Vioxx. Henderson, Santos, and King argue that no cause of action has been stated nor can be stated against the sales representatives/managers because only the manufacturer is liable as a "seller" of a defective product under AEMLD, and all other claims are subsumed or merged into the AEMLD claim. Hales argues to the contrary that the Alabama

3

Supreme Court has never addressed whether an individual employee
of a defendant designer and manufacturer of a prescription drug,
who has responsibility for marketing and selling the drug on
behalf of his employer, can be held liable on a claim arising
under AEMLD, and accordingly the court has never rejected
individual liability against intermediary "sellers."

Furthermore, Hales points out that under Alabama law a
person is liable for his intentional torts.  Hales asserts that a
cause of action exists against Henderson, King, Santos, and Aiken
for the intentional tort of fraudulent misrepresentation and
suppression of material information regarding the safety and
efficacy of Vioxx, and the participation in an aggressive
marketing campaign that fraudulently misrepresented the product
to treating physicians.  Hales also contends that a cause of
action for negligence and breach of warranty exists against the
individual sales representatives because they had a duty to warn
her treating physician of the dangers of Vioxx.

Hales cites three decisions by federal courts in Alabama
that have remanded in cases similar to the instant action:
*Roughton v. Warner-Lambert Co.*, 01-D-865-N (De Ment, J.)(court
remanded for a second time a products liability case brought in
state court against the defendant Warner-Lambert, Co. as the

4

manufacturer and its sales representatives/territory manager, an
Alabama citizen.  The case was originally remanded after Judge
Myron H. Thompson found that defendants had not met their burden
of showing either fraudulent joinder or fraudulent misjoinder);
*Pace v. Davis a division of Warner-Lambert*, 00-J-3046 (Johnson,
J.)(court remanded a products liability case against a drug
manufacturer and the non-diverse treating physician); *McCaffery
v. Warner-Lambert Co.*, 00-PT-2848-M (Propst J.) (court remanded
in case brought against drug manufacturer and treating
physician).

Henderson, Santos and King cite *Tillman v. R.J. Reynolds
Tobacco*, 253 F.3d 1302 (11th Cir. 2001) in support of their
position that claims asserted against a retailer merge into an
AEMLD claim against the manufacturer.  But in *Tillman*, the
Eleventh Circuit certified the following question to the Alabama
Supreme Court: "Whether there is any potential cause of action
under any theory against any retail defendants including those
that employ pharmacists who sell cigarettes for claims brought
under the Alabama Extended Manufactures Liability Doctrine, or
premised on negligence wantonness, or civil conspiracy under
Alabama law."  The question has not been answered.  A similar
question was certified in *Spain v. Brown & Williamson Tobacco*

5

Corp., 230 F.3d 1300 (11th Cir. 2000).  It too, has not been answered.

This court unashamedly quotes itself: "[T]his court cannot substitute its uncertain judgment of what the Alabama law ought to be, or to predict what it someday will be, when this court's jurisdiction is premised on 28 U.S.C. §§ 1441 and 1332.  The court must give a plaintiff the benefit of all doubt on questions of Alabama law when deciding upon subject matter jurisdiction that depends upon the state of the state of the law." *Barnes*, at 3.

Henderson, Santos, and King argue alternatively that even if there is a viable cause of action against intermediary sellers under AEMLD, there is no cause of action against these four sales representatives/managers because three of them have presented affidavits stating that they have never visited Dr. Cornelius B. Thomas, Hales' treating physician, and accordingly there is no causation.  The court notes, without finding it unduly significant, that there is no such affidavit for Aiken.  The court disagrees.  If the court were to consider the affidavits of Henderson, Santos, and King it would have to convert the motion to dismiss under Rule 12(b)(6) to one under Rule 56 and find as a matter of law that no genuine issue of material fact existed.

6

This would require the court do what it explicitly said it could

not do in *Barnes*, adjudicate the claims against the defendants on

their merits before finding that the court has subject matter

jurisdiction. *Barnes*, at 3-4.

### Conclusions

Because the defendants must prove by clear and convincing

evidence that no cause of action exists, and because the question

of whether a cause of action exists against an intermediary

supplier under AEMLD is uncertain, plaintiff's motion to remand

is due to be granted, and defendants' motions to dismiss are due

to be denied.  A separate order will be entered.

DONE this __26ᵗʰ__ day of June, 2003.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

7

2002 WL 548750 (S.D.N.Y.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
In re: REZULIN PRODUCTS LIABILITY LITIGATION (MDL No. 1348)
This Document Relates to: 02 Civ. 1716 and 02 Civ. 1717.
No. 00 CIV. 2843(LAK).
April 12, 2002.

PRETRIAL ORDER NO. 74 (Disposition of Certain Remand Motions)

KAPLAN, District J.

*1 Plaintiffs in *Cooley v. Warner-Lambert, Co.,* No. 02 Civ. 1716, and *Boykin v. Warner-Lambert, Co.,* No. 02 Civ. 1717, have sued the manufacturers of Rezulin as well as Mississippi physicians [FN1] for injuries allegedly caused by Rezulin. The cases were removed to federal court by the manufacturer defendants on the basis of diversity of citizenship and were transferred to this Court by the Judicial Panel on Multidistrict Litigation. The plaintiffs, all citizens of Mississippi, have moved to remand the cases on the ground that the presence of the nondiverse physician defendants destroys the complete diversity necessary for removal. The defendants rejoin that the citizenship of the nondiverse physician defendants is immaterial because there is no reasonable possibility that the plaintiffs can succeed in establishing liability against those defendants.

> FN1. Defendant Belenchia is a doctor of osteopathy, not a medical doctor, *see* Boykin Cpt. ¶ 14, and the plaintiffs in Cooley have sued the clinic where the nondiverse physician defendant worked, Cooley Aff. ¶ 2. The complaints nonetheless refer to the "Physician Defendants" and the Court assumes for the purposes of this motion that plaintiffs intend to include defendants Belenchia and the clinic within this term. For the sake of consistency with the complaints, the Court will refer to Drs. Hassell, Roberts, Thompson, Stevens, and Belenchia as well as the Laurel Family Clinic as "the nondiverse physician defendants."

The complaints in *Cooley* [FN2] and *Boykin* [FN3] contain allegations that, if true, would permit a finding of liability against the nondiverse physician defendants. As this Court previously has noted, in order to maintain a medical malpractice claim against a physician in Mississippi, a plaintiff must (1) establish the doctor-patient relationship and its attendant duty, (2) identify the requisite standard of care, (3) establish a breach of that standard of care by the physician, (4) prove that the physician's noncompliance with that standard of care caused the plaintiff's injury, and (5) prove the extent of the plaintiff's damages. [FN4] Because plaintiffs Cooley, Atwood, Evans, Boswell, and Hodge have alleged all of the elements of a medical malpractice claim, the Court cannot rule out the possibility that these plaintiffs will succeed with their medical malpractice claims against the nondiverse physicians. [FN5] Unlike plaintiffs in other Rezulin cases who have sought to hold physicians liable for failing to disclose defects of which the physicians were not aware, these plaintiffs arguably have stated a claim against the nondiverse physician defendants based on the theories that they failed to alert plaintiffs to the side effects of Rezulin of which they were aware and that they failed to secure the plaintiffs' informed consent and monitor their heart and liver function as the FDA recommended. [FN6]

> FN2. For the relevant allegations in *Cooley, see* Cooley Cpt. ¶ 30 ("Plaintiff Cooley ... was prescribed Rezulin by Defendants Hassell and Laurel Family Clinic, P.A.... As a direct and proximate result of Plaintiff Colley's [sic] intake of Rezulin, Plaintiff Cooley has suffered permanent physical and emotional injuries."); *id.* at ¶¶ 51-55 ("[The nondiverse physician defendants] owed Plaintiff Cooley the duty of care, including a duty to disclose and inform her of all risks and consequences of using

Rezulin [and] to fully monitor and evaluate her heart and liver function. [The nondiverse physician defendants] breached each and all of these duties and failed to gain informed consent from Plaintiff Cooley before prescribing them [sic] this hazardous drug, which actions are a contributing proximate cause of the Plaintiff's injuries. [The nondiverse physician defendants'] conduct falls below the standard of care for physicians of similar training, experience, and knowledge and amounts to medical malpractice [and] as a proximate cause and legal result of the negligence of the Physician Defendant, Plaintiff Cooley has suffered the damages described herein."); see also Cooley Aff. ¶¶ 2-5 (stating that Dr. John Hassell of the Laurel Clinic was plaintiff Cooley's primary treating physician as well as the physician who prescribed Rezulin for her, that prior to being prescribed Rezulin she suffered from liver problems of which Dr. Hassell was aware, and that Dr. Hassell did not warn her of any dangers or risks associated with Rezulin at any time prior to or during the time she was taking Rezulin).

FN3. For the relevant allegations in Boykin, see Boykin Cpt. ¶ 11 ("At all times pertinent hereto, Dr. Stevens was the treating physician for Plaintiff Willie Mae Atwood and prescribed the prescription drug Rezulin to Plaintiff Atwood."); id. at ¶ 12 ("At all times pertinent hereto, Dr.

Roberts was treating physician for Plaintiff Mary Boswell and prescribed the prescription drug Rezulin to Plaintiff Boswell."); id. at ¶ 13 ("At all times pertinent hereto, Dr. Thompson was the treating physician for Plaintiff Lou Ella Evans and prescribed the prescription drug Rezulin to Plaintiff Evans."); id. at ¶ 14 ("At all times pertinent hereto, Belenchia was the treating physician for Plaintiff Tinnie Hodge and prescribed the prescription drug Rezulin to Plaintiff Hodge."); id. at ¶ ¶ 51-55 ("[The nondiverse physician defendants] owed Plaintiffs Boykin, Atwood, Boswell, Evans, and Hodge, the duty of care, including a duty to disclose and inform these Plaintiffs of all risks and consequences of using Rezulin [and] a duty to fully monitor and evaluate their heart and liver function. [The nondiverse physician defendants] breached each and all of these duties and failed to gain informed consent from Plaintiffs Boykin, Atwood, Boswell, Evans, and Hodge before prescribing them this hazardous drug, which actions are a contributing proximate cause of the Plaintiffs' injuries. [The nondiverse physician defendants'] conduct falls below the standard of care for physicians of similar training, experience, and knowledge and smounts to medical malpractice [and] as a proximate cause and legal result of the negligence of the Physician Defendants, the Plaintiffs have suffered the damages described herein.").

FN4. Robinson v. Hawkins, 541 So.2d 1048, 1050-51 (Miss.1989).

FN5. The Boykin complaint alleges that the nondiverse physician defendants owed a duty of care to plaintiff Boykin. The complaint, however, contains no allegation that any of the nondiverse defendants treated or prescribed Rezulin for Boykin. Hence, there is no reasonable possibility that she will be able establish liability against any nondiverse defendant.

FN6. See supra nn. 2-3; see also Cooley Cpt. at ¶ 22 ("[T]he FDA subsequently mandated label changes recommending liver monitoring,"); Boykin Cpt. at ¶ 24 (same).

Defendants' arguments to the contrary are without merit. First, defendants rely on this Court's disposition of other remand motions in Pretrial Order No. 59 for the proposition that the allegations in the instant cases are insufficient to warrant remand. This reliance is misplaced. In the cases to which that order pertained, the plaintiffs had not alleged a doctor-patient relationship between any plaintiffs and the physician defendants. Nor had they alleged that the physician defendants had prescribed Rezulin to any plaintiffs. In those circumstances, the Court held that the conclusory allegation that the physician defendants owed the plaintiffs a duty of care, which was unsupported by factual allegations that the physician defendants ever had treated the plaintiffs, was insufficient to defeat removal. The allegations in these complaints are different. Some plaintiffs here allege that the nondiverse physician defendants treated them, prescribed Rezulin to them, and failed to inform them of the risks associated with Rezulin, obtain their informed consent, and perform heart and liver function monitoring. These allegations are sufficient to render the citizenship of the physician defendants material for diversity purposes.

*2 Defendants further argue that there is no reasonable possibility that plaintiffs might establish liability against the nondiverse physician defendants because any claims against those defendants are barred by the statute of limitations. Plaintiffs rejoin that the date on which a medical malpractice claim accrues is a question of fact for the jury and that it would inappropriate for the Court to resolve the issue given the present posture of these cases. The Court need not decide this issue. Defendants, as the party invoking federal jurisdiction, have the burden of establishing that such jurisdiction exists. They have not met this burden on the statute of limitations question. Defendants assert that plaintiffs' claims are time-barred, but they do not offer the Court the date on which they believe the statute of limitations began to run or the date on which it expired. Nor do they offer any authority to support the notion that the statute of limitations began to run more than two years before the complaints were filed. In the absence of appropriate evidence demonstrating that the statute of limitations on these claims has run, the Court must assume, for the purpose of these motions, that the complaints were timely filed.

Finally, defendants argue that the claims against the nondiverse physician defendants are insufficient to defeat removal because they are directed to each other physicians collectively. Again, defendants' reliance on this Court's previous rulings is misplaced. This is a far cry from previous complaints the Court has considered in which plaintiffs did not specifically mention a nondiverse physician or sales representative defendant except in the caption and then sought to lump this defendant in with the manufacturing defendants for liability purposes. *See, e.g., In Re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 283 (S.D.N.Y.2001). The five plaintiffs here who allege claims against a physician have separately alleged that a particular one of the nondiverse physician defendants treated them and prescribed Rezulin to them and in consequence each has a reasonable possibility of holding a nondiverse physician defendant liable.

That some of the plaintiffs in the instant actions have a reasonable possibility of succeeding against the nondiverse physician defendants does not end the matter. This Court previously has held that the joinder of plaintiffs who have no connection to each other aside from the fact that they ingested Rezulin is misjoinder. *In Re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d 136, 146 (S.D.N.Y.2001). When, as here, the misjoinder of particular plaintiffs destroys diversity, the Court will sever the actions of those plaintiffs for the purposes of maintaining the defendants' right to remove the rest of the action. *Id.* at 148. In consequence, the Court will sever the claims of plaintiffs Evans, Hodges, Atwood, Boswell, and Cooley and grant these plaintiffs' motions to remand. The motions to remand of the remaining plaintiffs in *Boykin* and *Cooley* are denied.

*3 Accordingly, the motions to remand in the above-captioned cases are disposed of as follows:

1. In *Cooley v. Warner-Lambert,* No. 02 Civ. 1716, plaintiff Cooley's action is severed and her motion to remand is granted. The motion to remand of the remaining plaintiff is denied.

2. In *Boykin v. Warner-Lambert, Co.,* No. 02 Civ. 1717, the actions of plaintiffs Evans, Hodges, Atwood, and Boswell are severed and their motions to remand are granted. The motions to remand of the remaining plaintiffs are denied.

SO ORDERED.

S.D.N.Y.,2002.

In re Rezulin Products Liability Litigation (MDL No. 1348)

2002 WL 548750 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2973888 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Claims for Certain Side-Effects Warned About in the Adverse Reactions Table of the Rezulin Labeling (Jan. 06, 2004)
• 2003 WL 23951442 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims Asserted by Plaintiff Orlean Maxwell (Nov. 07, 2003)
• 2003 WL 23951441 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Sep. 19, 2003)
• 2003 WL 23951439 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as to Non-Liver-Related Claims (Aug. 07, 2003)
• 2001 WL 34133949 (Trial Filing) Pretrial Order No. 19 (May. 14, 2001)
• 2001 WL 34133975 (Appellate Petition, Motion and Filing) Pec%7Ds Petition for an Order Securing an Equitable Allocation of Counsel Fees and Costs for Common Benefit Work (May. 14, 2001)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUBY WHITE,

      Plaintiff,

v.                              CASE NO: 8:05-cv-243-T-26MSS

MERCK & CO., INC., GENA ORTEGA f/k/a
GENA GHAZZI and JOHN E. (JACK) KILKELLY,

      Defendants.

_____/

O R D E R

Before the Court are Plaintiff's Motion to Re-open Case and for Reconsideration
of Judge's Order Granting Defendants' Motion to Stay (Dkt. 10) and Plaintiff's Motion to
Remand (Dkt. 9).[1] After careful consideration of the Motions, the pleadings and papers
on file, and an almost identical case handled by the Honorable James D. Whittemore, the
Court concludes that this case should be re-opened and remanded to the state court.

Plaintiff correctly argues that this Court lacks jurisdiction based on diversity of
citizenship because, contrary to the assertions of Defendant Merck in its notice of
removal and in its arguments in Kozic v. Merck, the two drug sales representatives were

_____

[1]   The Court does not need a response from Defendant Merck because of the
extensive argument in the Notice of Removal (Dkt. 1) and the arguments already
presented to the Honorable James D. Whittemore in Kozic v. Merck & Co., Inc., Ghazzi
and Kilkelly, No. 8:04-cv-324-T-27TBM.

not fraudulently joined. This Court must review the pleadings to determine whether there is a reasonable basis for predicting that a state court might impose liability on the resident defendants. See Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997). A review of the Complaint[2] leaves no doubt that it states a cause of action under Florida law as to the two individual Defendant sales representatives.[3] See Albertson v. Richardson-Merrell, Inc., 441 So.2d 1146 (Fla.Dist.Ct.App. 1983). Because Defendants Ortega and Kilkelly are citizens of Florida, capable of being sued for the non-fraudulent and non-frivolous causes of action alleged in Counts II, III, and IV, this Court is without subject matter jurisdiction to hear this case.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Plaintiff's Motion to Re-open Case and for Reconsideration of Judge's Order Granting Defendants' Motion to Stay (Dkt. 10) is **GRANTED**. The Clerk shall re-open this case for the Court's reconsideration of the order entered February 9, 2005. (Dkt. 7). The Order granting a stay (Dkt. 7) is hereby **VACATED**.

---

[2]    The Complaint filed in state court (Dkt. 2) seeks compensatory damages for the Plaintiff's ingestion of Vioxx for pain over a prolonged time. Defendant Merck & Co., Inc. (Merck) is a foreign corporation authorized to do business in Florida. Defendants Ortega and Kilkelly, both residents of Florida, were sales representatives for Merck who sold Vioxx to prescribing physicians. Counts II, III, and IV seek relief against Merck, Ortega and Kilkelly for negligence, negligent misrepresentation, and fraud, respectively, in failing to warn prescribing physicians of the significant risks involved with the use of Vioxx.

[3]    The Complaint also comports with Federal Rules of Civil Procedure 8 and 9.

-2-

(2)     Plaintiff's Motion to Remand (Dkt. 9) is **GRANTED**.

(3)     The Clerk is directed to remand this case to the Circuit Court of the Twelfth

Judicial Circuit in and for Sarasota County, Florida.  Once remand is

effectuated, the Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on February 14, 2005.


_____s/_____

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record

-3-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REFIC KOZIC,

Plaintiff,

vs.                                                  Case No. 8:04-CV-324-T-27TBM

MERCK & CO., INC., GENA GHAZZI,
and JOHN E. (JACK) KILKELLY,

Defendants.
_____/

### ORDER ON PLAINTIFF'S MOTION FOR REMAND

**BEFORE THE COURT** is Plaintiff's Motion for Remand (Dkt. 6). Upon consideration,

Plaintiff's motion is granted.

#### Introduction

Plaintiff sued Defendants Merck & Co., Inc. ("Merck") and two sales representatives

employed by Merck, Gena Ghazzi and John E. (Jack) Kilkelly alleging that he suffered a heart attack

as a result of ingesting Merck's drug, Vioxx. (Dkt. 2). In the Complaint, Plaintiff further alleges that

Ghazzi and Kilkelly negligently and fraudulently misrepresented the safety and effectiveness of

Vioxx to Plaintiff's physicians. (Dkt. 2). The Complaint, initially filed in Florida state court, was

removed to federal court on the grounds that Ghazzi and Kilkelly was fraudulently joined in this

action. (Dkt. 1). Plaintiffs seek to remand the case to Florida state court. (Dkt. 6).

#### Applicable Standards

An action may be removed to federal court even if all of the parties are not diverse if the

joinder of the non-diverse party was fraudulent. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284,

Plaintiff's Exhibit 1

1287 (11th Cir. 1998). "Fraudulent joinder is a judicially created doctrine that provides an exception

to the requirement of complete diversity." Id. at 1287. Fraudulent joinder is established by showing

either (1) there is no possibility the plaintiff can establish any cause of action against the resident

defendant, or (2) the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident

defendant into state court. Crowe v. Coleman, 113 F. 3d 1536 (11th Cir. 1997); Cabalceta v.

Standard Fruit Co., 883 F. 2d 1553 (11th Cir. 1989). The removing defendant has the burden of

proving fraudulent joinder. Crowe, 113 F.3d at 1538.

In addressing whether a party has been fraudulently joined, the Court must "pierce the

pleadings" to determine whether, under controlling state law, the plaintiff has a possible or arguable

claim against the non-diverse defendant, or whether, on the other hand, it is clear there can be no

recovery. See Crowe, 113 F. 3d at 1538; Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.

2d 172 (5th Cir. 1968). All factual issues and questions of controlling law are evaluated in favor of

the plaintiff. Cabalceta, 883 F. 2d at 1561.

### Discussion

In the Complaint, Plaintiff alleges that Defendants Ghazzi and Kilkelly negligently and

fraudulently misrepresented material information regarding the safety and effectiveness of Vioxx.

(Dkt. 2, ¶¶ 22-50). To establish a cause of action for fraud, Plaintiff must prove:

> (1) a misrepresentation of material fact; (2) [a] a knowledge of the
> representor of the misrepresentation, or [b] representations made by
> the representor without knowledge as to either truth or falsity, or [c]
> representations made under circumstances in which the representor
> ought to have known, if he did not know, of the falsity thereof; (3) an
> intention that the representor induce another to act on it; and (4)
> resulting injury to the party acting in justifiable reliance on the
> representation.

2

Albertson v. Richardson-Merrell, Inc., 441 So. 2d 1146 (Fla. 4ᵗʰ DCA 1983). In Albertson, the court concluded that the plaintiff could state a claim against a drug sales representative for making fraudulent statements to plaintiff's physician regarding the safety and efficacy of a drug. 441 So. 2d 1146.

Here, Plaintiff has alleged that Defendant sales representatives made misrepresentations concerning the safety and effectiveness of Vioxx and concealed or understated its dangerous side effects. (Dkt. 1, ¶¶ 10, 26, 38). Defendant sales representatives allegedly "knew or should have known that their drug product had defects, dangers, and characteristics that were other than what the Defendants had represented to prescribing doctors or other dispensing entities, the FDA and the consuming public, including Plaintiff herein." (Dkt. 1, ¶¶ 30, 43). Plaintiff further alleges that the misrepresentations were made with the "intention and specific desire that Plaintiff, Plaintiff's prescribing physician or other dispensing entities and the consuming public would rely on such information in selecting, requesting, or prescribing treatment." (Dkt. 1, ¶¶ 28, 41). According to the Complaint, Plaintiff suffered serious injuries as a result of Plaintiff's reliance on the alleged misrepresentations concerning the safety of Merck's drug Vioxx. (Dkt. 1, ¶¶ 37, 50).

Plaintiff can state a cause of action against Defendant sales representatives Ghazzi and Kilkelly and has done so in accordance with Albertson and Fed. R. Civ. P. 8 and 9. As such, they were not fraudulently joined in this action and their citizenship cannot be disregarded. Ghazzi and Kilkelly's status as Defendants and their Florida citizenship prevents this Court from exercising jurisdiction. It is, therefore,

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand (Dkt. 6) is **GRANTED.** This case is remanded to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80514-CIV-HURLEY

EVELYN IRVIN, as personal representative of
the Estate of RICHARD IRVIN, JR.,
        plaintiff,

vs.

MERCK & CO., INC. , JOE GHEZZI and
CHRIS METROPULOS,
        defendants.

_____/

FILED by _____ D.C.

OCT · 9 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · W.P.B.

ORDER REMANDING CASE TO FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
and CLOSING FILE

THIS CAUSE is before the court upon plaintiff's motion for remand for lack of subject matter jurisdiction [DE# 6], the defendants' response in opposition [DE#17] and the plaintiff's reply [DE#19]. For reasons stated below, the court will grant the motion and remand this case to the state court in which it was originally filed.

## I. BACKGROUND

Plaintiff originally filed suit against defendants in state court on May 14, 2003 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging state common law tort claims arising out of the wrongful death of plaintiff's decedent in consequence of his ingestion of the prescription drug Vioxx, a product manufactured and marketed by defendant Merck & Co., Inc. According to the complaint, Joe Ghezzi and Chris Metropulos, both Florida residents, were sales representatives or sales managers employed by

1

Plaintiff's Exhibit 2

Merck to promote, distribute and sell this prescription drug to physicians in the State of Florida, including the plaintiff's decedent's physician.

The defendant Merck filed a notice of removal in this court on June 6, 2003 [DE#1] asserting diversity jurisdiction under 28 U.S.C. §1332 on theory that the two non-diverse individual defendants, Ghezzi and Metropulos, were fraudulently joined to defeat the jurisdiction of this court that would otherwise exist.

## II. DISCUSSION

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity in three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

The burden of establishing fraudulent joinder is a heavy one. The determination must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavit and deposition transcripts submitted by the parties, with all factual allegations construed in the light most favorable to the plaintiff, with any uncertainties about the applicable law resolved in the plaintiff's favor. *Pacheco de Perez v AT & T Co.*, 139 F.3d 1368 (11th Cir. 1998). If even a colorable claim against a non-diverse defendant is stated, joinder is proper and the case should be remanded to state court. *Id.*

2

In this case, plaintiff has asserted facts which state potential causes of action against the individual Florida defendants, having specifically alleged that these defendants were personally involved in the marketing of the prescription drug Vioxx to Florida physicians, including the plaintiff's decedent's physician. In opposing remand, defendants have filed affidavits of the individual defendants who both aver that their sales territory encompasses Broward and Palm Beach County, Florida, but not St. John's County. "Presuming" that plaintiff's decedent and relevant treating physician resided and worked in St. John's County— the alleged county of the plaintiff's residence-- from here the defendant urges the inference that there can be no causal connection between the marketing activities of these defendants and the alleged injury to plaintiff's decedent; thus, defendants contends that plaintiff can state no viable cause of action against the non-diverse defendants, and that they are therefore fraudulently joined.

It is not appropriate for the court, in passing on a motion for remand, to make a fact finding on causation drawn from an inference upon an inference. Reminded that the court is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law, *Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), the court concludes that the defendants in this case have failed to carry their burden of establishing that plaintiff can state no colorable claim against the non-diverse defendants who are therefore not fraudulently joined. Because their presence as party defendants defeats complete diversity among the parties, this court does not have subject matter jurisdiction to hear this case.

3

It is accordingly **ORDERED and ADJUDGED** :

1.    Because the court lacks subject matter jurisdiction over this case, this action is

**REMANDED** to the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County,

Florida.

2.    The clerk of the court shall **CLOSE** this case, **DENY** any pending motions as

*MOOT* and send a certified copy of *this order to the Clerk of the Fifteenth Judicial Circuit in*

*and for Palm Beach County, Florida pursuant to 28 U.S.C. §1447.*

**DONE and SIGNED** in Chambers in West Palm Beach, Florida this ___ day of

October, 2003.

Daniel T K Hurley
United States District Judge

copies to:

Philip L. Valente, Jr., Esq.
Angelo Patacca, Jr., Esq.
David Miceli, Esq
Sharon Kegerreis, Esq.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 04-14335-CIV-MOORE

MARK TOMLIN and APRIL TOMLIN,

    Plaintiffs,

vs.                    **ORDER**

MERCK & CO., INC., KEVIN BEDELL,
and WALGREEN CO. d/b/a Walgreens,

    Defendants.

**CLOSED CIVIL CASE**

      THIS CAUSE came before the Court upon Plaintiffs' Motion to Remand (DE #4) and

Merck's Motion to Stay (DE #9).

      UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being

otherwise fully advised in the premises, the Court enters the following Order.

### MOTION TO STAY

      Merck argues that the Court should stay all proceedings, including Plaintiffs' Motion to

Remand, pending a decision by the Judicial Panel on Multi-district Litigation ("MDL") regarding

whether to establish an MDL Court to hear all Vioxx related cases.[1]  Plaintiffs oppose the Motion

to Stay, and ask this Court to rule on their Motion to Remand before deciding whether a stay is

appropriate.  While the Court acknowledges that it has discretion to either resolve Plaintiffs'

Motion to Remand, or to decline to decide the Motion to Remand and grant Merck's Motion to

Stay, the Court chooses to reach the merits of Plaintiffs' Motion.  In doing so the Court notes that

other, factually similar cases removed by Merck to federal court based on fraudulent joinder have

been remanded.  See Irvin v. Merck & Co., Inc., Case No. 03-80514-CIV-HURLEY; Kozic v.

---

[1] Merck argues that a stay is appropriate because five other Vioxx cases have already been stayed in the Southern District of Florida, and that these decisions "make clear the necessity of a stay here." Mot. to Stay at 6-7. However, it appears from a review of those cases that one of them is a class action, and that the plaintiffs in the other four cases did not oppose a stay. Therefore, contrary to Merck's contentions, these cases do not make clear the necessity of a stay because they present different factual circumstances than the instant case.

Merck & Co., Inc., Case No. 8:04-CV-324-T-27TBM (M.D. Fla. Aug. 9, 2004). Merck attempts to distinguish these cases by arguing that, at the time they were remanded, no MDL had been requested. This attempt is disingenuous at best, and only serves to obscure the real issue before this Court of whether Merck should have removed this case based on fraudulent joinder in light of the prior remands in factually similar cases. Accordingly, Merck's Motion to Stay is DENIED and the Court will address the merits of Plaintiffs' Motion to Remand.

## MOTION TO REMAND

### I.    BACKGROUND

Plaintiff originally filed this case on November 5, 2004, in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, Case No. 56-2004-CA-001523. Merck filed a Notice of Removal on December 1, 2004, alleging diversity of citizenship pursuant to 28 U.S.C. § 1332, on the basis that Plaintiffs had fraudulently joined defendant Kevin Bedell, and therefore his Florida citizenship should be ignored for purposes of diversity jurisdiction. Plaintiffs then filed a Motion to Remand, arguing that the joinder of Bedell was not fraudulent, and consequently, this Court lacks subject matter jurisdiction to hear the case.

### II.    LEGAL STANDARD

#### A.    Motion to Remand

A federal district court must remand to state court any case that was removed improperly or without the necessary jurisdiction. Campos v. Sociedad Aeronautica De Medellin Consolidada, S.A., 882 F. Supp. 1056, 1057 (S.D. Fla. 1994). In deciding a motion to remand, a district court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court

2

must find that the joinder was proper and remand the case to state court." Cooker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983). This strict construction of removal statutes prevents "exposing the plaintiff to the possibility that they may win a final judgement in federal court, only to have it determined that the court lacked jurisdiction..." Crowe, 113 F. 3d at 1538.

### B.    Fraudulent Joinder

Merck's removal of this case to federal court was based upon its claim of fraudulent joinder. When a case is removed based on fraudulent joinder, the "removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989)(citations omitted). The burden on the defendant is a "heavy one." Crowe, 113 F.3d at 1538. In order to satisfy this burden, the defendant must establish either that the jurisdictional facts were fraudulently alleged, or that there is "no possibility that plaintiff can establish any cause of action against the resident defendant." Id. "The fact that the plaintiffs may not ultimately prevail against the individual [non-diverse] defendants ... does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Furthermore, in a fraudulent joinder inquiry, the court is not to weigh the merits of the plaintiffs' claims "... beyond determining whether it is an arguable one under state law." In this analysis, the court is to look at plaintiff's pleadings at the time of removal. Cabalceta, 883 F.2d 1553, 1561.

### III.    DISCUSSION

Plaintiffs argue that a remand is necessary because they have a valid cause of action under Florida law against Bedell, and therefore his citizenship cannot be disregarded. In response, Merck argues that the "issue present here... is whether the pleading was sufficient to allege misrepresentations." Resp. at 18. Accordingly, Merck's arguments against remand, and in support

3

of removal, are based on the viability of Plaintiffs' complaint, rather than on whether Florida law generally provides for a cause of action against pharmaceutical sales representatives.[2] As a result, in deciding whether a remand is appropriate, the Court must determine whether Plaintiffs have provided sufficient allegations within their complaint to support any of the claims against Bedell.

Plaintiffs' complaint asserts three causes of action against the non-diverse defendant, Bedell: Count II for negligence, Count III for negligent misrepresentation, and Count IV for fraud. In order for Plaintiffs to prevail on their Motion to Remand, it is only necessary that they state one viable claim under Florida law against Bedell. Estate of Ayres v. Beaver, 48 F. Supp. 2d 1335, 1342 (M.D. Fla. 1999).

Plaintiffs' negligence claim against Bedell includes the following allegations: (1) that Bedell was a sales representative, detail person, or sales manager employed by Merck to promote, sell, distribute and encourage physicians, including Plaintiff's physician, to prescribe Vioxx;(2) that Bedell had a continuing duty to warn Plaintiff and/or Plaintiff's physician in a timely manner about the potential risks and complications associated with Vioxx; (3) that Becell knew or should have known that Vioxx caused unreasonably dangerous risks and side effects; (4) that Bedell failed to adequately and appropriately warn prescribing physicians of the significant risks of cardiovascular events associated with the use of Vioxx; (5) that Plaintiff suffered a heart attack in December of 2003; and (6) that such heart attack was the direct and legal result of the negligence of Bedell. See Pl. Compl. at 2-12.[3]

---

[2] Under Florida law, a pharmaceutical sales representative can be held liable for damages resulting from a patient's use of a drug. See Albertson v. Richardson-Merrell, Inc., 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983)(holding that drug manufacturer and individual who promoted drug to medical profession could be held liable for damages resulting from patient's use of drug).

[3] Plaintiffs' complaint contains several additional allegations regarding claims for negligent misrepresentation and fraud. However, because the complaint contains sufficient allegations to support their negligence claim against Bedell, the Court need not address the sufficiency of the additional claims.

4

In light of these allegations, Plaintiffs have stated an arguable claim for negligence under Florida law against Bedell. As a result, Merck has failed to meet its burden of proving that the joinder of Bedell was fraudulent. Therefore, because Bedell and Plaintiffs are Florida residents, there is not complete diversity and this Court lacks jurisdiction to hear this case.

### IV.    CONCLUSION

Based on the foregoing it is ORDERED AND ADJUDGED as follows:

1) Merck's Motion to Stay (DE #9) is **DENIED**;

2) Plaintiffs' Motion to Remand (DE #4) is **GRANTED**, based on lack of subject matter jurisdiction;

3) This case is remanded to the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida;

4) In light of Merck's prior notice that Plaintiffs' claim against a pharmaceutical representative was viable under Florida law, Plaintiffs may, pursuant to 28 U.S.C. § 1447(c), move this Court for costs and expenses incurred as a result of Merck's removal;

5) This case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this __ day of February, 2005.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

5

**FILED**
2005 May 29 PM 02:28
U.S. DISTRICT COURT
N.D. OF ALABAMA





"I am concerned with the potential edema that occurs with Vioxx."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115297





"I am concerned with dose-related
increases in hypertension
with Vioxx."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115298





"Can Vioxx be used in patients using low dose aspirin?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115299



**VIOXX** ®
(rofecoxib)



"I am concerned about the cardiovascular effects of Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115300





"The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than Celebrex."

Confidential—Disclosure to Unauthorized Persons forbidden by Order of the United States District Court of Southern District of Illinois

LEH 0115301





"There is no difference between Vioxx and Celebrex, why should I use Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115302





"Vioxx cannot be used for longer
than five days when treating
patients for acute pain?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115303





"I use Celebrex. I'm concerned about the safety profile with Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115304





"I understand the new COXIB,
Mobic, was just approved."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115305





"Searle/Pfizer just presented me with data which showed Celebrex 800 mg daily did not exhibit dose dependent increases in side effects compared to the OA and RA doses, and that Vioxx exhibited dose dependent increases in side effects with the 50 mg dose."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115306





"The new narcotic data looks great, now I'll use Vioxx for all my acute pain patients."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115307



# VIOXX®
## (rofecoxib)



"I can't use Vioxx because the HMO's require the patients to be on generic NSAIDS first."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115308



# VIOXX® (rofecoxib)



# DODGE!

Confidential—Disclosure to Unauthorized Persons forbidden by Order of the United States District Court of Southern District of Illinois

LEH 0115309



# VIOXX®
## (rofecoxib)



# DODGE!

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115310

# OBSTACLE RESPONSE GUIDE VIOXX®



CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La )



EXHIBIT

" 13 "

MRK-ABR B 0002256

## INFLAMMATORY MANAGEMENT BULLETIN
## OBSTACLE RESPONSE GUIDE

**TO:**
Field Sales Team for VIOXX®

**PURPOSE:**
To provide you with the initial Obstacle Response Guide. Over time we will be providing you updates and modifications to this resource.

**CONTENT:**
You are all aware of the process identified for resolving obstacles:
- Pause
- Clarify the Question
- Verify your Understanding of the Issue
- Resolve & Return to the Core Messages

Let's take just a moment to focus on the clarification of the issue. As we launch VIOXX®, we have entered into a very competitive marketplace. Our competition has been aggressively "pre-positioning" our product. This is likely to generate obstacles or issues that need to be resolved before some customers are comfortable prescribing the product for appropriate patients. It will be critical that we clarify the issue prior to attempting to resolve. Many times, the customer may be vague in their statement, such as "I understand VIOXX® has some safety concerns at higher doses." Statements like this could apply to three different issues, methotrexate, warfarin or edema. Unless you clarify, you might respond regarding edema when the physicians concern was warfarin. This approach would actually result in you creating an additional obstacle for yourself.

Some customers may be hesitant to state their true concerns and will use obstacles as a "smokescreen". They hope to distract or redirect you in an attempt to end a product discussion. Again, clarification will be critical. One honest obstacle effectively handled is a tremendous opportunity. Obstacles should be viewed as selling opportunities. Essentially the customer is saying, "I would prescribe if only I knew...." and when you resolve this question, you have earned the right to ask for appropriate patients.

A few final quotes regarding obstacles and the obstacle handling step in selling:

"Obstacles are those frightful things you see when you take your eyes off your goals" – *Unknown*

"The difference between the right words and the almost right words, is the difference between a lightening bolt and a lightening bug." – *Mark Twain*

"Wise people take the complicated and make it simple and understandable." – *Einstein*

"No problem can stand the assault of sustained thinking." – *Voltaire*

"Chance favors the prepared mind." – *Louis Pasteur*

Remember the final step in effective obstacle resolution is to return to the core selling messages of the product. As you review this Obstacle Response Guide, take time to practice both resolving the issue, transition back to your messages and closing the call.

**ACTION REQUIRED:**
We will be counting on you for two important steps in this process:
1 Identify the issues you are encountering on territory that require a response
2. Effectively implement the responses to resolve the concerns expressed by your customers.

Good Luck and GOOD SELLING!

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D La.)

MRK-ABR B 0002257

Obstacles / Responses

CONFIDENTIAL—SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002258

> **1.** **"There is no difference between VIOXX® and Celebrex. Why should I use VIOXX®?"**

**Clarify:** Doctor, while they both work by inhibiting COX-2, I would like to point out some key clinical areas of distinction that may be important to you and your patients.

<u>INDICATIONS</u>
Once daily VIOXX® is indicated for the relief of the signs and symptoms of OA, management of acute pain in adults and treatment of primary dysmenorrhea, representing all of the indications that were submitted to the FDA for approval of VIOXX®.

Celecoxib is indicated for the signs and symptoms of OA and RA.

**Reference:**
A&A Training Program ⇒ Module 5 (NSAIDs)
VIOXX® PI ⇒ Indications and Usage (V22)
Celecoxib PI ⇒ Indications and Usage (C23)

<u>CONTRAINDICATIONS</u>
Both VIOXX® and celecoxib are contraindicated in patients who are allergic to them, aspirin or other NSAIDs. Once daily VIOXX® is not contraindicated in patients with sulfonamide allergies, commonly known as sulfa allergies.

In contrast, celecoxib <u>is</u> contraindicated in patients with allergic-type reactions to sulfonamides. This contraindication is unique to celecoxib, due to its molecular structure, and is <u>**not a class effect**</u>. Sulfonamide allergies are common drug allergies in the US population and allergic reactions can range from mild to more serious.

Once daily VIOXX® offers simplicity - simplified prescribing without having to worry about a sulfonamide allergy contraindication.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

1

Reference:
VIOXX® PI ⇒ Contraindication (V23)
Celecoxib PI ⇒ Contraindication (C24)

## DOSING
Doctor, VIOXX® offers dosing simplicity of once daily dosing for all
indications – the relief of the signs and symptoms of OA,
management of acute pain in adults, and the treatment of primary
dysmenorrhea.  With celecoxib, each time you see an OA patient you
must decide whether to prescribe it once a day or twice a day.
VIOXX® also offers the option to increase the dose to 25 mg once
daily for OA patients who need additional relief.  Celecoxib has one
dose – 200 mg, and its label states that no additional efficacy is seen
with 200 mg BID.

Reference:
VIOXX® PI ⇒ Dosage and Administration ⇒ Osteoarthritis (V65) and
Management of Acute Pain and Treatment of Primary Dysmenorrhea
(V66)
Celecoxib PI ⇒ Dosage and Administration ⇒ Osteoarthritis (C54)

## METABOLISM
Once daily VIOXX® is metabolized  primarily through cytosolic
enzymes in the liver.  Unlike once daily VIOXX®, celecoxib is
metabolized through the cytochrome P450 system.

(Remember to provide appropriate balancing information on use in
hepatic insufficiency and hepatic effects.)

Reference:
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Pharmacokinetics ⇒
Metabolism (V7)

CONFIDENTIAL—SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002260

## COMPREHENSIVE CLINICAL STUDIES

Once daily VIOXX® has been comprehensively studied. In OA patients, once daily VIOXX® was compared to diclofenac in two 1-year studies. The endoscopy studies were six-month studies. We have data on serious upper GI events out to one year. This was the most comprehensive clinical program ever run by Merck. Let me share some of the data with you...

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Clinical Studies ⇒ OA (V16)

CONFIDENTIAL — SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

3

MRK-ABR B 0002261

> **2. "I can't use VIOXX® with patients being treated with methotrexate."**

Doctor, once daily VIOXX® is <u>not</u> contraindicated in patients receiving methotrexate. No dosage adjustments of once daily VIOXX® and no change in the standard monitoring for methotrexate are required for patients taking methotrexate with once daily VIOXX®.

If probed further:
Doctor, according to the product circular for once daily VIOXX®, at doses of 75 mg (which is 3 to 6 times the OA therapeutic dose), once daily VIOXX® increased plasma concentrations of methotrexate by 23%. At 24 hours post dose or at the trough period, a similar proportion of patients receiving VIOXX® or placebo had methotrexate plasma concentrations below the measurable limit. According to the methotrexate label, methotrexate-toxicity is believed to be more dependent on time of exposure rather than peak levels. Again doctor, no dosage adjustments of once daily VIOXX® and no change in the standard monitoring for methotrexate are required for patients taking methotrexate with once daily VIOXX®.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Precautions ⇒ Drug Interactions ⇒ Methotrexate
(V47)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

4

MRK-ABR B 0002262

### 3. "Is VIOXX® contraindicated in patients being treated with warfarin?"

No. Once daily VIOXX® is <u>not</u> contraindicated in patients taking warfarin <u>and no</u> change in standard monitoring is required. According to the package insert, when therapy with once daily VIOXX® is initiated or changed, patients should be monitored for INR* values. Doctor, the recommendation for once daily VIOXX® is the same recommendation for warfarin when <u>any</u> new therapy is initiated.

Transition to strength, safety and simplicity messages.

If further probed, refer to the PI:
In a 21-day multiple-dose study in healthy individuals stabilized on warfarin (2 to 8.5 mg daily), administration of VIOXX® 25 mg QD was associated with mean increases in INR* of approximately 8% (range of INR on warfarin alone, 1.1 to 2.2; range of INR on warfarin plus VIOXX®, 1.2 to 2.4). Somewhat greater mean increases in INR of ~11% (range of maximum INR on warfarin alone, 1.5 to 2.7; range of maximum INR on warfarin plus VIOXX®, 1.6 to 4.4) were also seen in a single dose PK screening study using a 30-mg dose of warfarin and 50 mg of VIOXX®. Standard monitoring of INR values should be conducted when therapy with VIOXX® is initiated or changed, particularly in the first few days, in patients receiving warfarin or similar agents.

(Submit a PIR if appropriate.)

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Precautions ⇒ Drug Interactions ⇒ Warfarin (V51)

*INR – International Normalized Ratios. This is a standardized way of measuring the degree of anti-coagulation produced by warfarin.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

5

MRK-ABR B 0002263

**4. "I'm concerned about the potential edema that occurs with VIOXX®."**

Clarify:
What are your specific concerns regarding edema?

**If the physician's concern is the overall incidence of edema with once daily VIOXX®, then respond:**
Doctor, edema is reported with all NSAIDs and is thought to result from cyclooxygenase inhibition in the kidney. Clinical trials with once daily VIOXX® 12.5 and 25 mg have shown renal effects such as edema similar to those observed with comparator NSAIDs. In these studies, the incidence rates for lower extremity edema were as follows: (In the AE table, point to row on edema under Body As A Whole)

VIOXX® 12.5 mg or 25 mg once daily – 3.7%
Ibuprofen 2400 mg – 3.8%
Diclofenac 150 mg – 3.4%
Placebo – 1.1%

In clinical trials, the effects of edema were mild and there were no discontinuations due to edema.

**If the physician's concern is the dose related increase of edema with once daily VIOXX® 50 mg, then respond:**

Doctor, let me explain where the use of 50 mg is recommended. 50 mg is recommended for use in acute pain in adults. It has been studied for up to 5 days. In these studies, the renal effects of once daily VIOXX®– such as edema – were generally similar to comparator NSAIDs.

The 50 mg dose is not recommended for OA. However, in clinical trials with once daily VIOXX® 50 mg up to 6 months, there was a higher incidence of lower extremity edema.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0196 W.D. La.)

6

MRK-ABR B 0002264

Finally, let me point out that edema is reported with all NSAIDs and is thought to result from cyclooxygenase inhibition (COX-2) in the kidney.

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Adverse Reactions ⇒ OA ⇒ Table and second paragraph (V59)
VIOXX® PI ⇒ Precautions ⇒ Fluid Retention and Edema (V35)

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002265

5. "It is my understanding that VIOXX® was denied an indication for RA by the FDA."

**Clarify:** Doctor, what is your true concern?

**If physician mentions denial of an RA indication, respond:**
Doctor, Merck was not denied any indications. Once daily VIOXX® is indicated for relief of the signs and symptoms of OA, management of acute pain in adults, and for the treatment of primary dysmenorrhea. These represent all of the indications that Merck submitted to the FDA for the approval of once daily VIOXX®.

*If appropriate, state:* Last month when I was in, you stated that the majority of your arthritis patients suffer from OA. I would like for us to discuss how once daily VIOXX® could benefit these patients.

Transition to strength, safety and simplicity messages.

(After close: If you need information on the use of VIOXX® in RA, I can submit a PIR.)

**If the physician is concerned about the anti-inflammatory effect, see obstacle #6.**

Reference:
VIOXX® PI ⇒ Indications and Usage (V22)
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Mechanism of Action (V3)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002266

## 6. "VIOXX® is not an anti-inflammatory drug."

Doctor, the Mechanism of Action section of the package insert for once daily VIOXX® clearly states: "VIOXX® is a nonsteroidal anti-inflammatory drug that exhibits anti-inflammatory, analgesic, and anti-pyretic activities in animal models." Once daily VIOXX® 12.5 and 25 mg reduced the signs and symptoms of OA as effectively as 2400 mg of ibuprofen. Also, once daily VIOXX® produced significant reductions in joint stiffness upon first awakening in the morning. Doctor, as you know, morning stiffness is one indicator of inflammation.

In addition, let me point out that in the label it also states "because of the anti-inflammatory effects of VIOXX®, the pharmacological activity of VIOXX® in reducing inflammation, and possibly fever, may diminish the utility of these diagnostic signs in detecting infectious complications of presumed noninfectious, painful conditions."

Doctor, would you agree that once daily VIOXX® has anti-inflammatory effects?

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Mechanism of Action (V3)
VIOXX® PI ⇒ Clinical Studies ⇒ OA (V16)
VIOXX® PI ⇒ Precautions ⇒ General (V31)

CONFIDENTIAL—SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002267

### 7. "Can VIOXX® be used in patients using low dose aspirin?"

Let me share with you the experience we have on the concomitant use of once daily VIOXX® and low-dose aspirin. At steady state, once daily VIOXX® 50 mg had no effect on the anti-platelet activity of low-dose (81 mg once daily) aspirin.

I should also remind you that once daily VIOXX® is not a substitute for aspirin for cardiovascular prophylaxis and that concomitant administration of low-dose aspirin with once daily VIOXX® may result in an increased risk of GI ulceration or other complications compared with use of once daily VIOXX® alone.

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Precautions ⇒ Drug Interactions ⇒ Aspirin (V41)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

10

MRK-ABR B 0002268

**8. "I understand that VIOXX® has sulfur as part of its chemical structure. Is it contraindicated for patients with "sulfa allergies?"**

No. Doctor, let me show you the contraindications section of the label. Once daily VIOXX® is not contraindicated for patients with known sulfonamide allergies, commonly known as "sulfa allergies."

Unlike once daily VIOXX®, celecoxib is contraindicated in patients with sulfonamide allergies. Celecoxib contains a sulfonamide group (S-NH$_2$), which is associated with sulfa allergies. This contraindication is based on the specific chemical structure of celecoxib and is not a class effect. Sulfonamide allergies are common drug allergies in the US population and allergic reactions can range from mild to more serious.

Once daily VIOXX® offers simplicity, with no sulfonamide allergy contraindication.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Contraindications (V23)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002269

## 9. "Why wasn't VIOXX® 50 mg studied for longer than five days in acute pain?"

To obtain an indication for the management of acute pain in adults, all analgesic drugs are studied in short-term standard pain models as defined by the FDA. The maximum time for these studies for once daily VIOXX® was 5 days. However, let me point out that while it is not a recommended dose for OA, once daily VIOXX® 50 mg was studied out to 6 months. In these studies, the general safety profile of once daily VIOXX® 50 mg was similar to the recommended doses, except for a higher incidence of GI symptoms, lower extremity edema, and hypertension. Also, let me point out that once daily VIOXX® is indicated for the treatment of acute pain. The studies that support this acute pain indication lasted up to 5 days. But as I mentioned, while it is not a recommended OA dose, once daily VIOXX® 50 mg was studied for up to 6 months in OA patients – so the profile is well defined in the circular.

If further probed: "But, I'm worried about GI safety long-term."
Doctor, in two identical studies of OA patients receiving once daily VIOXX® 25 or 50 mg for up to 24 weeks, once daily VIOXX® demonstrated significantly fewer endoscopic ulcers than ibuprofen.

Once daily VIOXX® also has GI event data from clinical trials up to one year. Among 3,357 patients who were treated with once daily VIOXX® 12.5, 25, and 50 mg in controlled clinical trials of 6-weeks to 1 year, a total number of four patients experienced a serious upper GI event. Two patients experienced an upper GI bleed within 3 months (0.06%); one experienced an obstruction within 6 months; and one experienced an upper GI bleed within 12 months, for a total incidence of 0.12% over 1 year.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Clinical Studies ⇒ Analgesic Studies (V17)
VIOXX® PI ⇒ Clinical Studies ⇒ OA (V16)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002270

## 10. "Why didn't you compare VIOXX® to higher doses of ibuprofen or naproxen sodium for the management of pain?"

To obtain an indication for the management of acute pain in adults, a drug must be studied in standard pain models as defined by the FDA. As it states in the ibuprofen PI, in clinical studies using doses of ibuprofen greater than 400mg are no more effective than the 400mg dose in analgesia. Also, the maximum recommended dose of naproxen for analgesia is 550 mg.

In acute analgesic models of post-orthopedic surgical pain, post-operative dental pain and primary dysmenorrhea, once daily VIOXX® relieved pain that was rated by patients as moderate to severe. In post-surgical dental pain studies, the onset of action with a single 50mg dose of once daily VIOXX® occurred within 45 minutes.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Clinical Studies ⇒ Analgesia (V17)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002271

## 11. "When do I prescribe VIOXX® 12.5 mg, 25 mg, or 50 mg once daily?"

Whether you're treating OA or acute pain, once daily VIOXX® is <u>always</u> a simple once daily dose.

### 12.5 mg or 25 mg once daily for OA

Once daily VIOXX® 12.5mg is the starting dose for OA. If a patient requires greater pain relief, you have the flexibility to increase the dose to 25mg once daily at no additional cost to the patient.

### 50 mg once daily for Acute Pain and Primary Dysmenorrhea

In patients with moderate to severe acute pain, the dose is 50mg once daily. Once daily VIOXX® relieved moderate to severe pain following orthopedic surgery, dental surgery and primary dysmenorrhea.

In addition to the simplicity of once daily dosing, once daily VIOXX® also adds the flexibility of oral suspension for both strengths.

Transition to strength, safety and simplicity messages:

Reference:
VIOXX® PI ⇒ Dosage and Administration (V65-V67)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

14

MRK-ABR B 0002272

## 12. "Can I use VIOXX® in patients with renal impairment?"

No dosage adjustment is recommended for patients with mild to moderate renal impairment. Use of once daily VIOXX® in patients with advanced renal disease is not recommended because no safety information is available regarding the use of once daily VIOXX® in these patients.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Precautions ⇒ Renal Effects (V33)
VIOXX® PI ⇒ Precautions ⇒ Fluid Retention and Edema (V35)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

15

MRK-ABR B 0002273

**13. "Why doesn't VIOXX® have a 50 mg tablet?"**

Once daily VIOXX® is not offered in a single 50 mg tablet and a dosage of 50mg can be easily achieved by taking two 25 mg tablets.

Transition to strength, safety and simplicity messages.

Reference:
VIOXX® PI ⇒ Dosage and Administration (V66)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

16

MRK-ABR B 0002274

**14.** **"How does your price compare to Celebrex and other branded NSAIDs?"**

Doctor, the catalog price for once daily VIOXX® is $2.02 for both 12.5 mg and 25 mg, offering your patients one of the best values available.

The catalog price for celecoxib is $2.38 for 100mg bid and $2.02 for 200 mg qd.

In addition, the catalog price for the oral suspension of once daily VIOXX® is competitive with other NSAIDs at $3.00.

This price comparison does not establish that products have comparable efficacy. These prices reflect direct cost and do not reflect actual costs paid by consumers.

Transition to strength, safety and simplicity messages.

---

(For your reference, the average wholesale price (AWP) for once daily VIOXX® is $2.42 for both 12.5 mg and 25 mg. AWP for celecoxib is $2.86 for 100 mg BID and $2.42 for 200 mg qd. AWP for the oral suspension of once daily VIOXX® is competitive with other NSAIDs at $3.60.)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002275

---

### 15. "Isn't a 17-hour half-life inconsistent with once daily dosing?"

The 17 hour half-life of once daily VIOXX® is entirely consistent with its once daily dosing. In all OA studies, lasting from 6 to 86 weeks with 3900 patients, once daily treatment with VIOXX® 12.5 and 25 mg in the morning was associated with a significant reduction in joint stiffness upon first awakening in the morning. At doses of 12.5 and 25 mg once daily, the effectiveness of once daily VIOXX® was shown to be comparable to ibuprofen 800mg TID and diclofenac 50 mg TID.

If probed further on half life:
Doctor, many drugs with half-lives shorter than 24 hour are effective when dosed once a day, for example Singulair, Prinivil, and Zocor.

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Excretion (V8)
VIOXX® PI ⇒ Clinical Studies ⇒ OA (V16)
SINGULAIR® PI ⇒ Clinical Pharmacology ⇒ Excretion
PRINIVIL® PI ⇒ Clinical Pharmacology ⇒ Excretion
ZOCOR® PI ⇒ Clinical Pharmacology ⇒ Excretion

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002276