# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

**SUE F. BRADLEY**,

         Plaintiff,

vs.

    **CIVIL ACTION NO.**
    3:07 CV 661-MHT

**GUIDANT CORPORATION, et al,**

         Defendants.

## OPPOSITION TO MOTION TO REMAND

Defendants Guidant Corporation and Guidant Sales Corporation ("Defendants") hereby oppose Plaintiff's motion to remand. As grounds for this opposition and as set forth below, Defendants show as follows:

### Introductory Statement

Plaintiff has sought to evade federal jurisdiction by joining her product liability claims against Defendants – which meet all of the requirements for federal diversity jurisdiction – with claims against four individual sales representatives against whom she has no valid cause of action under Alabama law and one doctor who has similarly been fraudulently joined and misjoined to this action. Plaintiff has now compounded this impropriety by filing a Motion to Remand containing

plainly incorrect factual assertions, random, unrelated exhibits,[1] and misstatements of the law. Plaintiff also asks this Court to needlessly expend its judicial resources in addressing issues that should be decided by Federal District Judge Donovan Frank who presides over MDL 1708, *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*. The Court should defer consideration of Plaintiff's Emergency Motion to Remand pending MDL transfer and instead grant Defendants' previously filed Motion to Stay (Doc. 4). Should the Court choose to consider Plaintiff's Emergency Motion to Remand rather than staying the case, however, the Court should deny the Motion because the non-diverse defendants are fraudulently joined and misjoined.

<u>Argument</u>

Plaintiff points to no procedural deficiency in the removal, nor has she challenged Defendants' assertion that the jurisdictional amount is satisfied. Thus, the only issues before the Court are: (1) whether this Court or the

---

[1] *See, e.g.,* Exhibit F to Motion to Remand. Plaintiff attached to her motion promotional materials allegedly used by certain Merck sales representatives when detailing Vioxx. However, this exhibit is not cited in the motion, nor is it relevant to any allegations regarding Defendants' cardiac devices. Plaintiff also asserts that some sales representatives have denied participation in "one of the notorious programs." Motion to Remand at 8. Defendants are unaware of what this "notorious program" is, unless Plaintiff is referring to the "Dodgeball" allegations against Merck, which have absolutely no bearing on the case at bar. *See also*, Motion to Remand at 23, containing citations to decisions in unrelated Vioxx cases and states that they "similarly involve" claims against Merck. Regardless of Plaintiff's attempts to cast aspersions, this is not a case against Merck.

MDL court should rule on Plaintiff's motion; and (2) whether Plaintiff's pleadings, which rely on misstatements of facts and law and wholly unrelated Vioxx documents, can deny Defendants their right to have this case tried in a federal court.

**I.      For the reasons set forth in Defendants' Motion to Stay, the Court Should Defer a Ruling on this Motion.**

As set forth more fully in Defendants' Motion to Stay Pending MDL Transfer (Doc. 4), the Court should defer ruling on this motion and allow it to be dealt with by the MDL Court uniformly with other such motions. Despite Plaintiff's unsupported arguments to the contrary, Defendants do not seek a "two year sojourn to the distant MDL."  Motion to Remand at 2. Defendants want to have a federal district judge who has dealt with these same jurisdictional issues hundreds of times in this same litigation make a ruling on this issue.  This will allow the judge to apply the specialized knowledge he has gathered over the course of the litigation and will insure consistency of rulings.  Further, contrary to Plaintiff's rhetoric, there is a procedure in place in the MDL to make sure that remand motions are decided timely. *See, e.g., In re Guidant,* Order relating to plaintiff Emmett David Brown, Aug. 21, 2007, attached hereto as Exhibit A.  Defendants simply request that this Court do what other federal courts in Alabama have

done – stay this case and allow it to go to the MDL. *See, e.g., Schuck v. Guidant Corp.*, 2:06-CV-00101-RRA (N.D. Ala., Jan. 27, 2006) (Order Granting Stay, Armstrong, J.);[2] *Christon v. Guidant Corp.*, 7:06-CV-00977-LSC (N.D. Ala., June 9, 2006) (Order Granting Stay, Coogler, J.); *Reed v. Guidant Corp.,* 2:06-cv-00763-WKW (M.D. Ala. Sept. 21, 2006) (Order Granting Stay, Watkins, J.); *Sims v. Guidant Corp.*, 1:06-cv-00644-BH-C (S.D. Ala., Nov. 2. 2006) (Order Granting Stay and Denying Remand, Hand, J.); *Cook v. Guidant Corp,* 07-0095-CG-M (S.D. Ala., Feb. 22, 2007) (Order Granting Stay, Grenade, J); *Brownfield v. Guidant Corp.,* 2:07cv-118-ID (M.D. Ala. Feb. 22, 2007) (Order Granting Stay, DeMent, J.); *Williams v. Guidant Corp.*, 1:07-cv-295-WS-B (S.D. Ala., May 9, 2007) (Order Granting Stay, Steele, J.) (collectively attached to Motion to Stay (Doc #4) as Exhibit D).[3]

## II.    The sales representatives are fraudulently joined.

Plaintiff goes to great lengths to distract the Court for the Eleventh Circuit's clear holding in *Legg v. Wyeth*, 428 F. 3d 1317 (11th Cir. 2005).

---

[2] In the *Schuck* case, Linda Garmon, Tab Whisenhunt and Jeff Hall, the same sales representatives fraudulently joined here by Plaintiff to destroy diversity were also parties. *See Schuck* Amended Complaint, attached hereto as Exhibit B.  *Schuck* was stayed and transferred to the MDL.

[3] In several other cases, a transfer of the case has taken place prior to a ruling on the Motion to Stay.

case.  While Plaintiff is correct in the observation that the issue before the Eleventh Circuit in *Legg* was the propriety of sanctions that were imposed by the District Court, the decision regarding the fraudulent joinder of sales representative defendants could not have been clearer.  In reaching the decision that sanctions were improperly imposed against the removing defendant in that case, the Court stated:

> Quite simply, there is no reasonable basis to predict that an Alabama court would find [the sales representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the sales representative] either knew or should have known of [the product's] allegedly dangerous effects.

*Id.* at 1324-25.

The court explained further that when a defendant presents evidence (e.g., declarations) that the Plaintiff does not dispute, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint."  *Id.* at 1323.  Thus, the Eleventh Circuit found that remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court."  *Id.* at 1325 (quoting *Wecker v. National Enameling& Stamping Co.,* 204 U.S. 176, 186 (1907)).

This is precisely the circumstance in this case. Defendants have presented evidence, through declarations, that establish that none of the sales representatives in this case were involved in the manufacture or design of the cardiac devices at issue and that any promotional material that they may have distributed was supplied by their employer.[4] *See* Exhibits C, D, E and F to Notice of Removal (Doc. #1). As set forth in the Notice of Removal, these declarations provide evidentiary support rebutting any reasonable possibility that Plaintiff can prevail on *any of the claims* alleged in the Complaint.

Despite multiple claims to the contrary, Plaintiff has failed to submit any evidence to rebut the sales representatives' declarations. Instead, Plaintiff merely cites to her Complaint and refers to the allegations therein as "evidence." *See* Motion to Remand at 6 ("we know that the case against the doctor and as against Mr. Nappier is already sustained by the evidence…"; at 10 (the declarations "do not even bother to address the evidence against Dr. Aikens…"). As in the Complaint, Plaintiff makes bold assertions

---

[4] Plaintiff's accusation that "although all of the resident sales representatives who are Defendants have been served or have appeared in this case, declarations are not submitted by some," Motion to Remand at 28, is demonstrably false. **All** of the sales representatives in this case have submitted declarations, despite the fact that not all of them have been served. Moreover, despite Plaintiff's service of the wrong Linda Garmon, the correct Linda Garmon has appeared in this case for the purposes of moving to dismiss the claims against her.

without any evidentiary support.  For instance, Plaintiff claims that sales representative Joe Nappier "went to the Plaintiff Mrs. Bradley's Home, and misrepresented facts to her."  Motion to Remand at 5.[5]  Plaintiff follows this with a promise to discuss this "more below."  *Id.*  There is, however, no evidentiary support for this new accusation nor is there further discussion of this accusation "below."  Because the declarations establish that Plaintiff has no viable claim against them under Alabama law and stand unrefuted by Plaintiff, the sales representatives have been fraudulently joined in this case.

### a. Plaintiff's Attempts to Avoid *Legg v. Wyeth* Fail.

The Eleventh Circuit's decision in *Legg* has altered the jurisdictional calculus for the courts in this Circuit.  In support of her motion for remand, Plaintiff offers a list of cases involving pharmaceutical manufacturers that were remanded to state court.  *See* Motion to Remand at 6 and Ex. B.  But these cases preceded *Legg*, and many were considered and rejected by the *Legg* court.  *See* Plaintiff's Motion to Remand in *Legg*, attached hereto as Exhibit C, at 13-15;[6] *Legg*, 428 F.3d at 1325.  They should be similarly rejected here.

---

[5] It should also be noted that the Complaint contradicts this point, and states that Nappier met with Plaintiff at Dr. Aikens' office *one month after* the device at issue was implanted.  Compl. at ¶ 21-22; Motion to Remand at 12.

[6] The following cases expressly cited by Plaintiff here were also cited by the *Legg* plaintiffs in their motion for remand and were rejected by the Eleventh Circuit:

Plaintiff also relies unavailingly on the Northern District of Alabama decision in *Patricia Tracy v. Eli Lilly & Co.*, Case No. 2:06-cv-00536-VEH, to support the proposition that her case ought to be remanded to State court. Motion to Remand at 5, 24, 28, and Ex. A.  In *Tracy*, the Plaintiff alleged that she was prescribed the pharmaceutical drug, Zyprexa, in spite of the drug manufacturer's knowledge that Zyprexa increased the risk of weight gain and diabetes in its users.  *See id.* at 2-3.  Tracy sued, among others, one of Eli Lilly's sales representatives ("Green"), alleging that Green could be held liable under the AEMLD because Green had promoted Zyprexa and insured its safety to Tracy's prescribing physician.  *See id.* at 15.  Plaintiff produced documents generated by Eli Lilly and used for the purpose of training its sales force that acknowledged a risk of weight gain and diabetes associated with Zyprexa and instructed sales representatives on methods designed to minimize physicians' concerns regarding the link between the drug and these risks.  *Id.* at 6.

---

*Crittenden v. Wyeth*, No. CV-03-T-920-N (M.D. Ala.); *Blair v. Wyeth*, No. CV-03-T-1251-S (M.D. Ala.); *Brunson v. Wyeth*, No. CV-03-T-1167-S (M.D. Ala.); *Ballard v. Wyeth*, No. CV-03-T-1255-N (M.D. Ala.).  *See* Ex. C at 13-15; Motion to Remand at 6. Numerous additional cases were attached in Ex. B to the Motion to Remand, but not cited in the motion, and were also considered and rejected by the Eleventh Circuit in *Legg*, e.g., *Terrell v. Wyeth*, No. CV-03-BE-2876-S (N.D. Ala.).  Save for the two Judge Hopkins opinions, all of Plaintiff's precedent preceded the *Legg* decision.  Judge Hopkins' decision in *Tracy* actually supports Defendants' arguments and will be discussed in greater detail later in this brief.

This Court held that, unlike the "uncontroverted testimony establishing [the sales representatives] lack of knowledge" in *Legg*, the documents produced by Tracy "adequately challenged" Green's testimony for purposes of determining whether Tracy could maintain an AEMLD cause of action against her. *Id.* at 16, 17.

*Tracy*, however, is easily distinguishable from the case *sub judice*. Unlike the plaintiff in *Tracy,* this Plaintiff utterly fails to challenge the sales representatives' sworn statements. Instead, the sales representatives have been fraudulently joined and there is "no reasonable basis to predict that an Alabama court would find [them] . . . personally liable for any wrongful action . . . ." *Legg*, 428 F.3d at 1324-25. Plaintiff has submitted no evidence regarding allegedly false or misleading promotional materials that were used by the sales representatives here. Instead, vague and conclusory allegations are made against these defendants, without any evidentiary support or the requisite specificity. *See* Motion to Remand at 25. Plaintiff also goes as far as to attach, without any discussion, random promotional materials from an unrelated pharmaceutical manufacturer in a desperate attempt to divest this Court of jurisdiction, which is due to be ignored. *See* Motion to Remand at Ex. F; *Gordon v. Pfizer Inc.*, 2006 WL 2337002, *5 (N.D. Ala. 2006) (holding that Merck's promotional materials were not relevant in

determining fraudulent joinder of Pfizer sales representative and discussing *Legg* decision).   Plaintiff's failure makes this case distinguishable from *Tracy*.

Further, support that this case should be decided by the Eleventh Circuit's precedent in *Legg* and not by *Tracy* is found in *Southern v. Pfizer Inc.*, 471 F. Supp. 2d 1207 (N.D. Ala. 2006).   This case was decided subsequent to and by the same Judge that decided *Tracy*.

The *Southern* court found that while it was undisputed that the sales representatives met with and detailed the plaintiff's prescribing physician regarding the medication at issue, it also found that those sales representatives had submitted sworn testimony that they did not prescribe the medication, did not participate in the development of warnings, and did not make any knowing misrepresentations regarding the medication to the plaintiff.[7]  *Id.* at 1215.  The Court expressly distinguishes the *Tracy* decision in holding that the plaintiff in *Tracy* submitted evidence that the sales representative in that case had constructive knowledge of the defects in the medication at issue.  *Id.* at 1216.  In *Southern*, as in this case, there was no such evidence.   That makes this case distinguishable from *Tracy* and

---

[7] Note that three of the sales representatives joined in this case never called on Dr. Aikens.  *See* Declarations of Linda Garmon, Tab Whisenhunt and Jeff Hall.  Exhibits C, D, E and F to Doc #1.

analogous to *Legg*.  As such, as the Eleventh Circuit did in *Legg*, this Court should ignore the citizenship of the sales representatives when considering the appropriateness of federal jurisdiction under 28 U.S.C. §§ 1332 and 1441.

A response to Plaintiff's remand brief on this subject cannot be complete without comment on the Plaintiff's ironic criticism of the case law that Defendants use to support their removal.  Plaintiff complains that *Legg* did not address the issue of claims against sales representatives based on the AEMLD.  However, the Court in *Southern* dealt explicitly with an AEMLD claim in finding that pharmaceutical sales representative defendants had been fraudulently joined.  *Id.* at 1217.  This issue has been equally disposed of by <u>this</u> Court *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *3 (M.D. Ala. Dec. 19, 2005).  Further, despite Plaintiff's bold and inaccurate assertion that Defendants have relied solely on the decisions of "distant courts" and "ignored" precedent from this state, the *Bloodsworth* decision was cited in Defendants' Notice of Removal.[8]

---

[8] It should also be noted that the "distant courts" in *In re Rezulin*  and *In re Baycol* that Plaintiff scoffs at were relied on with approval by this Court in *Bloodsworth*, and by the N.D. Ala. in *Southern*.  *See Southern* at 1217; *Bloodsworth* 2005 WL 3470337, at *6.  For further discussion of the futility of AEMLD claims against a sales representative by the Northern District of Ala., *see Gordon*, 2006 WL 2337002 at *7.

Moreover, the vast majority of pharmaceutical cases relied on by Plaintiff, including the heavily-referenced *Hales* decision, were decided prior to the Eleventh Circuit's decision in *Legg*. *Compare Legg*, 428 F.3d 1317, (decided on October 25, 2005), *with Tomlin v. Merck*, Case No. 04-14335, (decided on Feb. 22, 2005), *Hales v. Merck*, Case No. 03-AR-1028-M (N.D. Ala.). Given the clear message sent by the Eleventh Circuit in *Legg*, the cases referenced by Plaintiff, such as *Hales*, can no longer be viewed as authoritative or even persuasive authority.

### III.    Dr. Aikens has been fraudulently joined.

As the basis of her argument for the inclusion of Dr. Aikens as a defendant in a product liability case, Plaintiff asserts that "[t]he normal defense by Guidant, and its associated Defendants, is that the doctor improperly installed and implanted the pacemaker and especially the leads to the pacemaker." Motion to Remand at 2. This is an incredible statement to make in a federal court pleading as no similarly situated case has been tried. Thus, there is no "normal defense." Not surprisingly, Plaintiff cannot provide any evidence to support this argument.

Further, Plaintiff misconstrues the law regarding fraudulent joinder by arguing that because there is a possibility that Plaintiff can prove *a cause of action* against Dr. Aikens, Dr. Aikens is not fraudulently joined. The main thrust for Plaintiff's Complaint is that "Guidant Corporation engaged in a

pattern or practice of deception concerning their implantable devices[,]" *see* Complaint, ¶ 2; however, Plaintiff made no allegations or factual assertions regarding Dr. Aikens's involvement or participation in any such conduct. *See Spier v. Bayer Corp. (In re Baycol Prods. Litig.)*, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003).

Therefore, *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ("*Rezulin I*") is directly on point with this case. Despite Plaintiff's argument to the contrary, the court in *Rezulin I* did not uphold the removal on the basis that the plaintiffs "did not specifically mention a nondiverse physician or sales representative Defendant except in the caption . . . ." *See In re Rezulin Prods. Liab. Lit.*, 2002 WL 548750, at *2 (S.D.N.Y. April 12, 2003) ("Rezulin II"). Rather, the court noted that the distinguishing fact in *Rezulin II* was that the plaintiffs there did in fact allege that the physician defendants failed to disclose defects *of which they were aware*. As stated by the court,

> Unlike plaintiffs in other *Rezulin* cases who have sought to hold physicians liable for failing to disclose defects of which the physicians were not aware, *these plaintiffs arguably have stated a claim against the nondiverse physician defendants based on the theories that they failed to alert plaintiffs to the side effects of Rezulin of which they were aware and that they failed to secure the plaintiffs' informed consent and monitor their heart and liver function as the FDA recommended.*

*Id*. at *1 (emphasis added); *see also Barragan v. Warner-Lambert Co.*, 216 F. Supp. 2d 627, 633 (W.D. Tex. 2002) (noting that the non-diverse doctors' citizenship was material for diversity purposes because the plaintiffs made

specific allegations regarding the doctors failure to warn of known side effects).

Plaintiff has made no allegation that Dr. Aikens knew or should have known of any alleged defects when he installed the allegedly defective product. To the contrary, Plaintiff's "myriad allegations" in her Complaint that Guidant misrepresented and concealed the risks from patients *and* physicians, a class that included Dr. Aikens, support the argument that Dr. Aikens had no knowledge of the alleged defects. Plaintiff's attempt to characterize her allegations against Dr. Aikens as "thorough" and "detailed" is therefore misleading.[9]

This case falls squarely in the category of the "other *Rezulin*" cases mentioned by the court (i.e., cases where plaintiffs seek to hold physicians liable for failing to disclose defects *of which the physicians were not aware*). Just as in *Rezulin I*, Plaintiff does "not come close to alleging that [Dr. Aikens' failure to warn Plaintiff of the risks associated with Guidant's implantable devices] proximately caused [the decedent's] injuries or that [Dr. Aikens] knew or should have known of the risks of [Guidant's devices]." 133 F. Supp. 2d at 295. "In fact, the assertion that '[Guidant] . . . recklessly, falsely and/or deceptively represented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and

---

[9] Further, Plaintiff's attempt to distinguish *In re Baycol Products Liability Litigation* fails, as her Complaint suffers from the same deficiencies in pleading found in that case. *See* 2003 WL 21223842 at *2 ("Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegation that Dr. Stone "knew or should have known" of Baycol's risks.").

efficacy of [its devices] from [treating] physicians' refutes the assumption that [Dr. Aikens], as a physician, had knowledge of [the device's] harmful effects." *Id*. Consequently, this Court should hold that Dr. Aikens was joined improperly just as in *Rezulin I*.

## IV.    Dr. Aikens has been fraudulently misjoined.

Even if Plaintiff can prove other causes of action against Dr. Aikens, the presence of those claims in this suit will not defeat diversity because the claims against the two defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences as required by Rule 20(a). *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (citing Fed. R. Civ. P. 20(a)). As noted by the Eleventh Circuit, fraudulent misjoinder is established where "a diverse defendant [e.g., Guidant] is joined with a nondiverse defendant [e.g., Dr. Aikens] as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Plaintiff's claims against Dr. Aikens are clearly fraudulently misjoined with the claims against Guidant in an attempt to defeat removal. Plaintiff asserts that the allegations in her Complaint regarding Dr. Aikens' alleged negligence in treating Plaintiff "are not dependent on the misrepresentations by Guidant and its representatives to the doctor." *See*

Motion to Remand at p. 3; *see also id.* ("Much of the other conduct of the doctor is not dependent on the misrepresentations of the other defendants either . . . ."). Thus, based on Plaintiff's own admissions, it is clear that Plaintiff's claims against Dr. Aikens are "wholly distinct" from the claims against Guidant, and Dr. Aikens has "no real connection with the controversy" involving Guidant. *See*, *e.g.*, *Tapscott*, 77 F.3d at 1360. As a result, the doctor's citizenship must be ignored for the purpose of determining the propriety of removal. *Id.* Moreover, if Plaintiff is correct in her assertion that she has alleged independent claims as against Dr. Aikens that are not dependant on the actions of Defendants, this Court should sever those claims and remand them to state court. *See Alexander v. Boston Scientific, et al.*, No. 07-1129, Slip. Op at 14 (D. Minn, June 4, 2007) (severing and remanding malpractice claims against hospital while retaining product liability claims), attached to Notice of Removal (Doc #1) as Exhibit I*; Rezulin*, 2003 WL 21276425 at *1 (remanding fraudulently misjoined claim against non-diverse physician and otherwise denying motion to remand); *Lee v. Mann*, 2000 WL 724046 (Va. Cir. Ct. 2000) (granting a motion to sever a prescribing physician from a complaint against a pharmaceutical manufacturer because the two claims did "not arise out of the 'same transaction or occurrence'").

## V.    There have been no remands of Guidant cases in Alabama

Plaintiff's assertion that Defendants have ignored a "large body of precedent" remanding cases "in this litigation" is inaccurate and misleading. Motion to Remand at 22. There are no decisions in Alabama remanding any

cases against Defendants related to cardiac devices.  Plaintiff boldly asserts that Defendants are aware of these cases, yet provides no citation.  As set forth above, the only fraudulent joinder removal in this litigation, *Schuck v. Guidant*, which involved three of the sales representatives involved in this case and has been transferred to the MDL proceeding.  *See* Sec. I, n. 2, infra.

## Conclusion

The non-diverse defendants have been fraudulently joined and misjoined in this case, and this Court has jurisdiction over this matter. Plaintiff's Motion to Remand is due to be denied.

s/ Andrew B. Johnson
One of the Attorneys for
Defendants Guidant Corporation and
Guidant Sales Corporation

OF COUNSEL:

Fred M. Haston, III (HAS012)
Andrew B. Johnson (JOH168)
Bradley Arant Rose & White LLP
1819 Fifth Ave. North
Birmingham, Alabama 35203
(205) 521-8000
(205) 521-8810 (fax)
thaston@bradleyarant.com
ajohnson@bradleyarant.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas J. Knight                    Michael K. Wright
Hubbard & Knight                    Starnes & Atchison
1125 Noble Street                   P.O. Box 598512
P.O. Box 1850                       Birmingham, Alabama 35259-8512
Anniston, AL 36201

Steven R. Morris
108 South Main Street
P.O. Box 814
Wedowee, Alabama 36278-0814

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

        None.

                        Respectfully submitted,

                        s/ Andrew B. Johnson
                        _____

                        Bradley Arant Rose & White LLP
                        One Federal Place
                        1819 Fifth Avenue North
                        Birmingham, AL 35203-2104
                        Telephone: (205) 521-8000
                        Facsimile: (205) 521-8800
                        E-mail: ajohnson@bradleyarant.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Emmett David Brown,<br><br>       Plaintiff,<br><br>v.      Civil No. 07-1487 (DWF/AJB)<br><br>Guidant Corporation, an Indiana Corporation; Endovascular Technologies, Inc., a California Corporation and a Division of Guidant Corporation; Guidant Sales Corporation; and Dr. Leland B. Housman,<br><br>       Defendants. | **MEMORANDUM**<br>**OPINION AND ORDER** |

---

Jeanette Haggas, Esq., Mark E. Burton, Jr., Esq., Nancy Hersh, Esq., and Rachel Abrams, Esq., Hersh & Hersh, counsel for Plaintiff.

Timothy A. Pratt, Esq., Sara J. Romano, Esq., and Dana N. Gwaltney, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Guidant Corporation, Endovascular Technologies, Inc., and Guidant Sales Corporation.

Michael I. Neil, Esq., and David P. Burke, Esq., Neil, Dymott, Frank, Harrison & McFall, APLC; and Timothy A. Pratt, Esq., Shook Hardy & Bacon, LLP, counsel for Defendant Dr. Leland B. Housman.

---

In its July 31, 2007 Order, the Court stayed Plaintiff Emmett David Brown's

Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708

(DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) and Defendant

Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case

Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708

(DWF/AJB), Doc. No. 1801; Civ. No. 07-1487 (DWF/AJB), Doc. No. 7). (*See* MDL No.

05-1708 (DWF/AJB), Doc. No. 2301.) The above-entitled matter is now before the

Court pursuant to Plaintiff's Motion to Lift Stay on Ruling on the Pending Motion to

Remand, Motion for Sanctions, and Motion to Sever (MDL No. 05-1708 (DWF/AJB),

Doc. No. 2306; Civil No. 07-1487 (DWF/AJB), Doc. No. 26). Defendant Dr. Housman

joins in Plaintiff's Motion to Lift Stay as to the Motion to Sever and Remand. (*See* Civil

No. 07-1487 (DWF/AJB), Doc. No. 35).[1] Dr. Housman, however, disagrees with

Plaintiff's argument that Plaintiff's cases against Dr. Housman and Guidant are

inexorably linked. Guidant Corporation, Endovascular Technologies, Inc., and Guidant

Sales Corporation ("Guidant") oppose Plaintiff's motion in its entirety. But if the Court

decides to entertain Plaintiff's motion, Guidant contends that the Court should only

consider the claims against Dr. Housman for remand.

Based upon the submissions of the parties, together with all pleadings, records,

and files herein, and noting the objection of Guidant, the Court grants Plaintiff's motion

for the limited purpose of lifting the stay only as to Plaintiff Emmett David Brown's

Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708

---

[1]    Defendant Dr. Housman filed his Joinder in Plaintiff's Motion only in the
original case. Dr. Housman should have filed his Joinder in both the original case Civil
No. 07-1487 (DWF/AJB) and in the master case MDL No. 05-1708 (DWF/AJB).

(DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) and Defendant

Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case

Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708

(DWF/AJB), Doc. No. 1801; Civ. No. 07-1487 (DWF/AJB), Doc. No. 7).

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion to Lift Stay on Ruling on the Pending Motion to

Remand, Motion for Sanctions, and Motion to Sever (MDL No. 05-1708 (DWF/AJB),

Doc. No. 2306; Civil No. 07-1487 (DWF/AJB), Doc. No. 26) is **GRANTED**.  The Court

will rule on Plaintiff Emmett David Brown's Motion to Remand and Motion for

Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No.

07-1487 (DWF/AJB), Doc. No. 13), based on the submissions filed with the Court.

2.    Defendant Dr. Housman's Joinder in Plaintiff's Motion to Lift Stay as to

Motion to Sever and Remand (Civil No. 07-1487 (DWF/AJB), Doc. No. 35) is

**GRANTED**.  The Court will rule on Defendant Leland Housman, M.D.'s Motion to

Sever Medical Malpractice Action and Remand Case Back to Superior Court, State of

California, County of Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ.

No. 07-1487 (DWF/AJB), Doc. No. 7), based on the submissions filed with the Court.

3.    All motions, deadlines related to such motions, pending deadlines, and

discovery obligations stayed pursuant to the Court's July 31, 2007 Order (MDL No.

05-1708 (DWF/AJB), Doc. No. 2301)—except for those referenced in paragraphs 2(d)

and 2(e) therein—remain suspended and stayed pending implementation of the settlement

or further Order of this Court.  The Court **ORDERS** that the **STAY IS LIFTED** as to the

3

motions referenced in paragraphs 2(d) and 2(e) only, of the Court's July 31, 2007 Order

(MDL No. 05-1708 (DWF/AJB), Doc. No. 2301).


Dated:  August 21, 2007                s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       Judge of United States District Court

FILED
2006 Jan-26  AM 09:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | |
|---|---|
| *KELLY SCHUCK as Administratrix of the ESTATE OF JOSEPH DUDLEY ELLIS,* Deceased, <br><br>     *PLAINTIFF* <br><br> *vs.* <br><br> GUIDANT CORPORATION, GUIDANT  SALES CORPORATION, and Sales representatives, CARDIAC PACEMAKERS, INC.,and Fictitious  Defendants A, B, C, D, E, F, being those Persons, Sales Representatives, JEFF HALL, TAB WHISENHUT, LINDA GARMON,  firms or Corporations whose fraud, scheme to defraud, negligence and/or other wrongful conduct caused or contributed to the Plaintiff's Injuries and death, and whose true names and Identities are presently unknown to the Plaintiff but will be substituted by amendment When ascertained, | **CV-06-00101-RRA** |

    *DEFENDANTS.*

**SECOND AMENDED COMPLAINT FOR
WRONGFUL DEATH**

**INTRODUCION**

1.    Plaintiff, on behalf of herself and the Estate of Joseph Dudley Ellis, deceased, by

undersigned counsel, hereby brings this action against defendant Guidant Corporation,

Guidant Sales Corporation (collectively referred to as "Guidant"), Cardiac Pacemakers,

Inc., ( "CPI") and Jeff Hall, Tab Whisenhut, and Linda Garmon.  The Plaintiff's decedent

was implanted with a Guidant Corp. Ventak Prizm AVT Model 1850 defibrillator (the

EXHIBIT   A

1

"Ventak Prizm Defibrillator") and leads manufactured by Guidant and/or Cardiac

Pacemakers, Inc., prior to January of 2002. Plaintiff and her decedent brings this action

to recover damages, for the decedent's wrongful death against Guidant and CPI, which

designed, manufactured and tested the Ventak Prizm Defibrillator and leads and Guidant,

CPI, and defendants Jeff Hall, Tab Whisenhut and Linda Garmon who marketed,

distributed, promoted, and sold the Ventak Prizm Defibrillator and leads.

2.    On May 24, 2005, the New York Times reported that for three years Guidant

concealed from doctors and Defibrillator Recipients that Ventak Prism Defibrillators and

leads implanted in persons including the Plaintiff's decedent contained a flaw that caused

other Ventak Prism Defibrillators to short-circuit and malfunction. In the same New York

Times article, and in a follow-on article published on June 2, 2005, it was also publicly

revealed that Guidant changed its manufacturing processes twice in 2002 (April and

November) to address this defect but concealed this fact from doctors and Plaintiff's

decedent and continued to sell the old defective Defibrillators and leads out of existing

inventory. The Plaintiff died on December 19, 2003 due to the defendant's defective

product and the fraudulent suppression of the same.

## PARTIES

3.    Plaintiff Kelly Schuck, as Administratrix of the Estate of Joseph Dudley Ellis, at

all times relevant herein, was and is a resident citizen of Jefferson County, Alabama. On

or about January 11, 2002, Plaintiff's decedent Joseph Dudley Ellis was implanted with

Ventak Prizm AVT Model 1850 and leads that had been manufactured by Guidant and or

EXHIBIT    A

2

CPI prior to that date.

4.     Defendants Guidant and CPI designed, manufactured, tested, marketed, distributed, promoted, and sold Ventak Prizm and leads, directly or through wholly owned operating divisions and subsidiaries, including units manufactured prior to January 11, 2002. At all times relevant herein, Guidant was and is a corporation duly formed and existing under and by virtue of the laws of the State of Indiana. Guidant's World Headquarters are located in Indianapolis.  CPI is a Minnesota Corporation.

5.     Defendants Guidant, Hall, Whisenhut and Garmon called upon the Plaintiff's decedent's treating physician Dr. Arnold on multiple occasions prior to December 19, 2003.  At these times they presented fraudulent information regarding the safety of Guidant Defibrillators and/or fraudulently suppressed material information regarding the safety of Guidant Defibrillators and/or misrepresented defects in the defibrillator, and/or placed Guidant Defibrillators in the stream of commerce by providing these defibrillators and leads to Dr. Arnold.

6.     The Plaintiffs claims occurred in Jefferson County, Alabama.  The Plaintiff and Plaintiff's decedent were and are residents of Jefferson County, Alabama.

7.     Defendants Guidant Corporation and Guidant Sales are foreign corporations currently engaged in business, directly or by agent in Jefferson County, Alabama.

8.     The sales representatives defendants Jeff Hall, Tab Whisenhut and Linda Garmon are resident citizens of the State of Alabama and have conducted business in Jefferson County, Alabama.

9.     Defendant Cardiac Pacemakers Incorporated ("CPI") is a foreign corporation located in Minnesota and does business by agent in Jefferson County, Alabama.

EXHIBIT   A

3

## FACTUAL ALLEGATIONS

10.      Cardiovascular disease is the leading cause of death for both men and women in the United States today and claims more lives each year than the next five leading causes of death combined. To treat cardiovascular disease, Guidant develops, manufactures and markets products that focus on the treatment of cardiac arrhythmias, heart failure and coronary and peripheral disease. One product line consists of implantable defibrillator systems used to detect and treat abnormally fast heart rhythms (tachycardia) that could result in sudden cardiac death, including implantable cardiac resynchronization therapy defibrillator (CRT-D) systems used to treat heart failure. An implanted defibrillator is designed to be inserted under the skin and to shock the heart back into a normal rhythm when it starts beating irregularly.

11.      Implanted defibrillators have been among the fastest growing group of medical devices. In 2005, 200,000 patients are expected to receive one. In 2001, Vice President Dick Cheney received one manufactured by a competitor of Guidant. Sales of implanted defibrillators have been Guidant's fastest growing product for at least the last three years. Guidant's revenues from these sales between 2002 and 2004 grew over 80 percent, from $992 million to $1.786 billion.

12.      In its public disclosures, Guidant has represented its implantable cardioverter defibrillators ("ICDs") to be essential for saving lives. For example, in its 2002 Annual Report, Guidant describes them as "Lifesaving Therapy for Sudden Cardiac Death (SCD)." Further, touting the technology, Guidant states that "About the size of three stacked silver dollars, Guidant's ICD's have 20 million transistors and more computing

EXHIBIT    A

power than the original Apollo spacecraft." Similarly, in its 2003 Annual Report, Guidant characterized itself as a "pioneer in the development of implantable defibrillator technologies . . . "and that "[s]uperior engineering spurred the launch of a new implantable defibrillator in every quarter of the past year."

13.    Guidant also described its manufacturing facilities as "exceptional." In Guidant's 2003 Annual Report, it states "Experienced technicians -- supported by continued investment in state-of-the-art automated manufacturing equipment and expansion – have streamlined manufacturing processes to reduce cost, improve quality, increase through-put and shorten the product development and manufacturing and cycle, speeding the delivery of lifesaving therapies to physicians and patients worldwide." Further expounding on "quality," Guidant emphasized in its 2003 Annual Report that it has "an unrelenting focus on quality in everything" it does. Indeed, Guidant proclaims that: "Quality is essential; lives depend on us. We pledge together to build the most reliable products and services. We work every day to drive Quality into everything that is Guidant."

14.    Guidant also publicly claimed to be an open provider of information to patients and physicians. In its 2003 Annual Report, it stated that "Information for patients, physicians and the public is available around the clock through Guidant's dedicated customer and technical service representatives, as well as its comprehensive web site (www.guidant.com)."

15.    In marked contrast to these assurances, at some point prior to April 2002 that discovery will adduce, Guidant learned that certain of the implanted Ventak Prizm Defibrillators were short circuiting when building a charge to deliver a shock.

EXHIBIT    A

5

Specifically, according to the May 24, 2005 New York Times article, a "short circuit can occur when the device builds a charge to deliver the type of high-energy shock needed in emergency situations. In three cases, when doctors intentionally induced abnormal heart rhythms during routine checkups, the Guidant device failed to work, forcing doctors to rescue those patients by jolting them with the type of external defibrillator used in emergency rooms."

16.     In April 2002, after determining that electricity could arc between a wire on the Defibrillator and a component known as the "backfill tube," and thereby cause a short-circuit, Guidant and CPI increased the spacing between them. Nevertheless, Guidant and CPI made no disclosure of this change to patients or doctors, and, incredibly, continued to sell the defective version of the Ventak Defibrillator. According to a June 2, 2005 New York Times article, data recently provided by Guidant to Abbott Northwestern Hospital indicates that nine Ventak Prizm Defibrillators manufactured prior to April 2002 were implanted in patients at that hospital alone after April 2002.

17.     In November 2002, Guidant made another undisclosed design fix to its Ventak Prizm Defibrillator. At that time, it added extra insulation around the component it distanced from one of the wires in April. Belatedly, it disclosed the November change to the FDA as a part of its annual report to the FDA, which it filed in August 2003.

18.     According to the New York Times article of May 24, 2005, Guidant and its sales representatives including, Jeff Hall, Tab Whisenhut and Linda Garmon, defendants in this case, continued to keep physicians and Defibrillator recipients in the dark about these changes, and even the death of one Defibrillator recipient, until it learned, the day before, that the New York Times was preparing an article about the Ventak Prizm Defibrillator.

EXHIBIT   A

On that day, May 23, 2005, according to Guidant's May 25, 2005 Press Release, Guidant

initiated a communication to physicians advising them that it has been aware of 26

Ventak Prizm Defibrillator failures including one recent death. According to its press

release, the Company further advised physicians, on May 23, 2005, that "the problem" is

in Ventak Prizm Defibrillators manufactured prior to November 2002.

19.      Other press reports, including an article entitled "Guidant Sold Heart Device

After Discovering Flaw" in the Wall Street Journal on June 2, 2005, have stated that

37,000 of the defibrillators were made and that Guidant has estimated that about 24,000

are still implanted in patients' chests.

20.      On June 3, 2005, the FDA announced that it is evaluating Guidant's handling of

its Ventak Prizm heart defibrillators, including the company's handling of potentially

flawed devices after it made a manufacturing change. The FDA further indicated that this

evaluation includes a review of Guidant's continued marketing of the Ventak Prizm's

manufactured that did not have the modifications.

21.      Plaintiff's decedent, Joseph Dudley Ellis is one of the individuals who has had a

Ventak Prizm defibrillator implanted. He had no idea that his defibrillator possessed any

defect. He was never made aware of any potential defects in his defibrillator after his

implantation in January of 2002 until his death in December of 2003.  On the night of

December 19, 2003 the Plaintiff's decedent suffered ventricular tachardia and ventricular

fibrillation, the exact problems that the Ventak Prizm was supposed to correct.

Unfortunately, the Guidant /CPI Ventak Prizm  and/or leads did not work and as a

proximate result caused the death of Joseph Dudley Ellis.

EXHIBIT    A

22.    At all times material hereto, defendants Jeff Hall, Tab Whisenhut and Linda Garmon advertised marketed and/or promoted Guidant Ventak Prizm AVT Defibrillator to Mr. Ellis' treating physician utilizing information known to fraudulently represent the safety of the defibrillator and failed to warn known dangers adverse events associated with the use of Ventak Prizm Defibrillators.

23.    At all times material hereto, the sales representatives, defendants Jeff Hall, Tab Whisenhut and Linda Garmon placed Guidant Defibrillators in the stream of commerce by distributing to Mr. Ellis' prescribing physician, Dr. Arnold.

24.    At all times material hereto, Guidant and its sales representatives defendants Jeff Hall, Tab Whisenhut and Linda Garmon  actually knew (or should have known) that the Ventak Prizm Defibrillators malfunctioned and would not operate properly which could lead to the death of persons like Mr. Ellis.  Nevertheless, Guidant and CPI continued to develop, manufacture, package and label and Guidant and its sales representatives continued to promote, market, advertise, sell and/or  distribute Guidant Vantak Prizm Defibrillators so as to maximize sales and profits at the expense of the public health and safety, including the health and safety of Mr. Joseph Dudley Ellis.

25.    Had Plaintiff's decedent been aware of the risks associated with the use of the Ventak Prizm Defibrillator, he would not have used the product.

26.    As a direct and proximate result of all defendants conduct, acts and omissions, Plaintiff was caused to suffer injuries including, but limited to pain and suffering, emotional distress, and the death of the decedent.  Upon trial of this case, Plaintiffs will request the Court and jury to determine fair compensation for the amount of loss which Plaintiffs have incurred.

EXHIBIT    A

27.     At all times material hereto, the Defendants acted with conscious disregard of the foreseeable harm caused by Ventak Prizm Defibrillator warranting an award of punitive damages to Plaintiffs.

28.     At all times material hereto, the Defendants' conduct exhibited a level of care evidencing fraud, ill will, recklessness, and/or gross negligence warranting an award of punitive damages to Plaintiffs.

29.     At all times material hereto, the Defendants designed, tested, developed, manufactured, packaged, labeled, marketed, sold, and distributed Ventak Prizm Defibrillator with willful and intentional disregard of the individual rights of Joseph Dudley Ellis warranting an award of punitive damages to Plaintiffs.

## COUNT I
### (Strict Liability)

30.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

31.     Ventak Prizm Defibrillator which was designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by Guidant and CPI, the sales representatives Hall, Whisenhut and Garmon  was placed in the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into consideration the utility of the product and the risk involved in its use.

32.     Further, Ventak Prizm Defibrillator and leads which was designed, developed, manufactured, packaged, labeled, marketed, promoted, advertised, sold, and/or distributed by the Defendants, was defective in marketing due to inadequate warnings or instructions.

EXHIBIT     A

9

33.  Ventak Prizm Defibrillator and leads which was designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by these Defendants, was defective and unreasonably dangerous due to inadequate testing.

34.    In the alternative, the Defendants failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Ventak Prizm Defibrillator.  The defective nature of this product is a contributing cause of the injuries sustained by Plaintiffs.

35.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs decedent was killed as described above.   The Defendants directly and proximately caused or contributed to cause Joseph Dudley Ellis' death.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, demand judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.

### COUNT II
### (Negligence)

36.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

37.    Guidant, CPI, Hall, Whisenhut and Garmon had a duty to exercise reasonable care in designing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing Ventak Prizm Defibrillator and leads.

38.    The Defendants failed to exercise ordinary care in designing, testing,

EXHIBIT    A                    10

developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing of Ventak Prizm Defibrillator and leads. The Defendants knew or should have known that its defibrillator created an unreasonable risk of bodily harm.

39.     Despite the fact that the Defendants knew or should have known that Ventak Prizm Defibrillator and leads caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market Ventak Prizm Defibrillator to physicians and consumers, including Joseph Dudley Ellis, when there were safer alternative methods of treatment.

40.     The Defendants knew or should have known that consumers, such as Mr. Ellis would suffer injury or death as a result of the Defendants' failure to exercise ordinary care as described above.

41.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs were injured as described above. The Defendants also, directly or proximately, caused or contributed to cause Mr. Ellis' death.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kelly Schuck, on behalf of the Estate of Joseph Dudley Ellis, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III
### (Express Warranty)

42.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in

EXHIBIT    A

full.

43.     Before Mr. Ellis was implanted with Ventak Prizm Defibrillator and leads and during the period which he used the same, Guidant, CPI and sales representatives Hall, Whisenhut and Garmon expressly warranted that Ventak Prizm Defibrillators were safe.

44.     Ventak Prizm Defibrillator with leads failed to conform to these express representations of the Defendants in that Ventak Prizm Defibrillator was not safe and had high levels of serious side effects, including life-threatening side effects, including that it would not work.

45.     As a direct and proximate result of the Defendants' wrongful conduct, Mr. Ellis was injured as described above. The Defendants directly or proximately caused or contributed to Mr. Ellis's death.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kelly Schuck, on behalf of the Estate of Joseph Dudley Ellis, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV
### (Implied Warranty)

46.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

47.     At the time Guidant, and sales representatives Hall, Whisenhut and Garmon packaged, labeled, promoted, marketed, advertised, sold, and/or distributed Ventak Prizm Defibrillator for use by Mr. Ellis, the Defendants knew of the use for which Ventak

EXHIBIT     A                                                    12

Prizm Defibrillator with leads was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

48.     Mr. Ellis reasonably relied upon the skill and judgment of the Defendants as to whether Ventak Prizm Defibrillator with leads was of merchantable quality and safe and fit for its intended use.

49.     Contrary to such implied warranty, Ventak Prizm Defibrillator was not of merchantable quality or safe or fit for its intended use because Ventak Prizm Defibrillator with leads was unreasonably dangerous and unfit for the ordinary purposes for which it was intended.

50.     As a direct and proximate result of the Defendants' wrongful conduct, Mr. Ellis was injured as described above.  The Defendants also directly and proximately caused or contributed to cause Mr. Ellis's death.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kelly Schuck, on behalf of the Estate of Joseph Dudley Ellis, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V
### (Fraud)

51.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

52.     Before Mr. Ellis was implanted with Ventak Prizm Defibrillator and during the period in which the Ventak Prizm Defibrillator with leads was implanted, Guidant, CPI, Hall, Whisenthut and Garmon negligently, recklessly, intentionally and fraudulently

EXHIBIT    A

made material misrepresentations that Ventak Prizm Defibrillators were safe.    The Defendants did so with the intent to induce physicians to prescribe and for consumers, including Mr. Ellis to purchase Ventak Prizm Defibrillator.

53.    At the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to their truth.    The Defendants made these representations with the intent to mislead.

54. As a direct and proximate result of the Defendants' wrongful conduct, Mr. Ellis was injured as described above.    The defendants also caused the death of Mr. Ellis

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kelly Schuck, on behalf of the Estate of Joseph Dudley Ellis, demands judgment against the Defendants, jointly and severally, in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs and any other relief this Court deems just.


## COUNT VI
### (Fraudulent Suppression)

55.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out here in full.

56.    Before Mr. Ellis was implanted with the Ventak Prizm Defibrillator with leads and during the period in which Mr. Ellis was implanted, defendants Guidant Hall,  CPI, Whisenhut and Garmon fraudulently suppressed material information regarding the safety and efficacy of Ventak Prizm Defibrillator and its harmful side effects in order to induce physicians to prescribe and consumers, including Mr. Ellis to purchase the Ventak Prizm Defibrillator and keep it implanted.


EXHIBIT    A                    14

57.    At the time the Defendants suppressed the fact that Ventak Prizm

Defibrillator

with leads was not safe, the Defendants were under a duty to communicate this

information to Mr. Ellis.

58.    As a direct and proximate result of the Defendants' wrongful conduct, Mr.

Ellis was injured as described above and was proximately caused to die.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kelly Schuck, on behalf of

the Estate of Joseph Dudley Ellis, demands judgment against the Defendants, jointly and

severally, in such an amount of compensatory and punitive damages as a jury deems

reasonable, plus costs and any other relief this Court deems just.


Respectfully submitted this, 23rd day of January, 2006.


s/Craig L. Lowell
Craig L. Lowell ASB-4232-W-86-C


OF COUNSEL
Wiggins Childs Quinn & Pantazis LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205-314-0500 telephone
205-254-1500 facsimile


**JURY DEMAND**
Plaintiffs hereby demand trial by jury on all counts in this cause.


s/ Craig L. Lowell
OF COUNSEL


EXHIBIT    A

Please serve Defendants via Certified Mail as follows:

Guidant Corporation
The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

Guidant Corporation
111 Monument Circle, 2900
Indianapolis, Indiana 46204

Jeff Hall
c/o Guidant Sales Corporation
111 Monument Circle, 2900
Indianapolis, Indiana 46204

Tab Whisenhut
3418CountrywoodLane
Birmingham, Alabama 35243

Linda Garmon
c/o Guidant Sales Corporation
111 Monument Circle, 2900
Indianapolis, Indiana 46204

Cardiac Pacemakers, Inc.
4100 Hamline Avenue North
St. Paul, MN 55112

EXHIBIT    A

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CARL LEGG, et al.,

       Plaintiffs,

vs.                         CASE NO.:  CV-2004-0264-JLB

WYETH, et al

       Defendants.

_____/

## MEMORANDUM BRIEF

## IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND


### I.  FACTUAL BACKGROUND

On February 2, 2004, Plaintiff Carl Legg, an Alabama resident, filed a Complaint in

the Circuit Court for Madison County, Alabama.  The Complaint contained six substantive

counts alleging claims for products liability under the Alabama Extended Manufacturer's

Liability Doctrine ("AEMLD"), negligence, breach of warranty, fraud, negligent

misrepresentation, and civil conspiracy.[1]  Plaintiffs' complaint named as defendants Wyeth,

---

[1] Plaintiffs' Complaint also includes a Count for loss of consortium which will not be addressed since
it is not relevant to remand.

Wyeth Pharmaceutical ("Wyeth Pharm"), Indevus Pharmaceuticals, Inc. ("Indevus"),Stacy

Subblefield ("Stubblefield"), Michael Sullivan ("Sullivan"), Betsy Weaver ("Weaver"), and

Fictitious Parties A, B, C, and D (collectively herewith referred to as "Defendant Agents").[2]

Plaintiffs' complaint alleges that Defendants Wyeth, Wyeth Pharm, and Indevus

manufactured, distributed, and sold the deadly diet drug Redux. The manufacturer

Defendants and Defendant Sullivan are not residents of Alabama. Defendant Agents are

residents of Alabama. Plaintiffs' complaint allege that Defendants Wyeth and Wyeth Pharm

employed Defendant Sullivan and Defendant Agents as sales representatives to detail the

pharmaceutical known as Redux. Detailers are sales representatives who visit physicians and

persuade them to regularly prescribe a company's drug. Sales representatives use various

methods of persuasion to promote a product including gifts and product samples. There

are a wide range of gifts used by sales representatives to persuade physicians to prescribe a

particular drug. These include, but are not limited to, sports and theatrical performance

tickets, dining in expensive restaurants, free gas, free vacations to resorts, food for clinic

employees, free computer equipment, Palm Pilots, free golf, cruises, professional honors,

textbooks, sports equipment, and cash.

Plaintiffs' complaint allege that Defendant Agents marketed Redux to his prescribing

physician. Plaintiffs allege that Defendant Agents knew or should have known that Redux

---

[2] Defendants refers collectively to Defendant Wyeth, Defendant Wyeth Pharm, Defendant Indevus, Defendant Stubblefield, Defendant Sullivan, and Defendant Weaver. Defendant Agents refers to Defendants Stubblefieldand Weaver.

was not safe or effective as Defendant Agents explained to Plaintiff's prescribing physician. Plaintiffs further allege that Plaintiffs' prescribing physician relied on Defendant Agents misrepresentations about the safety and effectiveness of Redux and prescribed Plaintiff Redux which he consumed. As a direct and proximate cause of consuming Redux, Plaintiff has permanent heart damage.

Defendants removed this case to this Court pursuant to 28 U.S.C. section 1441. Defendants allege that Defendants Agents are fraudulently joined. In support of their removal, Defendants filed affidavits of Defendant Agents. The affidavits of the Defendant Agents attempt to contradict the allegations contained in Plaintiffs' Complaint. Plaintiffs move this Court to remand this case because Defendants have failed to meet their heavy burden of proving by clear and convincing evidence that Defendant Agents are fraudulently joined. Consequently, no federal jurisdiction exists.

## II. STANDARD OF REVIEW

### A. Federalism Concerns Require Strict Construction of Removal Statute

Defendants have filed a notice of removal alleging that federal jurisdiction exists based on diversity of citizenship. Defendants contend that the amount in controversy exceeds $75,000.00 and the parties are non-diverse because Defendant Agents have been fraudulently joined. A case may be removed from state court and transferred to federal court in any case which could have been brought originally in federal court. See 28 U.S.C.

-3-

section 1441(a); Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996).

Title 28 U.S.C. section 1332(a)(1) provides that federal courts may exercise diversity

jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the

action is between citizens of different states. However, "if at any time before final judgment

it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded." 28 U.S.C. section 1447(c). Since removal jurisdiction raises significant

federalism concerns, the removal statutes must be strictly construed. See Shamrock Oil &

Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); University of

South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). All doubts

must be resolved in favor of remand to state court. See University of South Alabma, 168

F.3d 405, 411; Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994)(citing

Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3rd Cir. 1990)); Coker v. Amoco Oil Co.,

709 F.2d 1433 (11th Cir. 1983); Ruffin v. Congress Life Insurance Co., 2000 WL 718813

(S.D. Ala.). "The removing party bears the burden of demonstrating federal jurisdiction."

Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); Tapscott, 77

F.3d 1353. In the case at bar, Plaintiffs concede that the amount in controversy in this

action exceeds $75,000. Consequently, the only issue is whether Defendant Agents are

fraudulently joined.

> ### B. Fraudulent Joinder Requires That Defendants Show There Is No Possibility Plaintiffs' Complaint States a Cause of Action Against Defendant Agents

"Fraudulent joinder is a judicially created doctrine that provides an exception to the

requirement of complete diversity." Triggs, 154 F.3d at 1287.  Joinder has been deemed fraudulent in three situations: (1) when there is not any possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a non-diverse defendant as to who there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." Id. Defendants make no argument that the second or third fraudulent joinder situations apply. See Notice of Removal.  Therefore, Plaintiffs respond only to the allegation that Defendant Agents are fraudulently joined because there is no possibility Plaintiffs can prove any of the claims against Defendant Agents.

In their Notice of Removal, Defendants improperly state the standard for fraudulent joinder in this Circuit.[3]  The Eleventh Circuit standard for fraudulent joinder requires that, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.  The Plaintiffs need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at

---

[3]  Defendants allege in their Notice of Removal that Defendant Agents are fraudulently joined because *Plaintiff cannot prevail on any claim against Defendant Agents.*

-5-

1287; Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989) Pacheco de Perez v. AT&T Co., 139 F.3d 1368 (11th Cir. 1998)("Where a Plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."); Ruffin, 2000 WL 718813(quoting Bedford v. Connecticut Mut. Life Ins. Co., 916 F. Supp. 1211, 1214 (M.D.Ala. 1996) "The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the Plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of law plainly a sham and frivolous."). "The burden of establishing fraudulent joinder is a heavy one." Pacheco de Perez, 139 F.3d at 1380. Although Defendants attempt to persuade this Court that the Eleventh Circuit applies a different fraudulent joinder standard, the Eleventh Circuit has affirmed as recently as 2001 that the fraudulent joinder standard requires the "complaint show there is no possibility that the plaintiff can establish any cause of action against the defendant." Tillman v. R.J. Reynolds Tobacco, Inc., 253 F.3d 1302, 1305 (11th Cir. 2001)(quoting Triggs, 154 F.3d 1284, 1287). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d 1284, 1287 (emphasis in original). Plaintiffs respectfully submit that the proper standard for fraudulent joinder is that there is no possibility that a state court would find that Plaintiffss complaint

states any cause of action against any of the Defendant Agents.  Nevertheless, Defendants have failed to meet their heavy burden under either standard.

### C.  Fraudulent Joinder Proceeding Requires Court Resolve Uncertainties In Favor of Plaintiff and Avoid Substantive Determination of Case.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiffs' pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties... In making its determination, the district court must evaluate factual allegations in the light most favorable to the Plaintiff and resolve any uncertainties about the applicable law in the Plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); Cabalceta, 883 F.2d 1553, 1561  The appropriate proceeding for deciding whether a party has been fraudulently joined is similar to that used for ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(b).  Crowe, 113 F.3d at 1538.  However, the jurisdictional inquiry "must not subsume substantive determination. . ..Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id.

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law'." Id. quoting Pacheco de Perez, 139 F.3d at 1380-1381 (quoting Crowe, 113 F.3d 1536, 1538 (11th Cir. 1997).

In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." . . . Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them. In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent. Crowe, 113 F.3d at 1541-1542.

### III. ARGUMENT

A. There is a Possibility That a State Court Would Find that Plaintiff's Complaint States a Cause of Action for Fraud Against Defendant Agents.

Defendants allege that Defendant Agents are fraudulently joined because Plaintiffs cannot prevail on a claim for misrepresentation or suppression. Defendants allege that Plaintiff has not plead fraud with particularity.[4] Defendants also allege that Defendant Agents cannot be held personally liable for any misrepresentation or suppression because

---

[4] Defendants' allegation is an improper basis for alleging fraudulent joinder. As this Court is aware, Alabama Rule of Civil Procedure 12(b) provides the remedy for failure to state a claim upon which relief may be granted. If a state court finds that Plaintiff's fraud count was not sufficient, the state court would likely grant plaintiff leave to amend his Complaint. The issue of fraudulent joinder is whether it is possible that the state court might hold Defendant Agents liable for fraud based on the allegations in Plaintiffs' Complaint. Despite Defendants' misplaced argument, Plaintiff responds to Defendants' allegation of lack of particularity.

they merely promoted and answered questions concerning Redux based on information

provided by Defendant Wyeth. Both of Defendants' arguments fail.

First, Alabama Rule of Civil Procedure 9(b) provides that "in all averments of fraud

. . . the circumstances constituting fraud. . . shall be stated with particularity." The

Committee Comments to Rule 9(b) state:

> This special requirement as to fraud. . .**does not require every element** in
> such actions to be stated with particularity. It simply commands the pleader
> to use more than generalized or conclusory statements to set out the fraud
> complaint of. The pleading must show time, place, and the contents or
> substance of the false representations, the fact misrepresented, and an
> identification of what has been obtained. But knowledge by the defendant of
> the falsity of the representation and reliance on the representation by the
> plaintiff can still be generally alleged. . . Thus, it should be expected that the
> courts will strive to find the details necessary for the sufficiency of such a
> complaint, if the pleadings give fair notice to the opposing party whereas
> heretofore the same pleading would have been held insufficient. (Emphasis
> Added)

As demonstrated by the Committee Comments, Rule 9 merely requires that a pleading for

fraud show the time, place, and contents or substance of the false representations, the facts

misrepresented, and an identification of what has been obtained. Bethel v. Thorn, 757

So.2d 1154, 1158 (Ala. 1999)(quoting Phillips Colleges of Alabama, Inc. v. Lester, 622

So. 2d 308 (Ala.1993)). Because the purpose of Rule 9(b) is to give the defendant fair

notice, courts should endeavor to find the details necessary for fair notice within the

allegations of the complaint. See Committee Comments to Ala. R. Civ. P.; Kohler v.

Jacobs, 138 F.2d 440 (5th Cir. 1943); Pinkston v. Boykin, 130 Ala. 483, 30 So. 398 (Ala.

1900).

Plaintiffss Complaint sufficiently to provides Defendant Agents fair notice of the allegations against them. Allegations include the time, place, and contents of the false representations made by Defendant Agents. Paragraphs 40-44 of Plaintiff's complaint are general allegations made applicable to all counts by incorporation. These paragraphs specifically allege:

40.    Defendant Agents were the primary promoters, marketers, and detailers of Redux.
41.    Defendant Agents distributed amounts of Redux to Plaintiff's prescribing physician in the form of samples.
42.    Defendant Agents had actual or constructive knowledge of the dangerous condition of Redux and intentionally and deliberately suppressed, concealed, and misrepresented this information.
43.    Defendant Agents were aware of adverse drug reports ("ADR") received from users of Redux but continued to distribute, sell, promote, detail, and profit from the sale of Redux.
44.    Defendant Agents committed the tortious and overt acts alleged herein in an individual and/or corporate capacity.

Paragraphs 73-77 of Plaintiff's complaint are contained within Count IV of Plaintiffs complaint alleging fraud, misrepresentation, and suppression. These paragraphs specifically allege that:

73.    Defendants intentionally, fraudulently, recklessly and/or negligently made material misrepresentations to Plaintiff, Plaintiff's prescribing physician, and others upon whom it was known that Plaintiff would rely that Redux was safe and effective and that the benefits of taking Redux outweighed any risks.
74.    The continuous and ongoing course of action constituting fraud and misrepresentation started as early as 1993, if not earlier, and continued through repeated acts and non-disclosure every year since then, in the State of Alabama and throughout the United States and elsewhere.
75.    Defendant Agents committed this fraud in their individual capacity and/or corporate capacity by failing to provide Plaintiff's prescribing physician all information concerning the safety and effectiveness of Redux when promoting

Redux to Plaintiff's prescribing physician during sales calls at Plaintiff's prescribing physician's office which took place on June 21, 1996; July 10, 1996; July 29, 1996; July 29, 1996; August 28, 1996; September 27, 1996; November 14, 1996; December 12, 1996; January 8, 1997; January 30, 1997; February 10, 1997; April 2, 1997; April 16, 1997; April 29, 1997; May 14, 1997; June 24, 1997; July 22, 1997; and August 7, 1997.

76.     Defendants' fraudulent misrepresentations and/or suppressions took the form of, among other things, express and implied statements, publically disseminated misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about Redux, failure to disclose important safety and injury information, regarding Redux while having a duty to disclose to Plaintiff's prescribing physician, Plaintiff, and others such information, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead about the safety of Redux.

77.     Defendants knew or should have known that these representations about Redux being safe and effective were false and made these representations with the intent or purpose that Plaintiff and/or Plaintiff's prescribing physicians would rely on these representations and result in the Plaintiff using Redux.

These allegations describe the time, place, and the contents of the false

representations made by Defendant Agents.  Paragraph 75 explicitly describes the dates that

Defendant Agents made the false representations and the location: Plaintiff's prescribing

physician's office.  Paragraph 76 describes the contents of the false representations.  These

paragraphs demonstrate that Plaintiffs' allegations are neither general nor conclusive.   The

allegations contained in Plaintiffs' complaint give Defendant Agents fair notice of the fraud

and misrepresentations alleged which is the policy reason for requiring more particular

allegations when alleging fraud.  See Committee Notes of Rule 9(b).  Consequently,

Defendants have failed to prove fraudulent joinder on this basis.

Defendants also argue that Plaintiffs cannot establish any misrepresentation or

suppression claim against Defendant Agents personally because Defendant Agents merely

promoted and answered questions concerning Redux based on information provided by

Defendant Wyeth. In addition to the allegations in Plaintiffs' Complaint which contradict

Defendants' self serving assertions, Plaintiffs submit additional evidence which contradicts

Defendants' allegations. See Exhibit A, Affidavits of Omar Khalaf, M.D.; Mark C. Wiles,

M.D.; John Sabatine, M.D.; and Jon Yoder, M.D. These physicians swore in their

affidavits that drug sales representatives promoted Redux during sales calls. Id. These

physicians also swore drug sales representatives made representations to them about the

safety and effectiveness of Redux. Id. Dr. Yoder, Dr. Sabatine, and Dr. Wiles also swore

that drug sales representatives provided samples of Redux during these sales visits. Id.

Finally, these physicians swore that if they had been provided the true and correct

information regarding the safety and effectiveness of Redux and Pondimin, they would not

have prescribed these pharmaceuticals. Id.

     In addition to their affidavits, there is further evidence to contradict Defendants'

assertions. Defendant Wyeth provided the Redux sales force, including Defendant Agents,

with promotional and educational materials about Redux prior to and after the product

launch to use in detailing doctors. See Exhibit B, Redux Sales Training Program Modules

1-4. The sales representatives had to go through a Redux Sales Training program. Id.

These training modules provided Defendant Agents with information regarding the safety

and effectiveness of Redux, and actually provided them with the strategies to use in selling

Redux to physicians. Id. at 244. Defendant Agents were also given information regarding

adverse events associated with Redux.  Id. at p.3-4.  While Defendant Agents were provided

this information, often Defendant Wyeth would direct Sales Representatives, including

Defendant Agents, not to share this adverse information about Redux with anyone outside

the company, including Plaintiffs' prescribing physician.  See Id.  At the time of the Redux

launch, new safety information had become available to Defendant Wyeth regarding the

risks of pulmonary hypertension ("PH"), primary pulmonary hypertension ("PPH") and

the use of diet drugs.  Id.  Defendant Wyeth shared this information with their sales force

including Defendant Agents.  Id.  Defendant Wyeth, however, directed its sales force to not

reveal this new information to those outside the company, threatening that if a Sales

Representative did reveal these true risks associated with Redux to anyone, including

prescribing physicians, that the sales representative would be considered to have violated his

Employee Confidentiality Agreement, and the sales representative could be disciplined or

terminated.  Id.  This demonstrates that Defendant Agents had superior knowledge about

the safety and effectiveness of Redux.  In light of this evidence, it is likely that with a

reasonable opportunity for discovery, Plaintiff will uncover additional evidence.

Alabama law holds an individual employee liable for the fraudulent acts or omissions

he personally commits while acting in his capacity as an employee.  Bethel at 1158 (citing

Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc. and Crigler v. Salac, 438 So. 2d

1375, 1379-80 (Ala. 1983).  In fact, this Court was recently faced with the identical issues

as in the case at bar.  See Campbell, et al. v. Wyeth, et al., Case No.: 03-HGD-3364-M

(Mar. 11, 2004). In <u>Campbell</u>, Defendant Wyeth argued that Defendants Stubblefield and Weaver were fraudulently joined. <u>Id.</u> The <u>Campbell</u> court held that Defendant Wyeth's arguments "go to the merits of plaintiff's claims. . . the court cannot say that plaintiffs have no possibility of establishing a cause of action against Stubblefield or Weaver." <u>Id.</u> at 6. Consequently, the <u>Campbell</u> court ordered remand. This Court also recently explained in detail why a sales representative can be held liable under Alabama law for the allegations contained in Plaintiff's Complaint. <u>See</u> <u>Davis v. Wyeth, et al</u>, Case No.: 03-J-3167-J (N.D. Ala. Feb. 25, 2004) (Attached as Exhibit "C").

Defendants' cite <u>Cross v. Wyeth, et al.</u>, Case No.: 03-0882-BH-M (S. D. Ala. Feb 5, 2004) for the proposition that because the sales representatives in <u>Cross</u> were fraudulently joined, the sales representatives in every case must be fraudulently joined. Defendants argument is a classic example of a logical fallacy. The similarities between the case at bar and the <u>Cross</u> matter are few. Beyond the fact that <u>Cross</u> is a diet drug case and subject to removal, the cases are quite distinct. As this Court is aware, a fraudulent joinder claim is fact driven and any comparison to another case mandates an analysis of the facts behind the eventual court order.[5] For example, the <u>Cross</u> Plaintiffs offered **no evidence** to contradict the resident Defendants' affidavit. In fact, the motion to remand in Cross is entirely replete of any factual analysis relating to the fraudulent joinder argument. Here, however, Plaintiffs have provided this Court with persuasive evidence exhibiting a clear theory of liability

---

[5]     Plaintiffs provided a copy of the Notice of Removal and Motion to Remand upon which Judge Hand's order is based for convenience. These pleadings are attached here as Exhibit D.

against the resident defendants recognized by Alabama law. This evidence is a non-party's sworn statement which supports the Plaintiffs allegations and provides a factual framework, similar to and consistently relied upon in many recent orders to remand handed down by the Northern and Middle Districts of Alabama. <u>Campbell v. Wyeth, et al.</u>, Case No: 03-HGD-3364-M (N.D. Ala. Mar. 11,2004); <u>Carlisle v. Wyeth, et al.</u>, Case No: 04-HGD-0394-S (N.D. Ala. Mar. 11, 2004); <u>Hall v. Wyeth et al.</u>, Case No: 04-J-0434-NE (N.D. Ala. Mar. 9, 2004); <u>McGowan v. Wyeth</u>, Case No: 04-TMP-298-S (N.D. Ala. Feb. 24, 2004); <u>Johnson v. Wyeth</u>, Case No: 04-TMP-224-S (N.D. Ala. Feb. 23, 2004); <u>Marshal v. Wyeth</u>, Case No: 04-TMP-179-S (N.D. Ala. Feb. 18, 2004); <u>Helen Boswell, et al. v. Wyeth, et al.</u>, Case No:03-T-1256-N (M.D. Ala. Feb. 2, 2004); <u>Sara Blair, et al. v. Wyeth et al.</u>, Case No: 03-T-1251-S (M.D. Ala. Jan. 23, 2004); <u>Smith v. Wyeth</u>, Case No: 04-P-226-M (N.D. Ala. Feb. 27, 2004); <u>Rita Brunson v. Wyeth, et al.</u>, Case No: T-1167-S (M.D. Ala. Jan. 23, 2004); <u>Valerie Ballard, et al. v. Wyeth, et al.</u>, Case No: T-1255-N] (M.D. Ala. Jan. 23, 2004); <u>Stephanie Terrell, et al. v. Wyeth, et al.</u>, Case No: 03-BE-2876-S (N.D. Ala. Dec. 12, 2003); <u>Sharon Crittendon, et al. v. Wyeth, et al.</u>, Case No: 03-T-920-N (M.D. Ala. Nov. 21, 2003); <u>Sandra Cash v. Wyeth, et al.</u>, Case No: 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004); <u>Sandra Storey v. Wyeth, et al.</u>, Case No: 04-BE-27-E (N.D. Ala. Jan. 30, 2004); <u>Pamela Floyd, et al. v. Wyeth, et al.</u>, Case No: 03-C-2564-M (N.D. Ala. Oct. 20, 2003; <u>Bryant v. Wyeth, et al.</u>, Case No: 02-632-BH-M (S.D. Ala. Sept. 24, 2002) attached hereto as Composite Exhibit "E".

As this Court has held when faced with identical issues, it is possible that a state court would find that Plaintiffs' complaint states a cause of action for fraud against Defendant Agents. Plaintiffs' allegations within the Complaint contain the time, place, and contents or substance of the facts misrepresented. Defendants' arguments about Plaintiff's ability to factually establish a claim are misplaced. The evidence submitted by Plaintiff contradicts the self serving affidavits of the Defendant Agents. Since all issues of fact and law should be decided in the light most favorable to Plaintiff, this factual dispute should be resolved in favor of Plaintiff. Defendants have failed to carry the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiffs' Complaint states a claim against Defendant Agents. Consequently, there is no federal jurisdiction and Plaintiffs' Motion to Remand should be granted.

### B. There is a possibility that A State Court Would Find That Plaintiff's Complaint States a Cause of Action Under The AEMLD and For Breach of Warranty Against Defendant Agents

Defendants allege that Defendant Agents cannot be held liable under the AEMLD because they did not manufacture, sell, or supply Redux. Plaintiffs' allegations in the Complaint, Affidavits attached to this memorandum, and Alabama law establish that it is possible that a state court would find that Plaintiffs' Complaint states a claim under the AEMLD against Defendant Agents. The Alabama Supreme Court first announced the judicially created AEMLD in Atkins v. American Motors Corp., 335 So. 2d 134 (Ala. 1976).

> To establish a claim under the AEMLD a plaintiff must prove: (1) he suffered injury of damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) Showing these elements, the plaintiff has proved a prima facie case although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller. Atkins, 335 So. 2d. at 141.

Recently the Alabama Supreme Court affirmed that "to establish liability under the AEMLD, a plaintiff must show (1) that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; (2) that the seller was engaged in the business of selling such a product; and (3) that the product was expected to and did, reach the user without substantial change in the condition in which it was sold." Tillman, 2003 WL 21489707 Defendants do not argue whether Redux was unreasonably dangerous or whether the condition of Redux was substantially unchanged when it reached Plaintiff. The gravamen of Defendants' argument is that Defendant Agents, as pharmaceutical sales representatives, are not sellers or suppliers of Redux. Therefore, Defendant Agents cannot be liable under the AEMLD. Plaintiffs' Complaint, supporting affidavits, and Alabama law demonstrate that it is possible that a state court would find that Defendant Agents were sellers or suppliers of Redux and liable under the AEMLD. Furthermore, Defendant Agents personally participated in the tort against Plaintiffs as discussed *supra*.

Alabama Code section 6-5-501(1) defines seller as "any person, firm, corporation, association, partnership, or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product. . ." One distributes a product "when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption or as a preliminary step leading to ultimate use or consumption. . . commercial nonsale product distributors include. . . those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity." Section 20, Restatement (Third) of Torts: Products Liability (1998).

In the case at bar, Plaintiffs have alleged that Defendant Agents actively participated in the sale and distribution of Redux to Plaintiffs' prescribing physician. <u>See</u> Complaint Paragraphs 40-44, 73-77 *supra*. Furthermore, Plaintiff has established an evidentiary basis for this allegation. <u>See</u> Exhibit A, Affidavits of Dr. Wiles, Dr. Sabatine, and Dr. Yoder, these physicians swore that drug sales representatives provided them samples of Redux. <u>Id.</u> In addition, Defendant Weavers admits that she "promoted Redux to licensed healthcare providers." <u>See</u> Defendant Weavers' Affidavit Attached to Defendants' Notice of Removal(Exhibit "F"). Defendants attempt to distinguish between promoting Redux and selling or distributing Redux. This distinction is irrelevant because "the fact that a technical sale did not take place does not affect liability under the AEMLD." <u>Rice v. United Parcel Service General Services</u>, 43 F. Supp.2d 1134, 1145 (D.Orr. 1999)(applying Alabama law

-18-

and quoting First Nat'l Bank of Mobile v. Cessna Aircraft Co., 365 So. 2d 966, 967-78

(Ala. 1978).  In First Nat'l Bank, the Alabama Supreme Court, answering a certified

question from this Court, held that an aircraft placed on the market for demonstration

purposes only was still subject to liability even though there had been no sale.  First Nat'l

Bank, at 966.  The Court held that liability under the AEMLD does not arise from a sale,

but from placing the product on the market.  Id.  Dr. Wiles', Dr. Sabatine's, and Dr.

Yoder's affidavits establish that drug sales representatives placed Redux on the market in the

form of product samples.

Defendants did not employ ghosts to sell Redux.  Defendant Wyeth sold Redux

through the Defendant Agents.  The best estimates state that sales reps spend between

$8,000 and $13,000 per physician each  See Wazana, "Is a Gift Just a Gift?."

Pharmaceutical sales representatives derive their income from the amount of pharmaceutical

sales that they generate.  The fact that Defendant Agents personally profited from the sale of

Redux is an additional reason that Defendant Agents should be subject to an AEMLD

claim.  See Bittler v. White and Company, Inc., 560 N.E. 2d 979 (5th DCA Ill 1990)

(quoting Kasel v. Remington Arms, Inc., (1972), 24 Cal.App.3d 711, 725, 101 Cal.Rptr.

314, 323, quoted in Hebel v. Sherman Equipment, 92 Ill.2d at 379, 65 Ill.Dec. At 894,

442 N.E. 2d at 205; See also Alvarez v. Koby Machinery Co., (1987), 163 Ill. App. 3d

711, 114 Ill.Dec. 775, 516 N.E. 2d 930.).  When an employee has a participatory

connection, the policy justifications for strict liability are furthered by holding that employee individually liable for their conduct.  Id.

Defendants cite In re Rezulin Prods. Liab. Litig., 133 F. Supp.2d 272 (S.D.N.Y. 2001) for the proposition that pharmaceutical representatives are not sellers or suppliers of the prescription drug they promote.  Defendants' reliance to demonstrate fraudulent joinder in the case at bar is misplaced.  In Rezulin, the Plaintiffs alleged an AEMLD claim against pharmaceutical sales representatives.  Id. at 286.  However, no allegation in the Rezulin complaint indicated that the sales representatives named in the complaint sold pharmaceuticals to the plaintiff or the plaintiff's physician.  Id. at 287.  The court found that the absence of any alleged connection between the sales representative and plaintiff was fatal to all claims against the sales representative."  Id.  The Court also criticized the lack of any allegation or evidence to establish that the sales representative manufactured, sold, or supplied any pharmaceutical.  Id.

In the case at bar, Plaintiffs' Complaint alleges that Defendant Agents supplied samples of Redux to Plaintiff's prescribing physician.  These allegations are substantiated by the affidavits of Dr. Wiles, Dr. Sabatine, and Dr. Yoder.  See Exhibit A.  Plaintiffs have not only alleged a connection between Defendant Agents and Plaintiff's damages, but, Plaintiffs have provided evidence which substantiates this allegation.  Consequently, the findings of the court in Rezulin are not applicable in this case.

Furthermore, at least one other District Court in Alabama has held that an AEMLD claim against individual sales representatives is possible. See Exhibit G, Hales v. Merck & Co., Case No. 03-AR-1028-M (N.D.Ala. June 26, 2003)(granting motion to remand and denying motion to dismiss in case brought against pharmaceutical manufacturer and pharmaceutical sales representatives, finding sales representatives were not fraudulently joined even where sales representative affidavits indicated that those representatives did not detail the prescribing doctor as disputes must be resolved in favor of plaintiff, and court cannot adjudicate the merits of claim before finding that the court has subject matter jurisdiction).  Other jurisdictions have also held that a sales representative may be held individually liable under strict liability theory. See United States District Court for the Middle District of Florida Remand Orders in Stella Little v. Wyeth-Ayerst Laboratories Inc, et. al., Case No. 99-2244-CIV-T-26C; Carol Morris v. Wyeth -Ayerst Laboratories Inc., et. al., Case No. 99-2454-CIV-T-26A; Dorothy Snell v. Wyeth-Ayerst Laboratories Inc., et. al., Case No. 99-2453-CIV-T-26A. See also Collins et al. v. Bayer Corp, et al, Case No. 02-2985, MDL 1341 (D.Minn. February 28, 2003) (Attached as Exhibit "H").

Defendants have failed to meet the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiff's Complaint states a claim against Defendant Agents under the AEMLD.  The affidavits of Dr. Wiles, Dr. Sabatine, and Dr. Yoder directly contradict the self-serving affidavits of Defendant Agents.  These affidavits demonstrate that drug sales representatives  provided samples of

Redux. Since all issues of fact and law should be decided in the light most favorable to Plaintiff, this factual dispute must be resolved in Plaintiff's favor. Furthermore, Defendant Weaver admits in her own affidavit that she promoted Redux. In light of Plaintiff's Complaint, the affidavits, and Defendant Weaver's own admissions, it is possible that a state court would find that Plaintiffs' Complaint states a cause of action under the AEMLD against Defendant Weaver or Defendant Stubblefield. Consequently, Plaintiffs' Motion to Remand should be granted.

Defendants also allege that Plaintiff may not maintain an action for Breach of Warranty against Defendant Agents. The only support offered for this allegation is that Defendant Agents are not sellers. This is the same argument made by Defendants about Plaintiff's AEMLD claim. As Plaintiff has demonstrated, this argument is not sufficient to demonstrate fraudulent joinder. There is a possibility that a state court might find that Defendant Agents were a sellesr. Consequently, Plaintiff's Motion to Remand should be granted.

### C. There Is a Possibility That a State Court Might Find That Plaintiff's Complaint States a Cause of Action Against Defendant Agents Based on Negligence.

Defendants allege that Defendant Agents cannot be held liable for negligence. Defendants allege that Alabama law does not hold an employee liable for the negligence of his employer unless the employee personally participated in the alleged wrongful conduct of his employer. "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective or whether they

are acting in a corporate capacity." <u>Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC,</u>

<u>Inc.</u>, 496 So. 2d. 774, 775 (Ala. 1986)(citing <u>Candy H. v. Redemption Ranch, Inc.</u>, 563

F. Supp. 505, 513 (M.D.Ala. 1983); <u>see</u> <u>also</u> <u>Chandler v. Hunter</u>, 340 So. 2d. 818, 822

(Ala. Civ. App. 1976).

Plaintiffs rely on his arguments *supra* regarding individual liability of Defendant

Agents. Plaintiffs have alleged that Defendant Agents personally participated in the

wrongful conduct of Wyeth and Wyeth Pharm. <u>See</u> Plaintiff's Complaint paragraphs 40-

44, 73-77 *supra*. Defendant Agents were the individuals who actively participated in the

sale and distribution of Redux. Defendant Agents knew or should have known that Redux

was not safe and effective as sustained by the evidence attached as Exhibit "B," Redux Sales

Manual.

Defendants in their Notice of Removal fail to address the allegations of Negligence

against Defendant Agents contained in the Plaintiffs' Complaint. Instead, Defendants

merely rely on a citation to the case of <u>Tillman v. R.J. Reynolds</u>, 253 F.3d 1302 (11th Cir.

2001) for the proposition that a plaintiff fails to state a claim for negligence simply by

alleging that an employee defendant acted with superior knowledge. In <u>Tillman</u>, the

Plaintiff alleged that the individual employees had superior knowledge of the dangers of the

product because of their employment. <u>Id.</u> at 1305. However, the plaintiffs' complaint in

<u>Tillman</u> failed to allege the plaintiffs ever dealt with the employees, or that they made any

representations on which plaintiffs relied. <u>Id.</u> In <u>Tillman</u>, the individual employee

-23-

defendants were not even working for the defendant manufacturer at the time plaintiffs initially purchased the defective product. Id. The Tillman court dismissed the action because the plaintiffs failed to demonstrate that the individually named defendants were tied to the allegations in the complaint. Id.

Plaintiffs' Complaint does not suffer from the deficiencies in Tillman. Defendant Weaver has admitted in her own affidavit that she promoted Redux. In addition, Plaintiffs have alleged in the Complaint and also provided evidence that drug sale representatives supplied information and samples of Redux to physicians. This evidence substantiates the fact that Defendant Agents personally participated in the tort against Plaintiffs. There is a possibility that a state court would find that Plaintiffs' Complaint states a cause of action for negligence against Defendant Agents. Consequently, Plaintiffs' motion to remand should be granted.

## CONCLUSION

Defendants allege in their Notice of Removal that federal jurisdiction exists because Defendant Agents have been fraudulently joined. Defendants have the heavy burden of showing by clear and convincing evidence that the allegations of the complaint do not state any possible cause of action against any Defendant Agents. Defendants have failed to meet their heavy burden. Defendants rely on misplaced authority which are not analogous easily distinguishable from the facts before this Court. Furthermore, Plaintiffs have provided evidence which contradicts Defendant's assertions and substantiates the allegations in

Plaintiffs' complaint. Plaintiffs only need to show that there is a possibility that a state court would find that any one of the allegations in the complaint states a cause of action against any Defendant Agent. All issues of law and fact are determined in Plaintiffs' favor. Plaintiffs have demonstrated that it is possible that a state court would find that Plaintiffs' Complaint states a cause of action against Defendant Agents. Therefore, This Court should remand this case to state court. Plaintiffs respectfully move this Court to award Plaintiffs' costs and attorney's fees associated with Defendant's removal of this case. In light of the absence of any facts to justify Defendants' removal, Plaintiffs submit that costs and fees are justified. Finally, Plaintiffs respectfully request a hearing on this Motion if this Court finds that a hearing is necessary to decide this matter.

Joseph A. Zarzaur, Jr. (ZAR002)
Attorney for Plaintiffs

Of Counsel:
McKenzie, Taylor & Zarzaur, P.A.
905 E. Hatton St.
Pensacola, FL 32503
850-432-2856
Fax 850-432-5130

# EXHIBIT "H"